Margot B. Schonholtz
Ana M. Alfonso
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 728-8000
Facsimile:   (212) 728-8111

*Counsel for Wells Fargo Bank, National Association,*
*as First Lien Agent*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SABINE OIL & GAS CORPORATION, *et al.*, | ) Case No. 15-11835 (SCC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**REPLY OF WELLS FARGO BANK, NATIONAL ASSOCIATION, AS
FIRST LIEN AGENT, TO OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTORS' LIMITED USE OF
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
AND (IV) SCHEDULING A FINAL HEARING**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

REPLY ...................................................................................................................................5

 **A.** The Proposed Adequate Protection Package is Appropriate and a Proper
   Exercise of the Debtors' Business Judgment ............................................................5

 **B.** Adequate Protection Liens Must be Senior to Liens Preserved Under
   Section 551 ................................................................................................................9

 **C.** Waiver of Section 506(c) is Appropriate and Routinely Granted .........................11

 **D.** The Section 552(b) Waiver is Appropriate and Routinely Granted ......................14

 **E.** Waiver of Marshaling Is Appropriate and Routinely Granted ..............................16

 **F.** The Committee Can Investigate Prepetition Setoffs of Swap Payments ..............17

 **G.** The Committee's Other Objections are Without Merit and Should Be
   Overruled .................................................................................................................18

CONCLUSION .....................................................................................................................19

## TABLE OF AUTHORITIES

In re 354 E. 66th St. Realty Corp.,
    177 B.R. 776 (Bankr. E.D.N.Y. 1995)......................................................................6

In re Advanced Mktg. Servs.,
    360 B.R. 421 (Bankr. D. Del. 2007) ....................................................................16

In re Almatis B.V.,
    Case No. 10-12308 (MG) (Bankr. S.D.N.Y.) ...........................................................17

In re Am. Media, Inc.,
    No. 10-16149 (MG), 2010 WL 5141244 (Bankr. S.D.N.Y. Dec. 6, 2010) .............9, 10, 13, 15

In re Armenakis,
    406 B.R. 589 (Bankr. S.D.N.Y. 2009)......................................................................5

Aurelius Capital Master, Ltd. v. TOUSA Inc.,
    No. 08-61317, 2009 WL 6453077 (S.D. Fla. Feb. 6, 2009) ......................................7

Bankers Life Ins. Co. of Neb. v. Alyucan Interstate Corp. (In re Alyucan Interstate Corp.),
    12 B.R. 803 (Bankr. D. Utah 1981) ......................................................................6

Berman v. Green (In re Jack Green's Fashions for Men Big and Tall, Inc.),
    597 F.2d 130 (8th Cir. 1979) ..............................................................................16

In re Blagg,
    372 B.R. 502 (Bankr. D. Kan. 2007) ....................................................................17

In re Blockbuster Inc.,
    No. 10-14997, 2010 WL 4873646 (Bankr. S.D.N.Y. Sept. 24, 2010)....................15

In re Boston Generating, LLC,
    Case No. 10-14419 (SCC) (Bankr. S.D.N.Y.) .................................9, 13, 15, 17, 19

In re BP Clothing LLC,
    Case No. 11-15696 (SCC) (Bankr. S.D.N.Y.) ......................................................10

In re Carmichael,
    No. 06-10952, 2012 Bankr. LEXIS 4752 (Bankr. D. Kan. Oct. 10, 2012) .............11

In re Charter Commc'ns, Inc.,
    Case No. 09-11435 (JMP) (Bankr. S.D.N.Y.) ...............................10, 13, 15, 17, 18

In re CHL, Ltd.,
    Case No. 12-12437 (KJC) (Bankr. D. Del.)......................................10, 14, 16, 17

In re Constable Plaza Assocs. L.P.,
125 B.R. 98 (Bankr. S.D.N.Y. 1991)..................................................................7

Crocker Nat'l Bank v. Am. Mariner Indus., Inc., (In re Am. Mariner Indus., Inc.),
734 F.2d 426 (9th Cir. 1984) ...........................................................................7

Debbie Reynolds Resorts, Inc. v. Calstar Corp., Inc.
(In re Debbie Reynolds Hotel & Casino, Inc.),
255 F.3d 1061 (9th Cir. 2001) ........................................................................12

In re Eastman Kodak Co.,
Case No. 12-10202 (ALG) (Bankr. S.D.N.Y.) ...............................................10, 13

Fed. Land Bank of Columbia v. Tidwell (In re McElwaney),
40 B.R. 66 (Bankr. M.D. Ga. 1984)................................................................16

Fundex Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co.),
53 B.R. 772 (Bankr. S.D.N.Y. 1985)...............................................................16

Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.),
239 B.R. 261 (Bankr. S.D.N.Y. 1999)..............................................................16

In re Gibson Grp., Inc.,
151 B.R. 133 (Bankr. S.D. Ohio 1993).............................................................16

In re Global Container Lines, Ltd.,
No. 09-78585 (AST), 2010 WL 5053965 (Bankr. E.D.N.Y. Mar. 3, 2010).............13

In re Great Atl. & Pac. Tea Co.,
Case No. 10-24549 (RDD) (Bankr. S.D.N.Y.) ...............................................13, 18

Grundy Nat'l Bank v. Tandem Mining Corp.,
754 F.2d 1436 (4th Cir. 1985) .........................................................................6

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
530 U.S. 1 (2000)...........................................................................................12

In re Hawker Beechcraft, Inc.,
Case No. 12-11873 (SMB) (Bankr. S.D.N.Y.) .....................................10, 13, 15, 18

In re Hostess Brands, Inc.,
Case No. 12-22052 (RDD) (Bankr. S.D.N.Y.) .....................................13, 15, 17, 18

Interfirst Bank Fanning v. Bernell (In re Mesa Cont'l, Inc.),
79 B.R. 669 (Bankr. S.D. Tex. 1987) ................................................................16

In re Inverness Distribution Ltd. f/k/a Morgan Creek Int'l Ltd.,
Case No. 11-15939 (SCC) (Bankr. S.D.N.Y.) ...............................................13, 15

In re Inversiones Alsacia S.A.,
    Case No. 14-12896 (MG) (Bankr. S.D.N.Y.) ...................................................10, 17

In re LightSquared Inc.,
    Case No. 12-12080 (SCC) (Bankr. S.D.N.Y.) ...........................................9, 13, 15

In re LodgeNet Interactive Corp.,
    Case No. 13-10238 (SCC) (Bankr. S.D.N.Y.) .........................................10, 13, 15

In re Marco Polo Capital Mkts., LLC,
    Case No. 12-14870 (SCC) (Bankr. S.D.N.Y.) ......................................................10

In re MCG Ltd. P'ship,
    Case No. 12-13042 (CSS) (Bankr. D. Del.)........................................10, 14, 16, 17

In re Metaldyne Corp.,
    No. 09-13412 (MG), 2009 WL 2883045 (Bankr. S.D.N.Y. June 23, 2009) ........................6, 7

In re Muma Servs. Inc.,
    322 B.R. 541 (Bankr. D. Del. 2005) ........................................................15

Nat'l Westminster Bank USA v. Zindler (In re Film Equip. Rental Co.),
    No. 91 Civ. 3476 (CSH), 1991 WL 274464  (Bankr. S.D.N.Y. Dec. 12, 1991) ....................13

In re Neff Corp.,
    Case No. 10-12610 (SCC) (Bankr. S.D.N.Y.) .........................................13, 15, 17

In re Patriot Coal Corp.,
    Case No. 12-12900 (SCC) (Bankr. S.D.N.Y.) .............................................10, 13

Peoples Bank of Tuscaloosa v. The Comput. Room, Inc.
    (In re The Comput. Room, Inc.),
    24 B.R. 732 (Bankr. N.D. Ala. 1982) ......................................................16

In re Perkins & Marie Callender's Inc.,
    Case No. 11-11795 (KG) (Bankr. D. Del.) .............................................14, 16, 17

In re Quicksilver Res. Inc.,
    Case No. 15-10585 (LSS) (Bankr. D. Del.)..............................9, 13, 15, 17, 18, 19

In re R.H. Donnelley Corp.,
    Case No. 09-11833 (KG) (Bankr. D. Del.) .................................................10, 14

In re RDA Holding Co.,
    Case No. 13-22233 (RDD) (Bankr. S.D.N.Y.) ................................................13

In re River Ctr. Holdings, LLC,
    394 B.R. 704 (Bankr. S.D.N.Y. 2008).......................................................12

In re Sbarro, Inc.,
    Case No. 11-11527 (SCC) (Bankr. S.D.N.Y.) ............................................................10, 13, 17

In re Sbarro LLC,
    Case No. 14-10557 (MG) (Bankr. S.D.N.Y.) ..........................................................................13

In re Smart World Techs., LLC,
    423 F.3d 166 (2d Cir. 2005)....................................................................................................12

In re Special Devices, Inc.,
    Case No. 08-13312 (MFW) (Bankr. D. Del.) ..........................................................................17

In re Truvo USA LLC,
    Case No. 10-13513 (AJG) (Bankr. S.D.N.Y. July 22, 2010)…................................................17

In re Velo Holdings Inc.,
    Case No. 12-11384 (MG) (Bankr. S.D.N.Y.) ..........................................................................17

In re Wellman, Inc.,
    Case No. 08-10595 (SMB) (Bankr. S.D.N.Y.) ........................................................10, 14, 16

In re WorldCom, Inc.,
    304 B.R. 611 (Bankr. S.D.N.Y. 2004)......................................................................................6

Whirlpool Corp. v. Plad, Inc. (In re Plad, Inc.),
    24 B.R. 676 (Bankr. M.D. Tenn. 1982) ..................................................................................16

Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.),
    490 B.R. 470 (S.D.N.Y. 2013)..................................................................................................6

## PRELIMINARY STATEMENT[1]

1.    Though one would never know it from reading the Committee's sweeping 45-page Objection, representatives of the Debtors, the First Lien Agent and the Second Lien Agent spent the better part of the past month trying to forge consensus with the Committee on a final cash collateral order to present to the Court.  During the extended adjournment of the Final Hearing (which was granted at the Committee's request), all parties other than the Committee made good on their promises to the Court to use the time to resolve as many of the Committee's issues as possible.  Instead of engaging in meaningful negotiations with the Prepetition Agents, the Committee used the extra time to prepare and launch its preferred approach to these Cases—scorched earth litigation, which is evidenced not only in the vitriol of the Objection, but also in the Committee's far-reaching Bankruptcy Rule 2004 application.[2]

2.    By the time the Committee filed its Objection, the Debtors, the First Lien Agent and the Second Lien Agent had offered the Committee significant concessions and fair compromises on most of the issues raised in the Objection.  Despite several meetings and the delivery of several draft orders containing these concessions, the Committee's representatives told the Prepetition Agents' representatives that they had no authority to accept any compromises unless and until all issues were addressed to the Committee's satisfaction.  The First Lien Agent is willing to compromise on most issues raised by the Committee.  However, it will not consent

---

[1]    Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Final Order (as defined herein) or the Committee's objection to the Motion [Dkt. No. 198] (the "Objection"), as applicable.

[2]    The Committee's repeated citation to In re TOUSA Inc., Case No. 08-10928 (Bankr. S.D. Fla. 2008) as a case allegedly comparable to these Cases is revealing. Extensive litigation among parties-in-interest caused Tousa's bankruptcy case (which was a *liquidation*, not a reorganization) to last for more than five years. The cumulative fees and expenses for estate professionals was over $140 million.  TOUSA should not be used as a guide for these Cases (or any other case).  As counsel to the Debtors stated at the Interim Hearing, "[Sabine] is not the type of company that can sit through a long drawn out litigation case. We need to get this company out as quickly as we can." In re Sabine Gas & Oil Corp., No. 15-11835 (SCC), July 16, 2015 Hr'g Tr. 23:25–24:3 (Bankr. S.D.N.Y) ("First Day Hr'g Tr.").

to an order that omits fair and customary protections almost universally given to secured creditors in cash collateral orders.

3.      The Objection is more noteworthy for what it does not contain than for what it does.  The Committee does not disclose that, as reflected in the proposed final cash collateral order filed by the Debtors on September 2, 2015 (the "<u>Final Order</u>"), the First Lien Agent agreed to most of the Committee's requests and has refused only those demands of the Committee that are clearly contrary to well-established law and precedent.  Among other things, the First Lien Agent agreed to: (i) consent to the Debtors' right to request a section 506(c) surcharge under limited circumstances; (ii) consent to the Debtors' right to seek limited relief based on the "equities of the case" doctrine under section 552(b) of the Bankruptcy Code; (iii) extend the Committee's investigation period to November 10, 2015, a period which is more than reasonable under the circumstances; (iv) permit the Committee Challenge Deadline to be tolled upon any request by the Committee for an extension of the deadline for "cause" or upon the Committee's filing of an *STN* motion; (v) increase the Committee's investigation budget five-fold from $50,000 to $250,000 from Disputed Cash (with no limitation on the use of unencumbered cash for this purpose); (vi) provide that the First Lien Adequate Protection Liens and First Lien Adequate Protection Claims will not extend to proceeds of (x) Avoidance Actions against the First Lien Secured Parties or (y) claims and causes of actions against the First Lien Secured Parties arising in connection with the Merger or any related transaction; (vii) provide the Committee consultation rights with respect to procedures for segregating the Segregated Cash Collateral and with respect to material asset sales; (viii) increase the Post-Carve Out Notice Cap from $1 million to $2 million; (ix) require the Debtors to provide the Committee advance notice of modifications to the Budget; (x) permit the Carve-Out to be used to pay allowed expenses

incurred by individual Committee members; (xi) obligate the Debtors to provide the Committee

with the same reporting they are required to provide to the First Lien Agent as adequate

protection, at the same time and in the same manner as it is provided to the First Lien Agent;

(xii) add an exception to the Termination Event based on incurrence of liens on the Collateral, to

permit the Debtors to incur liens having an aggregate value of less than $1 million (in addition to

the Debtors' existing ability to incur the types of liens described in paragraph 6 of the Final

Order, which sets no limitation on the permitted value of those liens); (xiii) clarify that any

adequate protection payments that are recharacterized and applied to reduce the principal amount

of the First Lien Prepetition Indebtedness will reduce the secured portion of the First Lien

Prepetition Indebtedness; (xiv) agree to file on the docket notice of any extension of the

Expiration Date of the Debtors' right to use Cash Collateral pursuant to the Final Order; and

(xv) permit the Committee to investigate the application of certain swap termination payments

effected as a result of prepetition setoffs and postpetition adequate protection under the Interim

Order to reduce the First Lien Indebtedness.

4.      The Objection is written as though none of these concessions have been offered.

It states that the Final Order will "unduly and permanently prejudice unsecured creditors" but

never explains how that will happen.  Objection at ¶ 2.  It complains that Disputed Cash and

unencumbered cash will be used to pay costs for wells that are Prepetition Collateral, but it cites

no support for that assertion, and it disregards the fact that the First Lien Agent has agreed to

allow the Debtors to seek a section 506(c) surcharge in that circumstance.  The Committee also

repeatedly asserts (without basis in law or fact) that the Disputed Cash is unencumbered.[3]

---

[3]     The Committee states that the Prepetition Secured Parties have no lien on any of the Disputed Cash, yet it
admits that the proceeds of encumbered wells were commingled with other cash in the Debtors' operating
account.  See Objection at ¶¶ 22, 78.

5.      Based on these and other unsupported grievances, the Committee claims that the Debtors should not have agreed to any adequate protection other than replacement liens and liens on certain unencumbered assets. The Committee ignores the fact that the Prepetition Secured Parties are voluntarily financing these Cases by permitting the Debtors to use Cash Collateral (including, but not limited to, the Disputed Cash) to fund the Budget, including adequate protection payments, Restructuring Professional Fees, Capital Expenditures, and Lease Operating Expenses, even with respect to assets that are not Prepetition Collateral, and a generous Carve Out Reserve covering the allowed fees and expenses of several law firms, investment banks, financial advisors and Committee members.

6.      The Debtors exercised their business judgment to agree to a consensual order which maximizes the Debtors' prospects for reorganizing, preserves all parties' rights and provides for reasonable and customary adequate protection for the Prepetition Secured Parties. The Committee has not provided any reason for this Court to override the Debtors' business judgment, particularly in light of the extensive concessions offered by the First Lien Agent and the Second Lien Agent. The First Lien Agent submits that, far from being an attempt to unfairly tilt the playing filed in favor of the Prepetition Secured Parties, the Final Order represents an appropriate balance of protections for the Prepetition Secured Parties with the need to preserve the rights of other parties in these Cases, including the Committee.

7.      Section 361 of the Bankruptcy Code requires the Debtors to provide adequate protection to the Prepetition Secured Parties to protect against the diminution in value of the Prepetition Collateral during the pendency of these Cases. Adequate protection is particularly important here where the Debtors' business is affected by volatile commodity prices. The Committee's unsupported allegations at the outset of these Cases that all of the liens and claims

of the Prepetition Secured Parties are invalid do not override the Debtors' obligation to provide appropriate adequate protection of the Prepetition Secured Parties' interests that the Debtors admit exist today.   The Committee's counsel, when acting as debtor's counsel or creditors' committee counsel in other cases, has agreed to the same standard types of adequate protection the Debtors have agreed to here.

<u>**REPLY**</u>

### A.   <u>The Proposed Adequate Protection Package is Appropriate and a Proper Exercise of the Debtors' Business Judgment</u>

8.     The Committee complains that the proposed adequate protection to the First Lien Secured Parties is "excessively generous" and suggests through the Kearns Declaration that the determination as to what adequate protection is needed is based on a projected thirteen-week cash flow budget that ends five weeks after the Final Hearing.   The Objection also presumes that the Committee has already won all the lien and claim challenges it asserts exist (although, by its own admission, it has not conducted any investigation of the Prepetition Secured Parties' liens and claims and does not have standing to assert any claims).[4]   The Committee states that "[t]he entirety of the adequate protection package provided to the secured lenders . . . must be viewed in the context of the questionable nature of both their alleged prepetition claims and liens."   <u>See</u> Objection at ¶ 37.   However, adequate protection is not provided to a prepetition secured creditor based on speculation as to what might happen later in a bankruptcy case.   The "general rule is that for adequate protection purposes a secured creditor's position *as of the petition date* is entitled to adequate protection against deterioration."   <u>In re Armenakis</u>, 406 B.R. 589, 620

---

[4]     The Committee vacillates between its insistence that the Prepetition Secured Parties have no valid liens or claims and its insistence that the Committee is not being given enough time or money to investigate their liens and claims.

(Bankr. S.D.N.Y. 2009) (emphasis in original) (internal citations omitted).[5]   Whatever claims against the First Lien Secured Parties the Committee believes may exist—and the First Lien Agent submits there are no viable claims—will be addressed by the Court in due course.   The Committee's rhetoric regarding the nature of the Prepetition Secured Parties' claims and liens does not obviate the need of the Debtors to provide adequate protection for use of cash collateral. Moreover, the Final Order provides adequate safeguards in the event a lien or claim challenge against the Prepetition Secured Parties is successful.

9.      The Bankruptcy Code requires a debtor to provide a secured creditor with adequate protection against the diminution in value of the secured creditor's interest in collateral resulting from: (a) the imposition of the automatic stay under section 362; (b) the use, sale, or lease of the property under section 363; and (c) the granting of a lien under section 364.  See 11 U.S.C. §§ 361, 362, 363, 364.  Adequate protection is designed to maintain the status quo for a secured creditor and ensure that, during the ongoing chapter 11 cases, it receives the value it bargained for prior to the petition date.  See In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); In re 354 E. 66th St. Realty Corp., 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995).

10.     Under section 363(c)(2) of the Bankruptcy Code, "the debtor may not use cash collateral unless the secured creditor consents, or the court authorizes such use."  In re Metaldyne Corp., 09-13412 (MG), 2009 WL 2883045, at *2 (Bankr. S.D.N.Y. June 23, 2009). Absent consent, the debtor "bears the initial burden of proof as to the issue of 'adequate protection.' "  See Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.), 490 B.R. 470, 477

---

[5]   The measure of deterioration of a secured creditor's position, or collateral diminution, does not occur just in the first several weeks of the bankruptcy case. Adequate protection must be provided during the pendency of these Cases. See Grundy Nat'l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1440 (4th Cir. 1985); Bankers Life Ins. Co. of Neb. V. Alyucan Interstate Corp. (In re Alyucan Interstate Corp.), 12 B.R. 803, 808 (Bankr. D. Utah 1981).

(S.D.N.Y. 2013); In re Constable Plaza Assocs. L.P., 125 B.R. 98, 104 (Bankr. S.D.N.Y. 1991).

When, as here, the secured creditor has consented to the Debtors' use of its cash collateral on

terms specified in the Final Order, the Debtors are relieved of the burden of demonstrating the

secured creditors are adequately protected, and the grant of adequate protection is in the province

of the Debtors' business judgment.  See Aurelius Capital Master, Ltd. v. TOUSA Inc., No. 08-

61317, 2009 WL 6453077, at *16 (S.D. Fla. Feb. 6, 2009) (acknowledging "significant case law"

to support the use of the debtor's business judgment in approving a negotiated adequate

protection package); see also In re Metaldyne Corp., 2009 WL 2883045, at *5 (finding that with

the proposed adequate protection package, the Debtors' exercise of business judgment

"demonstrated that the value of the estate will [] be protected for all creditors (not just the

secured creditors)."); Crocker Nat'l Bank v. Am. Mariner Indus., Inc., (In re Am. Mariner Indus.,

Inc.), 734 F.2d 426, 435 (9th Cir. 1984) ("[T]he debtor should be permitted maximum flexibility

in structuring a proposal for adequate protection.").  The Debtors have exercised their business

judgment to provide the adequate protection package reflected in the Final Order, which is the

product of hard-fought, arms' length and lengthy negotiations.

11.    Contrary to the Committee's assertions in paragraphs 70-74 of the Objection, the

First Lien Agent is not trying to create a "new, expansive and unsupported test for diminution"

for these cases.  The Final Order defines "Collateral Diminution" in a manner consistent with

section 361 of the Bankruptcy Code.  The Committee seeks to depart from the Bankruptcy Code

definition by requiring now that any future measure of collateral diminution be calculated "on an

aggregate basis across all Prepetition Collateral."  That concept is not in the Bankruptcy Code.

12.    Although the Committee seeks to restrict the Bankruptcy Code definition of

collateral diminution, it concedes that collateral diminution is not an issue to be determined at the

outset of these Cases.  See Objection at ¶ 72.  Yet it submitted the Kearns Declaration to support the proposition that there will be no collateral diminution during these Cases based on the projected thirteen-week cash flow that ends on October 16, 2015.

13.    The need for adequate protection against collateral diminution or the property to which adequate protection liens should attach cannot be predicated on any projections, no less short term projections covering only the first thirteen weeks of the case.  Here,  the bulk of the Prepetition Collateral is largely dependent on commodities prices and the underlying volume of hydrocarbons.  It cannot be disputed that there is a risk of collateral diminution during the pendency of these Cases due to the daily production of the finite oil and gas reserves and the unknowable but predictable volatility in natural gas and oil prices.

14.    The Committee objects to the payment of fees and expenses of the Prepetition Secured Parties' professionals and the cash payments to the First Lien Secured Parties as an unjustified "windfall" that should be subject to disgorgement because the Prepetition Secured Parties' claims could be "entirely unsecured," or they could have no allowed claims at all.  See Objection at ¶ 45.  The First Lien Loan Documents (which the First Lien Agent's counsel voluntarily sent to the Committee's counsel prior to the filing of the Objection) demonstrate that the First Lien Secured Parties have valid, perfected liens on the Prepetition Collateral.[6]  No one can seriously contest that the First Lien Secured Parties loaned the Debtors approximately $1 billion.  In light of this, there is no basis for the Committee's bald assertion that the First Lien Secured Parties could somehow have no claim and be entirely unsecured.    Accordingly, disgorgement is not an appropriate remedy here.  Courts in this and other jurisdictions routinely

---

[6]    As further described in paragraph F of the Final Order, the First Lien Secured Parties have perfected their liens and security interests in the Prepetition Collateral by virtue of the filing of numerous mortgages, deeds of trust, fixture filings, financing statements and the like with the appropriate recording offices, among other things.

grant adequate protection in the form of reimbursement of professional fees and expenses to secured creditors and payment of current interest, and such adequate protection payments are not subject to disgorgement.[7]   The First Lien Agent agreed in the Interim Order to allow the First Lien Secured Parties' adequate protection payments to be subject to recharacterization, and, if recharacterized, to be applied to reduce the principal amount of the First Lien Prepetition Indebtedness.   The First Lien Agent then agreed to clarify that if any adequate protection payments are recharacterized, they will be applied to reduce the secured portion of the First Lien Prepetition Indebtedness.   The Committee has not explained and cannot explain why these remedies are insufficient protection against a "windfall" to the First Lien Secured Parties.

### B.    Adequate Protection Liens Must be Senior to Liens Preserved Under Section 551

15.    Without citing any legal authority, the Committee objects to the inclusion of the customary provision in the Final Order confirming that the Adequate Protection Liens and Adequate Protection Claims shall not be subject or junior to liens avoided and preserved under section 551 of the Bankruptcy Code.   According to the Committee, this typical and critical protection for secured creditors is inappropriate here because "these cases appear to present a novel question of the relative priority of adequate protection liens and the estates' rights after an avoidance recovery . . . ."   See Objection at ¶ 73.   The only thing "novel" is the Committee's baseless objection.   Courts in this district routinely approve provisions in final debtor-in-possession financing orders (which pertain to the debtor's use of cash collateral) and in cash collateral orders providing that adequate protection liens are not subject or junior to any lien or

---

[7]    See, e.g., In re LightSquared Inc., No. 12-12080 (SCC) (Bankr. S.D.N.Y. Feb. 19, 2013; In re Am. Media, Inc., No. 10-16149 (MG), 2010 WL 5141244 (Bankr. S.D.N.Y. Dec. 6, 2010); In re Boston Generating, LLC, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2010); In re Quicksilver Res. Inc., No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015).

security interest that is avoided under section 551 of the Bankruptcy Code.[8]  To do otherwise would be to make adequate protection inadequate and ineffective.

16.      As this Court stated at the Interim Hearing, the First Lien Secured Parties' adequate protection liens are senior in priority to everything else.  See First Day Hr'g Tr. at 86:17–88:12 ("Adequate protection liens are first.").  The First Lien Agent is not aware of any legal authority to support the Committee's proposition that "the statutory rule of section 551 takes precedence over an adequate protection lien on similar collateral." See Objection at ¶ 77. The Committee's counsel has consented to similar provisions in other cases where it served as either counsel to the debtor or the creditors' committee.[9]

17.      The Committee conveniently ignores the way adequate protection works.  The First Lien Secured Parties are receiving adequate protection to protect them against diminution in value of the Prepetition Collateral during the pendency of these Cases.  Adequate protection liens do not attach asset by asset and then get removed if some assets are determined not to be part of the prepetition secured creditor's collateral package.  If any of the liens of the First Lien Secured Parties are avoided, they will not get adequate protection for the diminution in value of the assets subject to the avoided lien.  However, the First Lien Agent will still have adequate protection

---

[8]     See e.g., In re Am. Media, Inc., 2010 WL 5141244, at *6; In re Inversiones Alsacia S.A., Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Nov. 5, 2014); In re LightSquared., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. Feb. 19, 2013); In re LodgeNet Interactive Corp., Case No. 13-10238 (SCC) (Bankr. S.D.N.Y. Feb. 27, 2013); In re Marco Polo Capital Mkts., LLC, Case No. 12-14870 (SCC) (Bankr. S.D.N.Y. Jan. 16, 2013); In re Patriot Coal Corp., Case No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2012); In re Hawker Beechcraft, Inc., Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012); In re Eastman Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 16, 2012); In re BP Clothing LLC, Case No. 11-15696 (SCC) (Bankr. S.D.N.Y. Jan. 5, 2012); In re Sbarro, Inc., Case No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 4, 2011); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009).

[9]     See, e.g., In re MCG Ltd. P'ship, Case No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012); In re CHL, Ltd., Case No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re R.H. Donnelley Corp., Case No. 09-11833 (KG) (Bankr. D. Del. June 25, 2009); In re Wellman, Inc., Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2008).

liens on, and adequate protection claims with recourse to, all other Collateral, subject only to the limitations described in the Final Order.  That is how adequate protection works.

18.     The Committee asserts without authority that "if an estate steps into a part of a lien position via section 551, it also steps into the related portion of the adequate protection lien that protects the value of the underlying avoided lien."  See Objection at ¶ 77.  However, there is no basis to give the estate the extraordinary remedy of being able to step into the shoes of the Prepetition Secured Parties with respect to adequate protection liens provided pursuant to a final cash collateral order.  When an avoided lien is preserved for the estate under section 551 of the Bankruptcy Code, the estate "receives only the bundle of rights given . . . by Congress in the Bankruptcy Code."  In re Carmichael, No. 06-10952, 2012 Bankr. LEXIS 4752, at *8 (Bankr. D. Kan. Oct. 10, 2012).  The estate is not granted "the ancillary contractual rights against the debtor that were held by the party whose lien has been avoided," including any right to adequate protection.  Id.

### C.     Waiver of Section 506(c) is Appropriate and Routinely Granted

19.     The Committee's objection to the partial waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code is also without merit and should be overruled.  The First Lien Agent has already consented to the use of Cash Collateral (including Disputed Cash) to cover all of the Debtors' operating expenses and virtually all expenses of these Cases.  The First Lien Agent also agreed to the outer-limit of an investigation budget, a very generous carve-out (which was doubled to $2 million at the Committee's request) and a Carve Out Reserve.  In addition, the First Lien Agent agreed that in the event any (i) Disputed Cash that is neither Prepetition Collateral, proceeds of Prepetition Collateral, nor subject to a constructive trust or other equitable remedy, or (ii) unencumbered cash (collectively, "Other Cash") is used to preserve or dispose of the Prepetition Collateral, the Debtors can "apply to the Court to recover

11

the reasonable necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the Prepetition Secured Parties." <u>See</u> Final Order at ¶ 15. The proposed Final Order does not prevent the Committee from seeking standing to pursue this same limited surcharge to the extent it is permitted to do so by applicable law. <u>Id</u>. The Committee insists that the Debtors and the Committee retain unlimited rights under section 506(c) against the Prepetition Secured Parties.

20.    The Debtors elected, as an exercise of their business judgment, to include the section 506(c) waiver after having negotiated a consensual surcharge with the Prepetition Secured Parties. Although the Committee tries to upset the Debtors' compromise and retain for itself the ability to litigate over this issue (and many others) in the future, the right to recover the costs of preserving or disposing of a secured creditor's collateral under section 506(c) is expressly limited to a trustee or debtor-in-possession. In <u>Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1 (2000), the United States Supreme Court held that "[t]he question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision [section 506(c)]. We have little difficulty answering yes." <u>Id.</u> at 6; <u>see also</u> <u>In re Smart World Techs., LLC</u>, 423 F.3d 166, 181-82 (2d Cir. 2005) ("Section 506(c) . . . allows only the 'trustee,' or debtor-in-possession, to take advantage of this exception."); <u>Debbie Reynolds Resorts, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)</u>, 255 F.3d 1061, 1065 (9th Cir. 2001) (following <u>Hartford</u>); <u>In re River Ctr. Holdings, LLC</u>, 394 B.R. 704, 717 (Bankr. S.D.N.Y. 2008) (same).

21.    The Supreme Court has made it clear that the right of a creditors' committee to be heard on any issue arising in a bankruptcy case pursuant to section 1109(b) of the Bankruptcy Code does not entitle it to usurp the exclusive role of the debtor under those provisions of the

Bankruptcy Code, like section 506(c), that grant the debtor such exclusive role.  See Hartford,

530 U.S. at 8-9.  Nor may the Committee accomplish by veto what the statute forbids it to do

directly—namely, substitute its own judgment for that of the Debtors in determining whether to

assert the debtor's rights under section 506(c).  It follows that the Debtors' waiver of that right in

exchange for the material benefits they will receive under the Final Order as part of the

consensual negotiation of Cash Collateral usage is well within the Debtors' business judgment.

22.    Like the other provisions the Committee objects to, section 506(c) waivers are

common in cash collateral orders.  Courts in this and other districts have routinely approved

section 506(c) waivers in final debtor-in-possession financing and cash collateral orders, using

virtually the same formulation as in the Final Order, particularly when the prepetition secured

lenders agree to permit use of cash collateral to fund postpetition expenses on a current basis and

subordinate their liens and claims to a professional fee carve-out.[10]

23.    Despite the Committee's objection to the section 506(c) waiver here, the

Committee's counsel has agreed to such waivers in other cases where it served as either counsel

---

[10]    See e.g., In re Am. Media, Inc., 2010 WL 5141244, at *4; In re Global Container Lines, Ltd., No. 09-78585
(AST), 2010 WL 5053965, at *5 (Bankr. E.D.N.Y. Mar. 3, 2010); Nat'l Westminster Bank USA v. Zindler (In
re Film Equip. Rental Co.), No. 91 Civ. 3476 (CSH), 1991 WL 274464 (Bankr. S.D.N.Y. Dec. 12, 1991); see
also In re Quicksilver Res. Inc., Case No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015); In re Sbarro LLC,
Case No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 25, 2014); In re RDA Holding Co., Case No. 13-22233
(RDD) (Bankr. S.D.N.Y. Mar. 25, 2013); In re LodgeNet Interactive Corp., Case No. 13-10238 (SCC) (Bankr.
S.D.N.Y. Feb. 27, 2013); In re Patriot Coal Corp., Case No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2012);
In re LightSquared Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. July 17, 2012); In re Hawker Beechcraft,
Inc., Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012); In re Inverness Distribution Ltd. f/k/a
Morgan Creek Int'l Ltd., Case No. 11-15939 (SCC) (Bankr. S.D.N.Y. Mar. 28, 2012); In re Eastman Kodak
Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 16, 2012); In re Hostess Brands, Inc., Case No. 12-
22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); In re Sbarro, Inc., Case No. 11-11527 (SCC) (Bankr. S.D.N.Y.
May 4, 2011); In re Great Atl. & Pac. Tea Co., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 11, 2011); In
re Boston Generating, LLC, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2010); In re Neff Corp.,
Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 30, 2010); In re Charter Commc'ns, Inc., Case No. 09-11435
(JMP) (Bankr. S.D.N.Y. Apr. 15, 2009).

to the debtors or the creditors' committee.[11]

### D. The Section 552(b) Waiver is Appropriate and Routinely Granted

24.     The Committee asserts that the waiver of the section 552(b) "equities of the case"

exception, another waiver which is routinely granted by this Court and other courts in consensual

cash collateral orders, should not be approved.  The First Lien Agent has agreed to limit this

customary waiver in the event that Other Cash is used to benefit the Prepetition Collateral.  In

that circumstance, the proposed Final Order permits the Debtors to argue that based on the

equities of the case, the Prepetition Secured Parties' liens (other than Adequate Protection Liens)

should not attach to certain postpetition proceeds of the Prepetition Collateral to the extent Other

Cash was used to benefit the Prepetition Collateral.  Final Order at ¶ 29.  The proposed Final

Order does not prevent the Committee from seeking standing to pursue the same relief.  Id.

25.     Without articulating any basis for application of the "equities of the case"

exception, the Committee asks to keep the opportunity open for litigation over this issue in the

future "after these cases develop and the equities are known."  See Objection at ¶ 51.  The

Committee's request ignores all of the other benefits to the Debtors the First Lien Agent has

agreed to in the Final Order, including those discussed in this reply brief.

26.     Section 552(b) of the Bankruptcy Code provides that a perfected lien on

prepetition collateral extends to the postpetition proceeds of such collateral unless the court

orders otherwise based on the "equities of the case."  Courts have routinely held that a waiver of

the "equities of the case" exception is appropriate where lenders agree to subordinate their claims

---

[11]   See, e.g., In re MCG Ltd. P'ship, Case No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012); In re CHL, Ltd., Case No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Perkins & Marie Callender's Inc., Case No. 11-11795 (KG) (Bankr. D. Del. July 12, 2011); In re R.H. Donnelley Corp., Case No. 09-11833 (KG) (Bankr. D. Del. June 25, 2009); In re Wellman, Inc., Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2008).

to a carve-out, as the Prepetition Secured Parties have done here.[12]  In addition, to accommodate the Committee, the First Lien Agent consented to (i) doubling the amount of the Carve Out from $1 million to $2 million, (ii) including allowed fees and expenses of several law firms, investment banks, financial advisors and Committee members in the Carve Out, (iii) permitting usage of the Disputed Cash and other Cash Collateral pursuant to the Budget, and (iv) reserving the Debtors' right to seek a section 506(c) surcharge under limited circumstances.

27.    Courts have generally refused to apply the "equities of case" exception where a lender's cash collateral is required and is being used to preserve the value of the debtor's assets. See In re Muma Servs. Inc., 332 B.R. 541, 549 (Bankr. D. Del. 2005) ("equities of the case" exception did not apply where the debtor was only able to operate through the use of lender's cash collateral).  Because the Debtors here require the use of Cash Collateral (including the Disputed Cash) to continue their businesses, a waiver of the "equities of the case" exception is appropriate.

28.    Despite the Committee's assertion that the section 552(b) waiver is unreasonable, the Committee's counsel has previously agreed to such waivers in other cases where it served as

---

[12]    See In re Am. Media, Inc., 2010 WL 5141244, at *4 ("In light of the Prepetition Agent's and Prepetition Lender's agreement to subordinate their liens and superpriority claims to the Carve-Out . . . the Prepetition Agent and Prepetition Lenders are entitled to a waiver of . . . any 'equities of the case' claims under section 552(b) of the Bankruptcy Code . . . ."); In re Blockbuster Inc., No. 10-14997, 2010 WL 4873646, at *18 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that, because the prepetition lenders had agreed to that their claims were subordinate to a carve-out, the "equities of the case" exception under section 552(b) would not apply); see also In re LodgeNet Interactive Corp., Case No. 13-10238 (SCC) (Bankr. S.D.N.Y. Feb. 27, 2013); In re LightSquared Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. July 17, 2012); In re Hawker Beechcraft, Inc., Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012); In re Inverness Distribution Ltd. f/k/a Morgan Creek Int'l Ltd., Case No. 11-15939 (SCC) (Bankr. S.D.N.Y. Mar. 28, 2012); In re Hostess Brands, Inc., Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); In re Boston Generating, LLC, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2010); In re Neff Corp., Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 30, 2010); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); see also In re Quicksilver Res. Inc., Case No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015).

15

either counsel to the debtors or the creditors' committee.[13]

### E.    Waiver of Marshaling Is Appropriate and Routinely Granted

29.    The Committee complains that the Prepetition Secured Lenders should not get the benefit of a waiver of the "marshaling" doctrine.  As an initial matter, marshaling is an equitable doctrine that can only be invoked by a secured creditor.  Courts have consistently held that unsecured creditors' have no ability to invoke the doctrine.  Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.), 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999); In re Advanced Mktg. Servs., 360 B.R. at 427.  At least one bankruptcy court denied standing to an unsecured creditors' committee seeking to invoke marshaling.  See In re Gibson Grp., Inc., 151 B.R. 133, 134-35 (Bankr. S.D. Ohio 1993).[14]

30.    The only secured creditors other than the First Lien Secured Parties that would have a right to invoke marshaling, the Second Lien Secured Parties, have explicitly waived that right in the Intercreditor Agreement.  See Intercreditor Agreement, §7.3(e).[15]  The Committee nevertheless asserts that is should have the right to seek derivative standing to pursue marshaling remedies against the Prepetition Secured Lenders on behalf of the estates and should not be

---

[13]    See, e.g., In re MCG Ltd. P'ship, Case No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012); In re CHL, Ltd., Case No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Perkins & Marie Callender's Inc., Case No. 11-11795 (KG) (Bankr. D. Del. July 12, 2011); In re Wellman, Inc., Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2008).

[14]    The First Lien Agent is aware of only one decision that has allowed marshaling for the benefit of unsecured creditors (Berman v. Green (In re Jack Green's Fashions for Men Big and Tall, Inc.), 597 F.2d 130 (8th Cir. 1979)), a pre-Bankruptcy Code case that has been widely criticized. See Interfirst Bank Fanning v. Bernell (In re Mesa Cont'l, Inc.), 79 B.R. 669 (Bankr. S.D. Tex. 1987); see also Fundex Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co.), 53 B.R. 772, 779 (Bankr. S.D.N.Y. 1985); Fed. Land Bank of Columbia v. Tidwell (In re McElwaney), 40 B.R. 66, 72 n.10 (Bankr. M.D. Ga. 1984); Whirlpool Corp. v. Plad, Inc. (In re Plad, Inc.), 24 B.R. 676, 679 n. 2 (Bankr. M.D. Tenn. 1982); Peoples Bank of Tuscaloosa v. The Comput. Room, Inc. (In re The Comput. Room, Inc.), 24 B.R. 732, 735 n.5 (Bankr. N.D. Ala. 1982).

[15]    Section 7.3(e) of the Intercreditor Agreement provides that "[t]he [Second Lien Agent], on behalf of itself and the [Second Lien Secured Parties], agrees not to assert and hereby . . . waives, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or otherwise claim the benefit of, any marshaling."

restricted by the terms of the Intercreditor Agreement.  The Committee has offered no basis to challenge the Debtors' judgment that a marshaling waiver is appropriate here in the context of a consensual cash collateral order.[16]  The Committee has provided no support for its vague and generalized assertions that the waiver will be detrimental to unsecured creditors.

31.    Similar marshaling waivers have been approved by this Court and others in many final cash collateral and debtor-in-possession financing orders.[17]  The Committee's counsel itself has represented many debtors and creditors' committees in other cases where consensual marshaling waivers were approved.[18]

### F.    The Committee Can Investigate Prepetition Setoffs of Swap Payments.

32.    The Objection asserts that the Final Order prevents the Committee from investigating the prepetition setoff of swap termination payments owed by individual First Lien Secured Lenders against the First Lien Prepetition Indebtedness.  Although all of the swaps that terminated before the Petition Date were with First Lien Secured Lenders, they were all

---

[16]    In the face of numerous cases holding that unsecured creditors cannot invoke the doctrine of equitable marshaling, the Committee relies on a small subset of cases where a court has held that a debtor (or an official committee that has been granted derivative standing) has standing to pursue marshaling by virtue of the powers given to the trustee by section 544(a) of the Bankruptcy Code. Although the Committee asserts that case law is clear on this point—it is not. At least one court has held that a debtor may not pursue marshaling actions. In re Blagg, 372 B.R. 502 (Bankr. D. Kan. 2007) ("The Court finds persuasive the argument that a [debtor] lacks standing to assert marshaling for the benefit of unsecured creditors.").

[17]    See, e.g., In re Inversiones Alsacia S.A., Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Nov. 5, 2014); In re Velo Holdings Inc., No. 12-11384 (MG) (Bankr. S.D.N.Y. April 23, 2012); In re Hostess Brands, Inc., Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); In re Sbarro, Inc., Case No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 4, 2011); In re Boston Generating, LLC, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2010); In re Truvo USA LLC, Case No. 10-13513 (AJG) (Bankr. S.D.N.Y. July 22, 2010); In re Neff Corp., Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 30, 2010); In re Almatis B.V., Case No. 10-12308 (MG) (Bankr. S.D.N.Y. May 17, 2010); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); In re Quicksilver Res. Inc., Case No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015).

[18]    See, e.g., In re MCG Ltd. P'ship, Case No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012); In re CHL, Ltd., Case No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Perkins & Marie Callender's Inc., Case No. 11-11795 (KG) (Bankr. D. Del. July 12, 2011); In re Special Devices, Inc., Case No. 08-13312 (MFW) (Bankr. D. Del. Jan. 14, 2009).

terminated in accordance with their terms, and all of these swap providers exercised their valid

setoff rights, nothing in the Interim Order or the Final Order purports to prevent the Committee

from investigating these prepetition setoffs.[19]

**G.    The Committee's Other Objections are Without Merit and Should Be Overruled.**

33.    The Committee's proposed form of Final Order includes many proposed changes

to other customary and appropriate provisions without explaining the reasons for those proposed

changes.   For example, the Committee took the liberty of reversing changes required by the

United States Department of Justice.   As agreed to by the Debtors, the First Lien Agent and the

Second Lien Agent, paragraph 19 of the Final Order provides that the Prepetition Secured Parties

shall not be deemed to be in control of the Debtors or be deemed a "responsible person,"

"owner" or "operator" of the Debtors for purposes of CERCLA under specified circumstances.

This language is consistent with language found in other cash collateral orders.[20]

34.    The Committee also erroneously states that the proposed deadline for the

Committee to complete its investigation of the Prepetition Secured Parties' liens and claims

---

[19]    By the Petition Date, the Debtors only had two swap agreements that had not been terminated.   The
Committee's assertion that the proceeds from these swaps are not Prepetition Collateral is unfounded and
irrelevant in any event.   The Interim Order provided that if those swaps remained in place, the scheduled
payments would constitute Disputed Cash, but if they terminated, the termination payments would be paid to
the First Lien Agent as adequate protection and applied to reduce the First Lien Prepetition Indebtedness.  The
Debtors' postpetition remittance of these termination payments to the First Lien Agent was authorized under
the Interim Order and was entirely appropriate.   Nevertheless, the First Lien Agent has agreed to reserve the
Committee's right to seek to unwind these adequate protection payments, provided that the payments may only
be unwound if the Court specifically finds they unduly advantaged the First Lien Secured Parties.  Final Order
at ¶3(g).

[20]    In re Hawker Beechcraft, Inc., No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012); In re Hostess Brands,
Inc., No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); In re Great Atl. & Pac. Tea Co., No. 10-24549
(RDD) (Bankr. S.D.N.Y. Jan 11, 2011); In re Charter Commc'ns, Inc., No. 09-11435 (JMP) (Bankr. S.D.N.Y.
Apr. 15, 2009); In re Quicksilver Res. Inc., No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015).

violates Local Rule 4001-2 (f).[21] Objection at ¶ 67.  The Final Order provides an investigation

period of more than three months from the formation of the Committee.  The First Lien Agent

has also agreed to permit the Committee Challenge Deadline to be tolled upon the Committee's

filing of an *STN* motion or a request for an extension of the deadline for "cause."

35.    The Committee proposes to modify paragraph 27 of the Final Order, which

provides that the Prepetition Agents and the other Prepetition Secured Parties will not be

required to file proofs of claim and that the stipulations in the Final Order will be deemed to

constitute a timely filed proof of claim.  This provision is consistent with those found in other

cash collateral orders.[22]  The Committee wants to modify this provision so that that the Final

Order will only constitute a timely filed proof of claim with respect to liquidated amounts set

forth in the Final Order.  That modification would require the Prepetition Agents and the other

Prepetition Secured Parties to file proofs of claim or forever waive claims that are unliquidated

or contingent at the time of entry of the Final Order.  Since that would defeat the purpose of the

provision (which is purely a matter of administrative convenience), the Committee's proposed

change should be rejected.

## CONCLUSION

36.    The Debtors, the First Lien Agent and the Second Lien Agent have relentlessly

tried to achieve a consensual final cash collateral order with the Committee.  The Final Order

gives the Debtors the ability to continue their businesses, avoid unnecessary litigation at the

---

[21]  Local Rule 4001-2(f) provides that the minimum time period for a committee to commence or move for authority to commence a challenge proceeding as representative of the estate "shall ordinarily be sixty (60) days from the date of entry of the final order authorizing the use of cash collateral or the obtaining of credit, or such longer period as the Court orders for cause shown prior to the expiration of such period."

[22]  In re Boston Generating, LLC, No. 10-14419 (SCC) (Bankr. S.D.N.Y. Sept. 22, 2010); In re Quicksilver Res. Inc., No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015).

outset of these Cases, reserves parties' rights and increases the chances the Debtors will be able

to reorganize expeditiously.   But these benefits are not sufficient for the Committee, which has

refused to make any concessions and is clearly intent on making these Cases as litigious as

possible.   Under these circumstances and for all of the reasons discussed herein, the First Lien

Agent respectfully requests that the Court approve the compromise that has been offered by the

other parties by entering the Final Order and overruling the Objection, so that the Debtors can

use cash collateral on consensual, reasonable terms while they focus on finding a path to emerge

from chapter 11.[23]

Dated:  September 2, 2015
            New York, New York

/s/ Margot B. Schonholtz
Margot B. Schonholtz
Ana M. Alfonso
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 728-8000
Facsimile:      (212) 728-8111

*Counsel for Wells Fargo Bank, National Association,
as First Lien Agent*

---

[23]   Although the Committee' Objection asserts a laundry list of objections, the Committee purports to reserve the right to raise new objections in writing or orally at the Final Hearing, the First Lien Agent assumes the Committee will not have the opportunity to do so since the Court instructed the Committee to articulate all of its objections by the August 19, 2015 objection deadline.  See Objection at ¶ 81; Aug. 10, 2015 Hr'g Tr. at 9-10 (Bankr. S.D.N.Y.).

In addition, the Bank of New York Mellon Trust Company, N.A., as indenture trustee for the 9.75% Notes due 2017 [Dkt. No. 201] and an Ad Hoc Committee of Former Forest Employees [Dkt. No. 236] filed "joinders" to the Committee's Objection which purport to reserve these parties' rights to be heard on the Committee's Objection and to raise additional objections in writing or at the Final Hearing. The objection deadline for parties other than the Committee was August 3, 2015, and neither of these parties obtained an extension from the Court of their time to object.  The First Lien Agent submits that these parties that filed late placeholder objections (which in the case of the Ad Hoc Committee, was filed more than a week after the Committee's extended objection deadline) should not be heard in opposition to the Motion.