Paul M. Basta, P.C.                         James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.                     Ryan Blaine Bennett (admitted *pro hac vice*)
Christopher Marcus, P.C.                    Brad Weiland (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**                    **KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**      **KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue                        300 North LaSalle Street
New York, New York 10022                    Chicago, Illinois 60654
Telephone:    (212) 446-4800                Telephone:    (312) 862-2000
Facsimile:    (212) 446-4900                Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | ) | Case No. 15-11835 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' OMNIBUS REPLY
## IN SUPPORT OF THE DEBTORS' CASH COLLATERAL
## MOTION AND IN RESPONSE TO OBJECTIONS THERETO

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby submit this omnibus reply (the "Reply") in support of the Debtors' motion to use cash

collateral (the "Motion")[2] and in response to the objections[3] thereto.  In support of this Reply,

and in further support of the Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440).  The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is:  1415 Louisiana, Suite 1600, Houston, Texas 77002.

[2]  *Debtors' Motion for the Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 9].  Recognizing the Debtors' immediate need to access Cash Collateral, on July 16, 2015, the Court entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local*

## Preliminary Statement

Following extensive postpetition negotiations with the Prepetition Secured Parties and the Committee, and after significant concessions on the part of the Prepetition Secured Parties, the Debtors have made noteworthy changes to the Interim Order for the benefit of unsecured creditors, as evidenced in the revised proposed order (the "Proposed Final Order") attached hereto as "Exhibit A."  As a result of numerous in-person and telephonic discussions, and several rounds of revisions to the Proposed Final Order, the Debtors, the Prepetition Secured Parties, and the Committee (collectively, the "Parties") were able to successfully narrow the Committee's filed list of 31 objections to the 8 issues that remain outstanding.  The Debtors are continuing to work with all Parties to narrow the issues even further—if not resolve all open issues—prior to the hearing with respect to the use of Cash Collateral.  In particular, after careful consideration

---

*Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 60] (the "Interim Order").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or Interim Order, as applicable.

[3]   *Limited Objection of Alerion Gas AXA, LLC to Debtors' Motion for the Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 105] (the "Alerion Objection"); *Limited Objection of the Ad Hoc Committee of Forest Noteholders to Debtors' Motion for the Entry of Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 137] (the "Forest Noteholders' Objection"); *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for the Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 198] (the "Committee Objection"); *Limited Objection and Reservation of Rights to Debtors' Motion for the Entry of a Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001-2 (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket. No. 202] (the "Second Lien Agent Objection" and, together with the Alerion Objection, the Forest Noteholders' Objection, the Committee Objection, and several informal comments and requests regarding the Interim Order received by the Debtors from various parties, the "Objections").

and arm's-length, at times contentious, negotiations, the Debtors believe they have resolved the

following previously disputed issues:

| *Issue* | *Objection/Request* | *Resolution* |
|---|---|---|
| *Committee's Filed Objections* | | |
| Ability to Challenge Swap Termination Payments | The Committee argues in its objection that it should be able to investigate and challenge swap termination payments applied both prepetition and postpetition to permanently reduce the First Lien Indebtedness. *See* Committee Objection ¶¶ 60-62. | The Proposed Final Order provides that the Committee may file an adversary proceeding or contested matter with respect to the prepetition termination of any Swap Agreement, and may seek to unwind the payment of postpetition swap proceeds as adequate protection to the extent that such payments unduly advantaged the First Lien Secured Parties. *See* Proposed Final Order ¶¶ 3(g); 22(a). |
| Adequate Protection Liens on the Proceeds of Avoidance and Other Actions | The Committee objects to the grant of "adequate protection liens on the proceeds of avoidance and other actions against" the Prepetition Secured Parties, arguing that the Prepetition Secured Parties should not be entitled to liens on the proceeds of actions relating to their own alleged conduct. *See* Committee Objection ¶¶ 40-42. | The Proposed Final Order specifically carves out the proceeds of both Avoidance Actions (as defined therein) and other "claims and causes of action against the First Lien Secured Parties arising in connection with the Merger [as defined therein] or any transaction related thereto" from the First Lien Secured Parties' Adequate Protection Liens. The Proposed Final Order also carves out such actions against all of the Prepetition Secured Parties from the Second Lien Secured Parties' Adequate Protection Liens. *See* Proposed Final Order ¶¶ 3(i); 4(e).<br><br>These broad carve-outs for actions against the Prepetition Secured Parties satisfy the Committee's objection. |
| Definition of Collateral Diminution | The Committee argues in its objection that the definition of Collateral Diminution provided in the Interim Order is overly broad, and requests that such definition be modified to specify that Collateral | The Proposed Final Order includes a definition of Collateral Diminution that tracks the language of section 361 of the Bankruptcy Code and should be acceptable to all Parties. *See* Proposed Final |

| Issue | Objection/Request | Resolution |
|---|---|---|
| | Diminution is calculated on an "aggregate basis." *See* Committee Objection ¶¶ 70-74. | Order ¶ 5. |
| 506(c) Waiver | The Committee objects to the waiver of section 506(c) of the Bankruptcy Code provided in the Interim Order as inappropriate to the extent that it would permit unencumbered cash to be used to "preserve and enhance the secured lenders' collateral." *See* Committee Objection ¶ 54. | The Proposed Final Order includes a waiver of section 506(c) of the Bankruptcy Code only with respect to any cash that is determined to be Cash Collateral, and preserves the Debtors' rights with respect to any Other Cash that "is used to preserve or dispose of the Prepetition Collateral." *See* Proposed Final Order ¶ 15.<br><br>The Proposed Final Order also protects the Committee's ability to seek standing to pursue a surcharge claim under section 506(c) of the Bankruptcy Code to the extent that the Other Cash is used to preserve or dispose of the Prepetition Collateral to recover the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the Prepetition Secured Parties. |
| *Committee's Requested "Additional Modifications"* | | |
| Budget Notice | The Committee requests three business days' advance notice of modifications to the Budget. *See* Committee Objection, Exhibit A ¶ 2. | Included in Proposed Final Order at ¶ 2. |
| Non-Conforming Use Consent Rights | The Committee requests the right to consent to Non-Conforming Uses of Cash Collateral. *See* Committee Objection, Exhibit A ¶ 2. | The Debtors are providing the Committee with notice of Non-Conforming Uses. *See* Proposed Final Order at ¶ 2. |
| Limitation on Second Lien Secured Parties' Adequate Protection | The Committee requests that the adequate protection liens and claims provided to the Second Lien Secured Parties be limited to the extent of Collateral Diminution. *See* Committee Objection, Exhibit A ¶ 4. | Included in Proposed Final Order at ¶ 4. |

| *Issue* | *Objection/Request* | *Resolution* |
|---|---|---|
| Second Lien Agent's Remedies | The Committee requests a clarification that the Second Lien Agent's sole remedy for the Debtors' failure to provide the Second Lien Agent with reporting materials is to seek an order of the Court compelling performance. *See* Committee Objection, Exhibit A ¶ 4(d). | Included in Proposed Final Order at ¶ 4(d). |
| Post-Carve Out Notice Cap | The Committee requests an increase in the size of the Post-Carve Out Notice Cap from $1 million to $2 million. *See* Committee Objection, Exhibit A ¶ 7. | Included in Proposed Final Order at ¶ 7. |
| Committee Member Fees and Expenses | The Committee requests that the fees and expenses of Committee Members be included in the Carve Out. *See* Committee Objection, Exhibit A ¶ 7. | The Carve-Out in the Proposed Final Order provides for the reimbursement of reasonable and documented out-of-pocket expenses for Committee members incurred in furtherance of their duties as Committee members. *See* Proposed Final Order ¶ 7. |
| Notice of Expiration Date Extension | The Committee requests that any notice of extension of the Expiration Date for the Debtors' right to use Cash Collateral be publicly filed on the Court's docket. *See* Committee Objection, Exhibit A ¶ 10. | Included in Proposed Final Order at ¶ 10. |
| Termination Trigger Exception | The Committee requests a clarification that the Debtors' compliance with discovery initiated by parties other than the Debtors does not trigger a Termination Event arising from the Debtors' filing or supporting an action challenging the validity, enforceability, perfection, or priority of the Prepetition Secured Parties' liens. See Committee Objection, Exhibit A ¶¶ 10(k), (l). | Included in Proposed Final Order at ¶¶ 10(k), (l). |
| Reservation of Rights for Operating Account Cash | The Committee requests that it be included in the parties' reservations of rights regarding the ongoing dispute over cash deposited into the Debtors' Operating Account. *See* | Included in Proposed Final Order at ¶ 14. |

| Issue | Objection/Request | Resolution |
|---|---|---|
| | Committee Objection, Exhibit A ¶ 14. | |
| Reservations of Rights for Binding Order | The Committee requests a clarification that where the Proposed Final Order is binding upon a trustee or following conversion or dismissal, the Proposed Final Order remains subject to certain reservations of rights in favor of the Debtors and the Committee that are contained elsewhere in the Proposed Final Order. *See* Committee Objection, Exhibit A ¶ 18. | Included in Proposed Final Order at ¶ 18. |
| Budget Increase | The Committee requests an increase in the amount of cash available to it for its investigation from $50,000 to $750,000. *See* Committee Objection, Exhibit A ¶ 24. | The Proposed Final Order provides for an investigation budget of $250,000, five times the amount provided in the Interim Order and well within the range of investigation budgets provided in this district.[4] *See* Proposed Final Order ¶ 24. |
| Proofs of Claim | The Committee requests that the Prepetition Secured Parties be required to file proofs of claim for any claimed amounts not stipulated or provided for in the Proposed Final Order. *See* Committee Objection, Exhibit A ¶ 27. | The current draft of the Proposed Final Order provides that the Prepetition Secured Parties need not file proofs of claim only with respect to the Debtors' stipulations in the Proposed Final Order or the Adequate Protection Liens and Adequate Protection Claims granted thereunder. *See* Proposed Final Order ¶ 27. |

---

[4] The Debtors have not found any cases in this district providing a budget greater than $250,000 for a single investigation by a committee of unsecured creditors. *See, e.g., In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 23, 2014) ($250,000); *In re Excel Maritime Carriers, Ltd.*, Case No. 13-23060 (RDD) (Bankr. S.D.N.Y. Aug. 6, 2013) ($200,000); *In re Patriot Coal Corp.*, Case No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2012) ($250,000); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. June 25, 2012) ($250,000)*; In re Eastman Kodak Co.*, Case No. 12-10202 (AG) (Bankr. S.D.N.Y. Feb. 16, 2012) ($250,000 for U.S. Investigation)*; In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012) ($250,000); *In re Terrestar Networks Inc.*, Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. Nov. 18, 2010) ($250,000)*; In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JP) (Bankr. S.D.N.Y. Apr. 15, 2009) ($250,000).

| *Issue* | *Objection/Request* | *Resolution* |
|---|---|---|
| Timing of Reporting to Committee | The Committee requests a clarification that reports issued in compliance with the Debtors' reporting requirements under the Proposed Final Order will be delivered to the Committee at the same time as such reports are delivered to the Prepetition Secured Parties. *See* Committee Objection, Exhibit A ¶ 34. | Included in Proposed Final Order at ¶ 34. |
| Segregation Procedures - Approval Rights | The Committee requests approval rights for the formation of the procedures for the segregation of the Segregated Cash Collateral. *See* Committee Objection, Exhibit A ¶¶ 3(d), 12. | Although the Debtors have included language providing for consultation with the Committee, this request is moot because the segregation procedures have already been established and the Committee has already been consulted. *See* Proposed Final Order ¶ 12. |
| Limitation of Termination Events to Material Failures | The Committee requests that certain Termination Events related to the Debtors' failure to comply with certain reporting requirements and other provisions of the order shall be triggered only by "material" failures. *See* Committee Objection, Exhibit A ¶¶ 10(f), (h). | The Debtors have discussed with the Parties that they believe this inclusion is unnecessary. |
| Non-Consensual Use of Cash Collateral | The Committee requests a clarification that the Proposed Final Order does not preclude the Debtors from seeking non-consensual use of Cash Collateral. *See* Committee Objection, Exhibit A ¶ 10. | The Debtors have discussed with the Parties that this inclusion is unnecessary in light of the fact that the plain language of the Proposed Final Order does not preclude the Debtors from seeking non-consensual use of Cash Collateral. |
| Implications of Claim Setoff | The Committee requests a clarification that an adequate protection lien is deemed eliminated where the underlying claim is disallowed. *See* Committee Objection, Exhibit A ¶ 22(d). | This objection is addressed ¶ 3(c) of the Proposed Final Order. |
| *Committee's Informal Comments/Requests* | | |
| Reservation of Rights to Object to Claims for Additional Interest | The Committee requests a reservation of both its and the Debtors' rights to object to claims for the payment of additional interest at rates other than those | Included in Proposed Final Order at ¶ 3(c). |

| Issue | Objection/Request | Resolution |
|---|---|---|
| | provided for in the Proposed Final Order. | |
| Use, Sale, or Lease of Material Assets | The Committee requests consultation rights with respect to the use, sale or lease of the Debtors' material assets. | Included in Proposed Final Order at ¶ 3(d). |
| Notice of Retention of Additional Professionals | The Committee requests that the First Lien Agent inform the Debtors and the Committee of the retention of a professional other than those specified in the Proposed Final Order. | Included in Proposed Final Order at ¶ 3(e). |
| Treatment of Disputed Invoices | The Committee requests that the Debtors not be required to pay any Disputed Invoice Fees of Professional Persons until after the Court holds a hearing and rules on any dispute with respect to such Disputed Invoice Fees. | The Debtors have addressed this objection in ¶ 3(e) of the Proposed Final Order. |
| Ordinary Course Clarification | The Committee requests a clarification that the Debtors' authorization to use Cash Collateral for any Non-Conforming Use approved by the First Lien Secured Parties without Court approval would be in the ordinary course of business. | The Debtors have discussed with the Parties that this provision is unnecessary due to the plain language of the Bankruptcy Code. |
| **Other Objections** | | |
| Federal or State Government Liability | The United States Department of Justice requests a clarification that the provision of the Proposed Final Order addressing the Debtors' liability to third parties does not apply to certain liabilities to federal or state governments. | Included in Proposed Final Order at ¶ 19. |
| Mineral Leases and Other Related Agreements | Alerion Gas AXA, LLC ("Alerion") filed an objection to the Motion requesting the inclusion of certain language clarifying that nothing in the Proposed Final Order would affect the Debtors' obligations under various oil and gas leases and other related or similar agreements. *See* Alerion Objection at *2-4. | Language that the Debtors believe addresses Alerion's concern has been included in the Proposed Final Order at ¶ 31(c). |

These revisions address the vast majority of the concerns raised in the Objections, while also providing the Debtors with the liquidity necessary to continue operations and fund these chapter 11 cases. The Debtors believe the Prepetition Secured Parties have made significant concessions to reach an overall compromise and provide the Debtors with access to cash while the Debtors continue to evaluate and pursue potentially valuable claims and estate causes of action related to the business combination. As a result of these concessions, the Debtors were able to narrow the areas of disagreement between the Parties to the eight issues discussed below.

## <u>Reply</u>

**A.    The Debtors Have Significantly Revised the Proposed Final Cash Collateral Order to Address the Committee's Objections.**

1.    The eight remaining disputed issues before the Court are:   (a) whether the Debtors' proposed waiver of the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code is appropriate in light of the compromise between the Debtors and the Prepetition Secured Parties; (b) whether the no-marshalling provision is appropriate and should be approved; (c) whether the Adequate Protection Liens should be junior to or *pari passu* with any liens avoided and preserved for the benefit of the estates under section 551 of the Bankruptcy Code; (d) whether the length of time within which the Committee may investigate liens and potential avoidance actions (the "<u>Committee Challenge Period</u>") is sufficient for the Committee to conduct its investigation; (e) whether the language of the Proposed Final Order addressing the Debtors' and the Committee's rights and remedies with respect to the Adequate Protection payments should explicitly include the word "disgorgement"; (f) whether the Committee should be able to undo the portion of the settlement related to the right to reallocate or renegotiate professional fees; (g) whether the binding nature of the Proposed Final Order is appropriate; and (h) whether the Debtors must reimburse the professional fees of conflicts

counsel hired by the Second Lien Agent to object to the retention of Lazard Frères & Co. as the

Debtors' proposed investment banker.

**B.      Waiver of the Section 552(b) "Equities of the Case" Exception Is Routinely Permitted in this District and Reflects a Crucial Component of a Negotiated Agreement.**

2.       The first remaining disputed issue is the Debtors' proposed waiver of the "equities

of the case" exception contained in section 552(b) of the Bankruptcy Code.  *See* Committee

Objection ¶ 46-51.  Section 552(b) of the Bankruptcy Code extends prepetition security interests

to collateral and proceeds thereof postpetition "except to any extent that the court, after notice

and a hearing and based on the equities of the case, orders otherwise."  11 U.S.C. § 552(b).  This

"equities of the case" exception is "intended to ensure that secured creditors do not receive a

windfall benefit when a trustee uses assets of the estate . . .  and it is also used to adjust recovery

by a secured creditor in situations where there is an improvement or decline in the post-petition

collateral, especially in situations where the change in value is brought about by a party in the

bankruptcy."  *In re TerreStar Networks, Inc.*, 457 B.R. 254, 271 (Bankr. S.D.N.Y. 2011).

3.       In practice, secured creditors routinely request (and courts in this district routinely

approve) a waiver of "equities of the case" claims under section 552(b) of the Bankruptcy Code

in connection with a negotiated agreement for the consensual use of their cash collateral.  *See,

e.g.*, *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 4, 2012)

(approving a waiver of the "equities of the case" exception); *In re General Maritime Corp.*, Case

No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011) (same); *In re Blockbuster Inc.*, No. 10-

14997) (CGM) (Bankr. S.D.N.Y. Oct. 27, 2010) (same); *In re General Growth Props., Inc.*, 412

B.R. 122, 140 (Bankr. S.D.N.Y. 2009) (same); *see also In re Global Container Lines Ltd.*, 2010

WL 5053965 at *5 (Bankr. E.D.N.Y. Mar. 3, 2010) (same).  A waiver of the "equities of the

case" exception is often given as consideration for secured lenders' agreement to subject their

adequate protection and other liens to a carve-out for professional fees.  *See Am. Media*, 2010 WL 5141244 at *4; *General Growth Props.*, 412 B.R. at 127.

4.      The Court should approve the waiver of the "equities of the case" exception because its inclusion in the Proposed Final Order is the result of a settlement between the Prepetition Secured Parties and the Debtors as consideration for the Prepetition Secured Parties' significant concessions, including a 100% increase in the Carve-Out, which was requested by the Committee.  *See* Interim Order ¶ 7 (providing for a Carve-Out, senior in priority to the Adequate Protection Liens and Adequate Protection Claims, of $1 million to be set aside for the payment of the Debtors' and the Committee's professional fees in the event of a termination of the parties' agreement to use Cash Collateral).  The waiver was part of a robust, good-faith, arms'-length negotiation and was agreed to in the Debtors' business judgment.

5.      Further, the waiver of section 552(b) of the Bankruptcy Code contained in the Proposed Final Order reserves the Debtors' right to utilize the "equities of the case" exception to the extent that Other Cash is used to benefit the Prepetition Collateral.  Given the limited scope of this waiver, the rationale for the Committee's objection no longer applies, and the Court should overrule the Committee Objection with respect to this issue to the extent it is not withdrawn.

**C.      The No-Marshaling Provision Contained in the Proposed Final Order is Appropriate and Typical, and Should Be Approved.**

6.      The second issue that the Committee objects to is a provision in the Proposed Final Order that waives the Debtors' and other parties' right to seek to marshal assets.  *See* Committee Objection ¶ 56-59.  The doctrine of marshaling of assets applies where a senior secured creditor has more assets available to it for collection than a junior secured creditor of the same debtor.  *See In re Arlco, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999).  The doctrine allows a court to compel "a senior creditor [to] collect amounts owed it from the property or fund

in which the junior creditor has no interest, thereby producing a greater possibility that there will be remaining value in the only fund from which the junior secured creditor can be paid[.]" *Id.* The doctrine has three elements: "(1) the existence of two secured creditors with a common debtor, (2) the existence of two funds belonging to the debtor, and (3) the right of the senior secured creditor to receive payment from more than one fund while the junior secured creditor can only resort to one fund." *Id.*

7.      A no-marshaling provision is a typical element of a negotiated agreement between a debtor and a secured creditor regarding the use of cash collateral, and is often viewed by courts as one of the bargaining chips a debtor may use to reach agreement with its secured lenders. *See, e.g., In re MPM Silicones, LLC*, No. 14-22503 (RDD), H'rg Tr. at *92 (Bankr. S.D.N.Y. 2014) ("I also believe that there's no basis under the facts before me to . . . compel the deletion of the no-marshaling language as it applies to the prepetition secured creditors. Generally speaking, *this is the debtor's right to negotiate or secured creditors' right to insist on*.") (emphasis added) (approving no-marshaling provision in cash collateral order).

8.      Given the foregoing, it is unsurprising that cash collateral orders containing no-marshaling provisions are regularly approved by courts in this district. *See In re Inversiones Alsacia, S.A.*, Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Nov. 5, 2014) (approving cash collateral order containing no-marshaling provision); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Sept. 25, 2014) (same); *In re Genco Shipping & Trading Ltd.*, Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. May 16, 2014) (same); *In re MSR Resort Golf Course LLC*, Case No. 11-10372 (SHL) (Bankr. S.D.N.Y. Apr. 15, 2011) (same); *In re Innkeepers USA Trust*, Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Sept. 2, 2010) (same); *In re Citadel Broadcasting Corp.*, Case No. 09-17442 (CGM) (Bankr. S.D.N.Y. Mar. 3, 2010) (same); *In re DBSD North Am., Inc.*, Case No. 09-13061 (REG) (Bankr. S.D.N.Y. July 22, 2009) (same);

*In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009) (same).

9.      The Committee has petitioned for the exclusion of the no-marshaling provision, arguing that the "unsecured creditors, in the absence of marshaling, may not receive a proper recovery."  Committee Objection ¶ 59.  The Committee ignores in its reply, however, that courts in this district and elsewhere have consistently held that "an unsecured creditor may not utilize the doctrine of marshaling."  *In re America's Hobby Ctr., Inc.*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998); s*ee also In re Arlco, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999) ("As a threshold matter, marshaling is not applicable in this case because the first requirement for its application is not met in that Galey is not a secured creditor."); *Herkimer County Trust Co. v. Simelar (In re Prichard)*, 170 B.R. 41, 45 (N.D.N.Y. 1994) ("An unsecured creditor has no standing to invoke the doctrine [of marshaling]."); *In re Craner*, 110 B.R. 111, 123 (Bankr. N.D.N.Y. 1988), *rev'd on other grounds* ("[A]n unsecured creditor may not avail himself of the doctrine of marshalling assets as it is basically a protection for junior secured creditors...."); *In re Borges*, 184 B.R. 874, 879 (Bankr. D. Conn. 1995) (same).

10.      Though the Committee argues that it may be able to assert a claim for marshaling by stepping into the shoes of the Debtors through an *STN* motion seeking derivative standing, once in the Debtors' shoes, the Committee would first need to avoid the liens of the Second Lien Secured Parties before seeking a marshaling remedy.  Because marshaling can only be effectuated if the senior secured creditor has more assets available to it than the junior secured creditor, the Second Lien Secured Parties' liens would need to be successfully challenged before requiring the First Lien Secured Parties to look to those assets.[5]  However, as the Committee

---

[5]      Although the Committee could also step into the shoes of a hypothetical lien creditor under section 544 of the Bankruptcy Code, that hypothetical lien creditor would not have recourse to any assets absent the existence of unencumbered assets to look to.

itself acknowledges, "the second lien creditors have waived marshaling in their intercreditor agreement with the first lien creditors." Accordingly, the Debtors do not believe that this route to a derivative marshaling claim would be successful. *See* Committee Objection ¶ 58. Even if the Committee could somehow successfully argue that the intercreditor agreement does not apply in this scenario (or could otherwise pursue a claim as a hypothetical lien creditor), such a remote and contingent possibility should not enable the Committee to reject an important element of a negotiated agreement between the Debtors and the Prepetition Secured Parties.

11.    Given the significant concessions made by the Prepetition Secured Parties, and the standard nature of the no-marshaling provision contained in the Final Proposed Order, the provision should be approved by the Court as the product of a heavily negotiated, good-faith, arms'-length agreement among the Debtors and the Prepetition Secured Parties.

**D.    The Adequate Protection Liens Should Not Be Junior to or *Pari Passu* with Liens Avoided and Preserved for the Benefit of the Estates Under Section 551 of the Bankruptcy Code.**

12.    The third remaining open issue is the Committee's belief that the Court "should leave for another day" the legal question of whether a lien that is avoided and preserved for the benefit of the estate is senior or junior to a lien granted as adequate protection. *See* Committee Objection ¶ 75-78.

13.    Section 551 of the Bankruptcy Code preserves avoided liens for the benefit of the estate: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. With respect to the priority of those avoided liens, several bankruptcy courts, including courts in this district, have held that the preservation of a lien under section 551 of the Bankruptcy Code does not alter such liens' priority or other characteristics. Rather, it is as though the estate is in the exact position that the

creditor of the avoided lien would have been in had the lien not been avoided at all. *See, e.g.,*
*Matter of DeLancey*, 94 B.R. 311, 313 (Bankr. S.D.N.Y. 1988) ("When under state law the
avoided lien which is sought to be preserved is inferior to subsequent valid liens, the inferior lien
cannot be enhanced by its preservation under 11 U.S.C. § 551.  11 U.S.C. § 551 does not create a
floating lien for trustees."); *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748, 750 (Bankr.
W.D.N.Y. 1986) ("[P]reservation [under section 551 of the Bankruptcy Code] alone does not
'enhance the status of the trustee's lien so that if [the avoided liens] would have been defeated by
the junior claimants while in the hands of the lienholders, they are also vulnerable in trustee's.'");
*In re Carvell*, 222 B.R. 178, 180 (Bankr. Ct. App. 1st Cir. 1998) ("[Section 551 of the
Bankruptcy Code] merely states that a lien avoided under section 544 (and the other enumerated
sections) is 'preserved for the benefit of the estate.'  Preservation is just that. It simply puts the
estate in the shoes of the creditor whose lien is avoided. It does nothing to enhance (or detract
from) the rights of that creditor viz-a-viz other creditors.") (emphasis added); *In re Haberman*,
347 B.R. 411, 416-17 (Bankr. Ct. App. 10th Cir. 2006) ("Once the Trustee avoided the Bank's
lien, he inherited the Bank's position prior to avoidance and could not expand that position by
enforcing the lien over and above the value of the collateral.  Section 551 simply does not
expand a trustee's rights to recover all payments made to a creditor, regardless of the value of the
lien and the collateral.").

14.     To the extent that the liens granted as adequate protection will be senior to any
other outstanding, current liens on the Prepetition Collateral, such adequate protection liens must
also be senior to any lien avoided and preserved for the benefit of the estate.  There is no need
for the Court to push off "for another day" the clear meaning of section 551 of the Bankruptcy
Code.   Accordingly, the provision in the Proposed Final Order stating that the adequate

protection liens will not be junior or *pari passu* to such avoided, perfected liens should be approved by the Court.

## E.    The Length of the Committee Challenge Period Is Appropriate

15.    The Committee also expressed several concerns regarding the proposed period within which the Committee may investigate liens and potential avoidance actions (the "Committee Challenge Period"), two of which remain in dispute.  As an initial matter, the Committee complains that the Interim Order and Proposed Final Order do not provide a sufficient period of time for the Committee to conduct its investigation.  The Proposed Final Order contemplates that the Committee have until November 10, 2015 -- sixty-one days from the entry of the final order -- to investigate the causes of action.  *See* Proposed Final Order ¶ 22(a). In light of the date of the Committee's formation and the fact that the Committee's investigation is underway, sixty-one days from the entry of the Proposed Final Order is more than sufficient.

16.    The Committee was formed on July 28, 2015 and has since received more than 260,000 pages of documents in response to the Committee's discovery requests.  The Debtors have already provided the Committee with the information it needs to conduct its investigation. Specifically, on August 11, 2015, the Debtors produced the core information that the Debtors' independent directors had relied upon in evaluating the adversary complaint filed by the Debtors on July 15, 2015, including pre-Merger board materials; commercial, corporate, and legal documents; technical dates; transaction documents; and internal and external presentations related to the Merger.  On August 14, 2015, August 20, 2015, and August 30, 2015, respectively, the Debtors provided the Committee with three additional production volumes, containing emails, desk files, network files, and hard copy documents.  In producing these materials, the Debtors prioritized materials, including the emails of high interest custodians, such as the CEOs and CFOs of Sabine Oil & Gas LLC and Forest Oil Corporation, for ease of review.

17.     If the Proposed Final Order is entered at the September 10th hearing, the Committee will have had **105 days** from its formation and **91 days** from the Debtors' first production to review these documents and investigate related claims by the end of the Committee Challenge Period.[6]  In addition, the Debtors have revised the Proposed Final Order to include a tolling provision triggered by either (a) the filing of an *STN* motion or (b) a request by the Committee to extend the Committee Challenge Period for cause, which tolling provision would result in an extension of the Committee Challenge Period until five days after the Court hears and rules on such request.

18.     Further, the sixty-day period from the entry of the Proposed Final Order falls well within the range of investigation periods provided in this district in other chapter 11 cases. *See, e.g., In re The Great Atlantic & Pacific Tea Company, Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 12, 2015) (sixty days from entry of the final order); *In re Inversiones Alsacia S.A.*, Case No. 14-12896 (MG) (Bankr. S.D.N.Y. Nov. 5, 2014) (same); *In re Eagle Bulk Shipping Inc.*, Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re FL 6801 Spirits LLC*, Case No. 14-11691 (SCC) (Bankr. S.D.N.Y. June 25, 2014) (same); *In re Genco Shipping & Trading Limited*, Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. May 16, 2014); *In re Am. Roads LLC*, Case No. 13-124412 (BRL) (Bankr. S.D.N.Y. Aug. 22, 2013) *In re LodgeNet Interactive Corp.*, Case No. 13-10238 (SCC) (Bankr. S.D.N.Y. Feb. 27, 2013) (same); *In re*

---

[6]     Similarly, the Ad Hoc Committee of Forest Noteholders requests more than seventy-five days from the entry of the Interim Order to seek standing.  However, in light of (a) the time that has passed since the entry of the Interim Order, (b) the provision of an additional thirty days after the entry of the Proposed Final Order (that is, until October 9, 2015) to conduct an investigation, (c) the additional tolling period, and (d) the fact the the Ad Hoc Committee of Forest Noteholders has been examining potential claims against the Prepetition Secured Parties at least since it filed the complaint attached to its Objection as Exhibit A on February 25, 2015, the Debtors submit that the Ad Hoc Committee of Forest Noteholders will have had ample time to investigate claims and seek standing by thirty days after the entry of the Proposed Final Order.  *See* Forest Noteholders' Objection ¶ 3.

*Marco Polo Capital Mkts., LLC*, Case No. 12-14870 (SCC) (Bankr. S.D.N.Y. Jan. 16, 2013) (same).

### F.    Additional Committee Objections

*Language Specifying Disgorgement as an Available Remedy Is Unnecessary.*

19.    The Committee insists upon the specific inclusion in the Proposed Final Order of the word "disgorgement" as one of the rights and remedies available to the Debtors and the Committee with respect to the Adequate Protection Payments. *See* Committee Objection ¶ 45. The Committee argues that disgorgement is the only appropriate remedy in the circumstance where "no valid collateral remains" to secure the Prepetition Secured Parties' liens. *Id.* The Debtors do not believe it is necessary for the Proposed Final Order to envision all potential outcomes of the Avoidance Actions and describe each potentially available remedy in detail. Accordingly, the Debtors, with the consent of the First Lien Secured Parties, have modified the language of the Proposed Final Order to state that the Debtors and the Committee "reserve their respective rights and related remedies" with respect to the Adequate Protection Payments. *See* Proposed Final Order ¶ 3(c). This language should satisfy the Committee's request, as it covers any remedy related to the Debtors' and the Committee's reserved rights. To the extent that the Committee still objects to the exclusion of the specific word "disgorgement" from the Proposed Final Order, the Court should overrule the Committee Objection.

*The Committee's Request for a Right to Renegotiate or Reallocate the Professional Fees Is Inappropriate and Should Not Be Granted.*

20.    The Committee has informally requested the inclusion in the Proposed Final Order of a right to argue for a reallocation of the Restructuring Professional Fees to be paid from Cash Collateral rather than Disputed Cash. As discussed above, the Debtors have engaged in extensive, complex, and robust negotiations regarding the use of Cash Collateral, and the allocation of the Restructuring Professional Fees to Disputed Cash is, in the Debtors' business

judgment, a reasonable price to pay for the use of Cash Collateral on a consensual basis. Accordingly, any request by the Committee for a right to revisit the terms of the Final Proposed Order and the parties' negotiated agreement to renegotiate or otherwise reallocate the payment of the Restructuring Professional Fees should be denied.

*The Provisions of the Order Outlining the Binding Nature of the Final Order Are Appropriate.*

21.     The Committee has also informally objected to the inclusion of a provision in the Proposed Final Order stating that the indebtedness, obligations, and liabilities incurred by the Debtors pursuant to the Proposed Final Order are binding notwithstanding any reversal, stay, modification, or vacatur of that order, despite the fact that bankruptcy courts in this district have approved cash collateral orders containing substantially similar provisions.  *See, e.g., In re Inversiones Alsacia, S.A.*, No. 14-12896 (MG), (Bankr. S.D.N.Y. Nov. 5, 2014); *In re DBSD North America, Inc.*, No. 09-13061 (REG), (Bankr. S.D.N.Y. Oct. 13, 2011).  This provision is also subject to inclusion as part of the settlement entered into in the Debtors' business judgment.

**G.     The Second Lien Secured Parties' Objection to the Debtors' Non-Payment of the Professional Fees of Conflicts Counsel They Hired to Litigate Fee Objections Should be Overruled.**

22.     The Second Lien Agent filed an objection to the Motion on the basis that it believes the Debtors should be paying the fees and expenses of their conflicts counsel hired to object to the retention of the Debtors' investment banker, Lazard Frères & Co.  *See* Second Lien Agent Objection ¶ 5.  The Second Lien Credit Agreement, however, does not require the Debtors to pay *any* fees or expenses of the Second Lien Agent either as adequate protection or, more importantly, in connection with an objection to a retention application.  Rather, that agreement requires the Debtors to pay the fees and expenses of the Second Lien Agent solely to the extent that such fees and expenses are incurred "in connection with the enforcement or protection of its rights in connection with this Agreement or any other Loan Document."  *See* Second Lien Credit

Agreement § 12.03(a)(iii) (emphasis added). The payment of conflicts counsel to object to the retention of the Debtors' investment banker plainly does not fall into the categories of either the enforcement or protection of the Second Lien Secured Parties' rights or fees and expenses incurred in connection with their loans.

23.    In addition, the Second Lien Credit Agreement is subject to the Intercreditor Agreement, which controls as to the "relative rights and obligations" of the Prepetition Secured Parties. Intercreditor Agreement § 8.1. The Intercreditor Agreement explicitly states that the Second Lien Secured Parties cannot object to adequate protection (with two exceptions, neither of which relates to fees and expenses). Intercreditor Agreement § 6.3. Moreover, the Second Lien Agent's ability to assert this alleged right to payment was automatically stayed at the commencement of the chapter 11 cases, and the Debtors would not be required to comply with the fees and expenses reimbursement provision, even if it were applicable to fee application objections, absent an order of the Court. *See* 11 U.S.C. 362(a)(3).

24.    The Debtors have provided the Second Lien Secured Parties with a robust adequate protection package, including senior liens, super-priority claims, payment of fees incurred in connection with the restructuring, and the provision of regular reporting, despite the fact that the the First Liens Secured Parties' consent to the use of Cash Collateral will result in the Second Lien Agent being deemed to have consented as well. *See* Intercreditor Agreement § 6. The Second Lien Agent cannot establish that it is not adequately protected at all—let alone because of the Debtors' failure to fund the Second Lien Agent's objection to a retention application.

*[Remainder of page intentionally left blank.]*

## Conclusion

25.     For the foregoing reasons, the Debtors respectfully request that this Court

overrule any pending objections and grant the relief requested in the Motion.


Dated:  September 2, 2015          */s/ Jonathan S. Henes*
New York, New York                 Paul M. Basta, P.C.
                                   Jonathan S. Henes, P.C.
                                   Christopher Marcus, P.C.
                                   KIRKLAND & ELLIS LLP
                                   KIRKLAND & ELLIS INTERNATIONAL LLP
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:     (212) 446-4800
                                   Facsimile:     (212) 446-4900

                                   - and -

                                   James H.M. Sprayregen, P.C.
                                   Ryan Blaine Bennett (admitted *pro hac vice*)
                                   Brad Weiland (admitted *pro hac vice*)
                                   KIRKLAND & ELLIS LLP
                                   KIRKLAND & ELLIS INTERNATIONAL LLP
                                   300 North LaSalle Street
                                   Chicago, Illinois 60654
                                   Telephone:     (312) 862-2000
                                   Facsimile:     (312) 862-2200

                                   *Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | x : | Chapter 11 |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | : : : | Case No. 15-[____] ( __ )-11835 (SCC) |
| Debtors. | : : | (Joint Administration Requested)(Jointly Administered) |

------------------------------------------------------------ x

~~INTERIM~~FINAL **ORDER PURSUANT TO 11 U.S.C. §§ 105, 361,**
**362, 363 AND 507, BANKRUPTCY RULES 2002, 4001 AND 9014**
**AND LOCAL BANKRUPTCY RULE 4001-2 (I) AUTHORIZING**
**DEBTORS'**
**LIMITED USE OF CASH COLLATERAL, (II) GRANTING**
**ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES,**
**AND (III) MODIFYING**
**THE AUTOMATIC STAY ~~AND (IV) SCHEDULING A FINAL HEARING~~**

Upon the motion (the "Motion"), dated July 15, 2015, of the above-referenced debtors, as debtors in possession (collectively, the "Debtors") in the above-captioned cases (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), seeking, among other things:

> (a) authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 to (i) use cash collateral, as such term is defined in section

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sabine Oil & Gas Corporation (4900); Giant Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil Gas Finance Corp. (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440).  The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is 1415 Louisiana, Suite 1600, Houston, Texas 77002.

363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of ~~this order~~ (~~this~~ "the *Interim Order (I) Authorizing the Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay and (IV) Scheduling a Final Hearing* [Docket No. 60] (the "Interim Order") and this final order (the "Final Order")"), and (ii) provide adequate protection to:

(1)    Wells Fargo Bank, National Association, as Administrative Agent (in such capacity, the "First Lien Agent") under the First Lien Credit Agreement (as defined herein), and the other First Lien Secured Parties (as defined herein); and

(2)    Wilmington Trust, National Association, as Administrative Agent (in such capacity, the "Second Lien Agent" and, collectively with the First Lien Agent, the "Prepetition Agents") under the Second Lien Credit Agreement (as defined herein), and the other Second Lien Secured Parties (as defined herein);

(b)    subject to entry of the~~is~~ Final Order ~~(as defined herein),~~, authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections 544, 545, 547, 548 and 550 or any other similar state or federal law (collectively, the "Avoidance Actions");

(c)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of thi~~se~~ Interim Order and the~~is~~ Final Order;

(d)    subject to entry of the~~is~~ Final Order, except to the extent of the Carve Out (as defined herein) the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)    that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the ~~proposed~~ Interim Order;

(f)    that this Court schedule a final hearing (the "Final Hearing") to consider entry of ~~a final order (the "~~this "Final Order~~")~~ granting the relief requested in the Motion on a final basis; and

(g)    waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Interim Hearing having been held by the Court on July ~~[____]~~,16, 2015, and this Court having entered the Interim Order on July 17, 2015; and pursuant to Bankruptcy Rule 4001 and

Local Bankruptcy Rule 4001-2, due and sufficient notice of the Motion and, the relief sought at requested therein, the Interim Hearing, the entry of the Interim Order and the Final Hearing having been given under the particular circumstances by the Debtors to counsel to the First Lien Agent, the Second Lien Agent and its counsel, the other Prepetition Secured Parties, the Debtors' thirty (30 fifty (50) largest unsecured creditors (on a consolidated basis), the indenture trustee under the Debtors' 9.75% senior notes due 2017, and the indenture trustee's counsel to certain holders of the 2017 senior notes, the indenture trustee under the Debtors' 7.25% senior notes due 2019, counsel to certain holders of the 2019 senior notes, the indenture trustee under the Debtors' 7.5% senior notes due 2020, counsel to certain holders of the 2020 senior notes, the United States Trustee for the Southern District of New York (the "United States Trustee"), the United States Securities and Exchange Commission, the United States Internal Revenue Service, following the formation of the statutory committee of unsecured creditors appointed in these Cases (the "Committee"), the Committee and its proposed counsel, and all other parties with a particularized interest in the Motion; and the Final Hearing having been held on September 10, 2015; and the Court having considered the offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing and the Final Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Interim Final Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause has having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Petition Date**.   On July 15, 2015 (the "Petition Date"), Sabine Oil & Gas Corporation ("Sabine") and each of the other Debtors filed a voluntary petition for relief under

- 3 -

chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").    Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in the Cases.

B.    **First Lien Credit Agreement**.    Prior to the Petition Date, the First Lien Secured Lenders (as defined herein) made certain loans and advances pursuant to and in accordance with the terms and conditions of that certain Second Amended and Restated Credit Agreement, dated as of December 16, 2014 (as heretofore amended, restated, or otherwise modified from time to time, the "First Lien Credit Agreement," and, together with all other documentation executed in connection therewith, the "First Lien Loan Documents"), among, *inter alia*, Sabine, as Borrower, the First Lien Agent, and the lenders from time to time party thereto (such lenders, the "First Lien Secured Lenders," and, together with the First Lien Agent and each "Issuing Bank," "Secured Swap Party" and "Cash Management Bank" (as such terms are defined in the First Lien Credit Agreement), collectively, the "First Lien Secured Parties").

C.    **Second Lien Credit Agreement**.    Prior to the Petition Date, the Second Lien Secured Lenders (as defined herein) made certain loans and advances pursuant to and in accordance with the terms and conditions of that certain Second Lien Credit Agreement, dated as of December 14, 2012 (as heretofore amended, restated, or otherwise modified from time to time, the "Second Lien Credit Agreement," and, together with all other documentation executed in connection therewith, the "Second Lien Loan Documents"), among *inter alia*, Sabine, as Borrower, the Second Lien Agent, and the lenders from time to time party thereto (such lenders, the "Second Lien Secured Lenders," and together with the Second Lien Agent, the "Second Lien

- 4 -

Secured Parties"). The First Lien Loan Documents and the Second Lien Loan Documents are referred to collectively in this ~~Interim~~Final Order as the "Prepetition Loan Documents," and the First Lien Secured Parties and Second Lien Secured Parties are referred to herein collectively as the "Prepetition Secured Parties."

      D.      **Debtors' Admissions With Respect to the First Lien Prepetition Indebtedness**. Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraphs 22 and 24), the Debtors admit, stipulate and agree that:

      i.      As of the Petition Date, the Debtors that are the Borrower and the Guarantors (as such terms are defined in the First Lien Loan Documents) under the First Lien Loan Documents were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the (x) First Lien Secured Lenders in the aggregate principal amount of approximately $900,597,359 in respect of loans and other financial accommodations made and in the aggregate face amount of $26,320,000 in respect of letters of credit issued by the Issuing Banks pursuant to, and in accordance with, the First Lien Loan Documents, (y) holders of Secured Swap Obligations (as defined in the First Lien Credit Agreement) in amounts yet to be determined, and (z) holders of Secured Cash Management Obligations (as defined in the First Lien Credit Agreement) in amounts yet to be determined, plus accrued and unpaid interest, fees and costs and expenses including, without

limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the First Lien Loan Documents (collectively, the "First Lien Prepetition Indebtedness"). Each of the First Lien Loan Documents is valid, binding, and subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

ii.  Immediately prior to the automatic acceleration of the First Lien Prepetition Indebtedness on the Petition Date, pursuant to the First Lien Loan Documents and the Intercreditor Agreement, dated as of December 14, 2012, among Sabine, the First Lien Agent and the Second Lien Agent (the "Intercreditor Agreement"), the maturity date with respect to the First Lien Prepetition Indebtedness was April 7, 2016.

iii.  The First Lien Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and no portion of the First Lien Prepetition Indebtedness or any amounts paid to the First Lien Secured Parties or applied to the obligations owing under the First Lien Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind

- 6 -

pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

iv.    As of April 27, 2015, the Borrowing Base (as defined in the First Lien Credit Agreement) was $750,000,000, and a Borrowing Base Deficiency (as defined in the First Lien Credit Agreement) existed in the amount of $249,252,490 (the "Borrowing Base Deficiency"). The Debtors further admit that, in order to cure such Borrowing Base Deficiency, they were required to prepay the Loans (as defined in the First Lien Credit Agreement) commencing May 27, 2015 in six equal monthly installments equal to $1/6^{th}$ of the aggregate principal amount of such Borrowing Base Deficiency in accordance with Section 3.04(c)(iii) of the First Lien Credit Agreement and in accordance with that certain Forbearance Agreement and First Amendment to Credit Agreement, dated as of May 4, 2015 ~~(as amended, modified, or supplemented from time to time, the "Forbearance Agreement")~~, among Sabine, the First Lien Lenders and the First Lien Agent~~.~~ (as amended on June 30, 2015). The Debtors admit that the first two such prepayments of the Loans came due on May 27, 2015 and June 29, 2015, respectively, and neither prepayment was made.

E.    **Debtors' Admissions with Respect to the Second Lien Prepetition Indebtedness**. Without prejudice to the rights, if any, of any other party (but subject to the

limitations thereon described herein in paragraphs 22 and 24), the Debtors admit, stipulate and agree that:

   i.  As of the Petition Date, the Debtors that are the Borrower and the Guarantors (as such terms are defined in the Second Lien Loan Documents) were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Second Lien Secured Lenders in the aggregate principal amount of $700,000,000 in respect of loans and other financial accommodations made by the Second Lien Secured Lenders pursuant to, and in accordance with, the Second Lien Loan Documents, plus accrued and unpaid interest, fees and costs and expenses, including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Second Lien Loan Documents (collectively, the "Second Lien Prepetition Indebtedness").

   i.  The Second Lien Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and no portion of the Second Lien Prepetition Indebtedness or any amounts paid to the Second Lien Secured Parties or applied to the obligations owing under the Second Lien Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, counterclaim, defense,

challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

F.    **Debtors' Admissions With Respect to Prepetition Collateral and Liens**. Subject to the Debtors' rights under paragraphs 11 and 23 of this ~~Interim~~Final Order, and without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraphs 22 and 24), the Debtors admit, stipulate and agree that:

i.    Pursuant to (a) that certain Second Amended and Restated Guaranty and Pledge Agreement, dated as of December 16, 2014, by the Borrower and the Guarantors (as such terms are defined in the First Lien Loan Documents) in favor of the First Lien Agent and (b) certain mortgages, deeds of trust or similar security documents entered into by any loan party and the First Lien Agent in respect of the properties owned by such loan party (each as heretofore amended, restated or otherwise modified from time to time, and, collectively with any and all other agreements, instruments, certificates, fixture filings, transmitting utility filings, financing statements, consents, assignments or other similar documents, the "First Lien Collateral Documents"), they have granted valid, binding, perfected and enforceable first priority liens upon and security interests in the real and personal property of the Borrower and Guarantors described in the First Lien Collateral Documents, including, without limitation, all rights,

titles, interests and estates in and to oil and gas leases and/or oil, gas and other mineral leases and other interests and estates and the lands and premises covered or affected thereby as described therein (the "Hydrocarbon Properties") and properties pooled or unitized with the Hydrocarbon Properties, all oil, gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons and all products refined or separated therefrom and all other minerals in and under and which may be produced and saved from or attributable to the Hydrocarbon Properties (collectively, the "Hydrocarbons"), the cash and noncash proceeds and other rights arising from all prepetition collateral (including any cash held by the Debtors that constitutes Cash Collateral and the setoff rights described in the First Lien Loan Documents, the Swap Agreements (as defined in the First Lien Credit Agreement), or arising by operation of law, collectively, the "Prepetition Collateral") to the First Lien Agent for the benefit of the First Lien Secured Parties to secure the First Lien Prepetition Indebtedness, subject only to specific permitted exceptions under the First Lien Credit Agreement and First Lien Collateral Documents.

ii.    Pursuant to (a) that certain Amended and Restated Guaranty and Pledge Agreement, dated as of December 14, 2012, by the Borrower and the Guarantors (as such terms are defined in the

Second Lien Loan Documents) in favor of the Second Lien Agent and (b) certain mortgages, deeds of trust or similar security documents entered into by any loan party and the Second Lien Agent for the benefit of the Second Lien Secured Parties in respect of the properties owned by such loan party (as heretofore amended, restated, or otherwise modified from time to time, and, collectively with any and all other agreements, instruments, certificates, fixture filings, transmitting utility filings, financing statements, consents, assignments or other similar documents, the "Second Lien Collateral Documents"), they have granted valid, binding, perfected and enforceable second priority liens upon and security interests in the Prepetition Collateral (other than Prepetition Collateral constituting setoff rights of the First Lien Secured Parties), subject in each case to the Intercreditor Agreement (as defined herein) and permitted exceptions under the First Lien Credit Agreement, the First Lien Collateral Documents, the Second Lien Credit Agreement, and the Second Lien Collateral Documents to the Second Lien Agent for the benefit of the Second Lien Secured Parties to secure the Second Lien Prepetition Indebtedness.

iii.    The First Lien Agent's first priority liens upon and security interests in the Prepetition Collateral, for the ratable benefit of the First Lien Secured Parties, and the Second Lien Agent's second

- 11 -

priority liens upon and security interests in the Prepetition Collateral, for the ratable benefit of the Second Lien Secured Parties, are not subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

G.      **Debtors' Admissions With Respect to Cash Collateral**. Subject to the Debtors' rights set forth in paragraph 11 of this ~~Interim~~Final Order, and without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraphs 22 and 24), the Debtors admit, stipulate and agree that:

i.      All cash proceeds of the Prepetition Collateral, including all such cash proceeds of such Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including the Cash Collateral, for any Collateral Diminution (as defined herein); and

        ii.      All cash in the Debtors' main operating account (the "BBVA Operating Account") as of the Petition Date or deposited after the Petition Date into the BBVA Operating Account ~~after the Petition Date~~and/or the replacement operating account opened by the Debtors pursuant to any cash management order entered by this Court (all such accounts, together with the BBVA Operating Account, the "Operating Account") constitutes Cash Collateral except for (a) cash that is not property of the Debtors and (b) cash proceeds of any property of the Debtors that is not Prepetition Collateral.

        **H.**      **Releases; Investigation**. Subject to the Debtors' rights under paragraphs 11 and 23 of this ~~Interim~~Final Order, and without prejudice to the rights of any other party (but subject to the limitations thereon described herein in paragraphs 22 and 24), each Debtor hereby forever waives and releases any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. The admissions, stipulations, agreements and releases set forth in ~~paragraphs D, E, F, G, and H of~~ this ~~Interim~~Final Order are ~~based upon and~~ consistent with the Debtors' investigation to date of the Prepetition Secured Parties' liens and claims and determination that subject to the rights reserved in paragraphs 11 and 23 of this ~~Interim~~Final Order, the Debtors

have no ~~c~~Claims (as defined in section 101(5) of the Bankruptcy Code), defenses or counterclaims with respect thereto.

I.  **Need to Use Cash Collateral**.  The Debtors have requested ~~immediate~~ entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2 ~~and have an immediate need~~ to obtain use of the Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Budget (as defined herein)) in order to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors.  ~~An immediate and critical need exists for the~~The Debtors ~~need~~ to use ~~the~~cash, including Cash Collateral, consistent with the Budget (as defined herein), for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.  ~~Absent entry of this Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.~~

J.  **Notice**.  Notice of the requested relief sought at the ~~Interim~~Final Hearing was provided by the Debtors to:  (1) the United States Trustee; (2) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (3) the First Lien Agent; (4) counsel to the First Lien Agent; (5) the Second Lien Agent; (6) counsel to the Second Lien Agent; (7) the indenture trustee under the Debtors' 9.75% senior notes due 2017; (8) counsel to ~~certain holders of the~~the indenture trustee under the Debtors' 2017 senior notes; (9) the indenture trustee under the Debtors' 7.25% senior notes due 2019; (10) counsel to certain

holders of the 2019 senior notes; (11) the indenture trustee under the Debtors' 7.5% senior notes due 2020; (12) counsel to certain holders of the 2020 senior notes; (13) the United States Attorney's Office for the Southern District of New York; (14) the Internal Revenue Service; (15) the United States Securities and Exchange Commission; (16) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (17) the state attorneys general for states in which the Debtors conduct business; (18) counsel to the Committee and (1819) any party that has requested notice pursuant to Bankruptcy Rule 2002.   Given the nature of the relief sought, theThe foregoing notice of the InterimFinal Hearing was, in the Debtors' good faith belief, the best availableconstitutes appropriate, due and sufficient notice under the circumstances and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, Local Bankruptcy Rule 4001-2 and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code.  No further notice of, or hearing on, the relief sought at the InterimFinal Hearing and the relief granted herein is necessary or required.

K.      **Consent by Prepetition Secured Parties**.  The First Lien Agent consents to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this InterimFinal Order.  Pursuant to the Intercreditor Agreement, as a result of the First Lien Agent's consent to the use of Cash Collateral as provided in this InterimFinal Order, the Second Lien Secured Parties are deemed to have consented to entry of this InterimFinal Order.

L.      **Jurisdiction and Venue**.    Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).   This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

M.    **Relief Essential; Best Interest**.  The Debtors have requested ~~immediate~~ entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(b)~~(2)~~ and Local Bankruptcy Rule 4001-2.  The relief requested in the Motion (and as provided in this ~~Interim~~Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

N.    **Arm's-Length, Good-Faith Negotiations**.  The terms of this ~~Interim~~Final Order were negotiated in good-faith and at arm's-length between the Debtors and the First Lien Secured Parties.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING AND THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted**.  The Motion is granted in accordance with the terms of this ~~Interim~~Final Order.   Any objections to the Motion with respect to the entry of this ~~Interim~~Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled.

2.    **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this ~~Interim~~Final Order, the Court hereby authorizes the Debtors to use the Segregated Cash Collateral (as defined herein), the Disputed Cash (as defined herein), and the cash proceeds of any property of the Debtors that is not Prepetition Collateral (collectively, the "Debtors' Cash") during the period beginning with the Petition Date and ending on the Termination Date (as defined herein) (such period, the "Budget Period"), for the disbursements set forth in the 13-week cash disbursements and receipts budget attached as **Exhibit A** hereto (as such budget may be modified from time to time by the Debtors with the prior written consent of the First Lien Agent as set forth in this paragraph and in paragraph 3(f)(v) of this ~~Interim Order~~Final Order   and after no less than three (3) business days advance notice to the Committee (the "Budget"), subject in each case to any Permitted Deviation and Non-Conforming Use permitted herein (as each such term is defined below).  The Debtors shall adhere to the Budget during the Budget Period, *provided, however,* that, during any four-week period, the Debtors may carry forward any Positive Variance (as defined below) to the future periods in the Budget. For purposes of this ~~Interim~~Final Order, "Positive Variance" shall mean the amount by which either (i) the Total Net Receipts (designated in the Budget as "Total Receipts (Net)") exceeds 100% of the budgeted amount (the "Excess Receipts") or (ii) Total Operating Disbursements (as designated in the Budget) are in an amount less than 100% of the budgeted amount (the "Unpaid Disbursements").   For purposes of this ~~Interim~~Final Order, the "Permitted Deviation" shall mean that, for any four-week period set forth in the Budget commencing the week of July 20, 2015, the Total Net Receipts shall not be less than 85% of the budgeted amount and the Total Operating Disbursements shall not exceed 115% of the budgeted amount.  The First Lien Agent may, in its sole discretion, agree in writing to the use of the Cash Collateral in a manner or amount which

does not conform to the manner or amount, as applicable, set forth in the Budget (including, for the avoidance of doubt, after giving effect to the Permitted Deviation) (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use").  If such written consent is given, the Debtors shall be authorized pursuant to this ~~Interim~~Final Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this ~~Interim~~Final Order for any such Non-Conforming Use~~.~~, as if such Non-Conforming Use was permitted under the Budget.  The Debtors shall provide notice of any Non-Conforming Use to ~~counsel for the official committee of unsecured creditors appointed in the Cases (the "~~the Committee"~~),~~, the Second Lien Agent, and the United States Trustee.

3.      **Adequate Protection for the First Lien Secured Parties**.  In addition to all the existing security interests and liens granted to or for the benefit of the First Lien Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined herein), and as an inducement to the First Lien Secured Parties to permit the Debtors' use of the Cash Collateral as provided for in this ~~Interim~~Final Order, the Debtors hereby grant the following:

(a)      **Adequate Protection Liens**.  Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the following security interests and liens are hereby granted to the First Lien Agent, for the benefit of the First Lien Secured Parties, (all property identified in clauses (i) and (ii) of this paragraph 3(a) being collectively referred to as the "Collateral"), subject only to the Carve Out (as defined herein) (all such liens and security interests, the "First Lien Adequate Protection Liens"):

i.    **Liens Senior to Other Liens**.    A valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien on the Prepetition Collateral and all of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under section 549 of the Bankruptcy Code) and all proceeds of the foregoing, other than causes of action arising under the Bankruptcy Code, including, all Avoidance Actions, which First Lien Adequate Protection Liens~~, subject to entry of the Final Order,~~ shall have recourse to the proceeds or property recovered in respect of any Avoidance Actions, senior to any other security interests or liens, subject only to valid, perfected and enforceable prepetition liens (if any) which are senior to the First Lien Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

ii.    **Liens Junior to Existing Liens**.    A valid, binding, continuing, enforceable, fully-perfected junior lien on and security interest in all prepetition and postpetition property of the Debtors (other than the property described in clause (i) of this paragraph 3(a)), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(b)     **Adequate Protection Claims**.    An allowed administrative claim against each of the Debtors on a joint and several basis with priority over any and all other administrative claims against the Debtors now existing or hereafter arising in the Cases (subject only to the Carve Out (as defined herein)), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "First Lien Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of any Avoidance Actions.

(c)     **Adequate Protection Payments**.    The Debtors are authorized and directed to pay to the First Lien Agent, for the ratable benefit of the First Lien Secured Parties, adequate protection payments on the last business day of each calendar month after the entry of thise Interim Order, in each case, in an amount equal to all accrued and unpaid prepetition or postpetition interest, fees and costs due and payable under the First Lien Credit Agreement (including, without limitation, interest on loans, breakage costs and accrued fees owing to the First Lien Agent), and in each case, such payments calculated based on the Alternate Base Rate (as defined in the First Lien Credit Agreement) plus 1.50%, which is the Applicable Margin under the First Lien Credit Agreement.%.    The First Lien Agent and the First Lien Secured Parties reserve their rights to assert claims for additional interest on the First Lien Prepetition Indebtedness at the post-default rate of two percent (2%) as provided in section 3.01(c) of the Credit Agreement (the "Default Spread") and that such amount should be added to the aggregate allowed amount of the First Lien Prepetition Indebtedness.  For the avoidance of doubt, the payment of interest pursuant to this paragraph shall be without prejudice to the rights of the First Lien Agent and the other First Lien Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the First Lien Credit Agreement and/or to request current payment of the Default Spread, and the Debtors and the Committee reserve the right to object to such claims.    The Debtors and the Committee reserve their  rightsrespective rights and related remedies with respect to such payments, including the right to argue that, to the extent that any cash payment of interest, fees, and/or expenses (including professional fees and expenses payable under subsection (e) hereof) as adequate protection to the First Lien Secured Parties is not allowed under Bankruptcy Code section 506(b) andor not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied, to the extent recharacterized, to reduce permanently the principal

- 20 -

~~owed under the applicable~~allowed secured claim of the First Lien ~~Loan Documents~~Prepetition Indebtedness; *provided, however*, that the First Lien Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

(d)     **Other Covenants**.    The Debtors shall maintain their cash management arrangements in a manner consistent with the ~~interim~~final order granting the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Using the Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms, (C) Maintain Existing Investment Practices, (D) Continue Intercompany Transactions and (E) Grant Superpriority Status to Postpetition Intercompany Transactions*, entered or to be entered substantially contemporaneously herewith. The Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the First Lien Agent and the Committee at least five (5) business days prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease.    The Debtors shall comply with the covenants contained in Sections 8.05 and 8.06 of the First Lien Credit Agreement and the Second Lien Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

(e)     **Fees and Expenses**.    As additional adequate protection, the Debtors shall pay in cash: (i) ~~immediately upon~~to the ~~entry of this~~extent not already paid as required under the Interim Order, the reasonable professional fees, expenses and disbursements ~~(including, but not limited to, the fees, expenses~~of Willkie Farr & Gallagher LLP and ~~disbursements of counsel, third party consultants, including financial consultants and auditors)~~FTI Consulting, Inc. incurred by the First Lien Agent under the First Lien Credit Agreement arising prior to the Petition Date; and (ii) ~~-~~the reasonable professional fees, expenses and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel, financial advisors, and third-party consultants~~, including financial consultants and auditors~~) incurred by the First Lien Agent under the First Lien Credit Agreement arising subsequent to the Petition Date~~.~~; *provided, however, that the First Lien Agent shall inform the Debtors and the Committee of the retention of a professional other than Willkie Farr & Gallagher LLP or FTI Consulting, Inc.* The payment of the fees, expenses and disbursements set forth in this paragraph 3(e) of this ~~Interim~~Final Order (including professional fees and expenses of Willkie Farr & Gallagher LLP, FTI Consulting, Inc. and any other

- 21 -

professionals or advisors retained by or on behalf of the First Lien Agent) shall be made within ten (10) business days after the receipt by the Debtors, the Committee and the United States Trustee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided*, *however*, that the Debtors, the Committee and the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees, and (ii) the Debtors, the Committee or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the First Lien Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(f)    **Reporting**.    As additional adequate protection to the First Lien Secured Parties, the Debtors shall comply with the reporting requirements set forth in Sections 8.01(a), 8.01(b), 8.01(e), 8.01(j), 8.01(l), 8.01(o) and 8.11 of the First Lien Credit Agreement and shall provide the following additional reporting to the First Lien Agent:

   i.    Weekly (or less frequently as may be agreed to between the Debtors and the First Lien Agent) calls with the First Lien Agent and its advisors;

   ii.    A copy of each update to the Debtors' business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

   iii.    Presentations by the Debtors and/or their advisors during normal business hours to the First Lien Secured Parties at times and places as the First Lien Agent may reasonably request in writing (including via electronic mail) with reasonable prior notice;

   iv.    Promptly, but in any event no later than the twentieth (20th) day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail reasonably acceptable to the First Lien Agent, of (a) the Debtors' accounts payable and payments, (b) an accounts payable aging and an accounts receivable aging, and (c) all written demands or claims related to or asserting any liens in respect of property or assets of the Borrower or any

- 22 -

Credit Party (as such terms are defined in the First Lien Credit Agreement) (including liens imposed by law, such as landlord's', vendors', suppliers', carriers', warehousmen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $1,000,000 individually or $5,000,000 in the aggregate;

v.    (A) On or before the twentieth (20th) day of each calendar month, an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget (each, a "<u>Proposed Budget</u>"), which Proposed Budget, upon written approval by the First Lien Agent, shall become the Budget effective as of the first day of the next calendar month; and (B) on or before each Wednesday of each calendar week, (1) a weekly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, which report and reconciliation shall be in form and detail reasonably satisfactory to the First Lien Agent (the "<u>Budget Reconciliation</u>") and (2) a statement setting forth in reasonable detail the cash balance for each deposit account of the Debtor and its subsidiaries as of the previous Friday;

vi.    Promptly, and in any event no later than the thirtieth (30th) day of each month, beginning with the year-to-date period ended June 30, 2015, a monthly and year-to-date income statement, balance sheet and monthly and year-to-date detail of capital expenditures and workovers;

vii.    A list of all Swap Agreements of the Debtors in place as of the first business day of the month, to be provided by the 10th business day of the following month; which list contains (A) the material terms thereof (including type, remaining term, counterparty and mark-to-market value as of the first business day of the month (as reflected in the statements provided by the counterparties under such Swap Agreements)), and (B) information on any such Swap Agreement terminated or unwound during the prior month as soon as practicable after any such Swap Agreement is terminated or unwound.

viii.    Such other reports and information as the First Lien Agent may reasonably request.

(g)     **Application of Certain Swap Proceeds**.  If any Debtor receives cash proceeds as a result of (i) changes to the material terms of any commodity-price Swap Agreement, (ii) termination or unwinding of, or periodic payments under, any such Swap Agreement or (iii)  creation of any off-setting positions in respect of any hedge positions under any such Swap Agreement (whether evidenced by a floor, put or Swap Agreement), then, the Debtors shall pay such cash proceeds within one (1) business day following receipt thereof to the First Lien Agent, which proceeds shall be applied to permanently reduce the First Lien Indebtedness; *provided, however*, that any monthly or other scheduled payments to the Debtors under any Swap Agreements that have not been terminated shall constitute Disputed Cash; *provided further, however, that the Committee reserves the right to request that the Court, after notice and a hearing, unwind the postpetition adequate protection payments made pursuant to paragraph 3(g) of the Interim Order and such payments shall only be unwound if the Court rules in favor of the Committee and specifically finds that such payments unduly advantaged the First Lien Secured Parties.*

(h)     **Asset Sales; Application of Proceeds**.  Unless otherwise agreed to by the First Lien Agent in writing, all sales and other dispositions (including casualty and condemnation events) of Collateral ("Collateral Sales") shall be in exchange for 100% cash consideration.  The Debtors shall deposit 100% of the net cash proceeds of any such Collateral Sale into a segregated deposit account with the First Lien Agent (the "Segregated Account").  Any proposed property exchange with respect to Collateral that is not in exchange for 100% cash consideration shall be subject to the First Lien Agent's prior written consent, which shall not be unreasonably withheld.

(i)     Notwithstanding anything to the contrary contained in this Final Order, the First Lien Adequate Protection Liens and First Lien Adequate Protection Claims shall not extend or have recourse to the proceeds of (x) Avoidance Actions against the First Lien Secured Parties or (y) claims and causes of action against the First Lien Secured Parties arising in connection with the Merger (as defined below) or any transaction related thereto.

4.     **Adequate Protection for the Second Lien Secured Parties**.  As adequate protection for, and to secure payment of an amount equal to the Collateral Diminution, the Second Lien Agent, for the benefit of the Second Lien Secured Parties, is hereby granted the following claims, liens, rights and benefits:

(a)    **Adequate Protection Liens**.  Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Second Lien Agent, for the benefit of the Second Lien Secured Parties, is hereby granted security interests in and liens on the Collateral, subject only to (i) the Carve Out, (ii) the First Lien Adequate Protection Liens and (iii) the liens and security interests securing the First Lien Prepetition Indebtedness, and subject further to the Intercreditor Agreement (all such liens and security interests, the "Second Lien Adequate Protection Liens", and collectively with the First Lien Adequate Protection Liens, the "Adequate Protection Liens").

(b)    **Adequate Protection Claims**.  An allowed administrative claim against each of the Debtors on a joint and several basis with priority over any and all other administrative claims against the Debtors now existing or hereafter arising in the Cases (subject and subordinate only to the Carve Out and the First Lien Adequate Protection Claims), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Second Lien Adequate Protection Claims", collectively with the First Lien Adequate Protection Claims, the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, the proceeds or property recovered in respect of any Avoidance Actions, subject to entry of the Final Order.

(c)    **Fees and Expenses**.  As additional adequate protection, the Debtors shall pay in cash: (i) immediately uponto the entry of thisextent not already paid as required under the Interim Order, the reasonable professional fees, expenses and disbursements (including, but not limited to, the fees, expensesof Paul, Weiss, Rifkind, Wharton & Garrison LLP, Haynes and disbursements of counselBoone, LLP, Alston & Bird LLP and other third party consultants)Houlihan Lokey incurred by the Second Lien Agent under the Second Lien Credit Agreement arising prior to the Petition Date and the reasonable out of pocket costs and expenses of the Second Lien Agent or any agency fees payable to it under the Second Lien Documents; and (ii) the reasonable professional fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel, financial advisors, and other third-party consultants) incurred by the Second Lien Agent under the Second Lien Credit Agreement arising subsequent to the Petition Date. The payment of the fees, expenses and

- 25 -

disbursements set forth in this paragraph 4(c) of this Interim; *provided, however, that the Second Lien Agent shall inform the Debtors, the Committee and the First Lien Agent of the retention of a professional other than Paul, Weiss, Rifkind, Wharton & Garrison LLP, Haynes and Boone, LLP, Alston & Bird LLP and Houlihan Lokey; provided further, however, that the Debtors shall not be obligated to pay or reimburse any professional fees, expenses or disbursements incurred in connection with the challenge or objection to the application of Lazard Frères & Co. LLC, including but not limited to the professional fees, expenses or disbursements of Westerman Ball Ederer Miller Zucker & Sharfstein, LLP. The payment of the fees, expenses and disbursements set forth in this paragraph 4(c) of this Final* Order shall be made within the Review Period of the Invoiced Fees (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided, however,* that the Debtors, the Committee and the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees if, within the Review Period, (i) ~~,~~ the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees, and (ii) ~~,~~ the Debtors, the Committee or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Second Lien Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees. The Debtors and the Committee reserve their respective rights and related remedies with respect to such payments, including the right to argue that, to the extent that any cash payment~~, including on account~~ of interest, fees, and/or expenses~~,~~ (including professional fees and expenses payable under this subsection) as adequate protection to the Second Lien Secured Parties is not allowed under Bankruptcy Code section 506(b) ~~and~~or not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied, to the extent recharacterized, to reduce permanently the ~~principal owed under the applicable~~allowed secured claim of the Second Lien ~~Loan Documents~~Prepetition Indebtedness; *provided, however,* that the Second Lien Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

(d)    **Reporting**.  As additional adequate protection to the Second Lien Secured Parties, the Debtors shall provide the Second Lien Agent with all reporting materials provided by the Debtors to the First Lien Agent under section 3(f) of this ~~Interim Order~~Final Order;

- 26 -

*provided, however*, that the sole remedy for failure to perform under this provision shall be the right of the Second Lien Agent to seek an order of the Court compelling performance.

(e)     Notwithstanding anything to the contrary contained in this Final Order, the Second Lien Adequate Protection Liens and Second Lien Adequate Protection Claims shall not extend or have recourse to the proceeds of (x) Avoidance Actions against the Prepetition Secured Parties or (y) claims and causes of action against the Prepetition Secured Parties arising in connection with the Merger (as defined below) or any transaction related thereto.

5.     **Collateral Diminution**.     For purposes of this ~~Interim~~Final Order, "Collateral Diminution" shall mean an amount equal to the ~~diminution of~~decrease in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date ~~for any reason, including the use of Cash Collateral, the~~. resulting from the use, sale, or lease~~, consumption, or disposition~~ of the Prepetition Collateral, (including Cash Collateral), or the imposition of the automatic stay.  Cash ~~P~~payments from the proceeds of the Prepetition Collateral ~~made to the First Lien Agent~~ pursuant to ~~paragraph 3~~the terms of this ~~Interim~~Final Order shall not constitute Collateral Diminution.

6.     **Priority of Adequate Protection Liens and Adequate Protection Claims**.  Except to the extent of the Carve Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraphs 3 and 4 of this ~~Interim~~Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code~~s~~ and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise; *provided, however,* that the Debtors shall not create, incur or suffer to exist any postpetition liens or security interests other than:  (i) those granted pursuant to this ~~Interim~~Final Order; (ii) carriers', mechanics', operator~~s~~'s', warehousemen's, repairmen's or other similar liens arising in the ordinary course of

- 27 -

business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

7.    **Carve Out**.

8.7.    As used in this ~~Interim~~Final Order, "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; plus (ii) fees and expenses up to $100,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code; plus (iii) all allowed unpaid fees and expenses (whether allowed before or after the delivery of a Carve Out Notice (as defined herein), and whether allowed by interim order, procedural order, or otherwise) incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (any such persons or firms, collectively, the "Debtor Professionals") and the Committee (any such persons or firms, together with the Debtor Professionals, collectively, the "Professional Persons") and the reimbursement of reasonable and documented out-of-pocket expenses, to the extent allowed at any time, incurred by any member of the Committee in furtherance of its duties as a Committee member (but excluding fees and expenses of third-party professionals employed by any such member of the Committee) (the "Committee Expenses") at any time before the first business day following delivery by the First Lien Agent (via electronic mail, overnight delivery or hand delivery) to each of Sabine's Senior Vice President and Chief Financial Officer, Kirkland & Ellis LLP, the U.S. Trustee, counsel to the Second Lien Agent and counsel to the Committee of a written notice (the "Carve Out Notice"), which notice may be delivered at any time following the occurrence of the Termination Date or a Termination Event (as defined below), stating that a Termination Date has

- 28 -

occurred or a Termination Event has occurred; and (iv) the allowed fees and expenses (whether allowed by interim order, procedural order, or otherwise) of Professional Persons and the Committee Expenses in an aggregate amount not to exceed $~~1~~2,000,000 (the "Post-Carve Out Notice Cap") incurred after the first business day following delivery by the First Lien Agent of the Carve Out   Notice as set forth above; *provided, however,* that (x) other than fees and expenses incurred by the Debtors' Professionals in connection with paragraphs 11 and 23(a) of this ~~Interim~~Final Order, the Carve Out shall not be available to pay the fees or expenses of Professional Persons incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the First Lien Agent or the other First Lien Secured Parties; (y) so long as a Carve Out Notice has not been delivered, the Carve Out shall not be reduced by the payment of fees and expenses of Professional Persons or Committee Expenses allowed at any time by this Court and payable under sections 328, 330 or 331 of the Bankruptcy Code or other order of this Court; and (z) ~~,~~ without prejudice to the rights of Professional Persons or the Debtors to contest any such objection, nothing in this ~~Interim~~Final Order shall be construed to impair the ability of any party to object to the allowance of any Committee Expenses or any fees, expenses, reimbursements or compensation sought by any Professional Persons. ~~Subject to entry of the Final Order, upon~~Upon delivery of the Carve Out Notice as set forth above, the Debtors shall establish a reserve account with the First Lien Agent (the "Carve Out Reserve") in an amount equal to the sum of (i) all billed and unpaid monthly fees and expenses of all Professional Persons (including any outstanding holdbacks); (ii) all unbilled fees and expenses of Professional Persons incurred prior to the delivery of the Carve Out Notice, and (iii) the Post Carve-Out Notice Cap (collectively, the "Carve Out Professional Fees"). The Carve Out Reserve shall be funded in cash, and the payment of the Carve Out

Professional Fees from the Carve Out Reserve shall be deemed to have been satisfied: (x) first, from cash, if any, that is not Cash Collateral; (y) second, from Disputed Cash, and (z) third, only if there is no cash remaining in respect of (x) and (y) above, from Segregated Cash Collateral. After payment in full of the allowed amount of the Carve Out Professional Fees from the Carve Out Reserve, any funds remaining in the Carve Out Reserve shall be applied as follows: (i) first, cash up to the amount of Segregated Cash Collateral, if any, used to fund the Carve Out Reserve shall be returned to the Segregated Account and shall constitute Segregated Cash Collateral;  (ii) second, cash up to the amount of the Disputed Cash used to fund the Carve Out Reserve shall be transferred to the Operating Account and shall constitute Disputed Cash pending further Court order; and (iii) third, any funds remaining in the Carve Out Reserve thereafter shall be transferred to the Operating Account and shall constitute  cash that is not Cash Collateral.

9.8.   **Postpetition Lien Perfection**.   Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any Collateral, thise Interim Order and/or this Final Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to thise Interim Order and this Final Order.   Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Prepetition Agents to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

10.9.   **Inspection Rights**.   In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under their respective Prepetition Loan Documents, upon reasonable prior written notice (including via electronic mail) during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Agents to (i) have access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral, (ii) have access to and inspect the Debtors' properties and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

11.10.   **Termination**.   The Debtors' right to use the Cash Collateral pursuant to this ~~Interim~~Final Order shall terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earlier to occur of:  (i) ~~the date that is forty-five (45) days after the Petition Date (unless such period is extended by mutual agreement of the First Lien Agent and the Debtors) if the Final Order has not been entered by this Court on or before such date, (ii)~~ January 15, 2016 (the "Expiration Date"); *provided, however*, that with the consent of the Debtors and the First Lien Agent, in the exercise of their respective sole discretion, the Expiration Date may be extended to February 15, 2016 without further Court approval~~; (iii~~ upon the filing of a notice on the docket of the Cases setting forth the new Expiration Date; (ii) the occurrence of any of the events set forth in clauses (a), (b), (c) (d), (i), (j), (k), (l), (m), ~~(n),~~ and (~~o~~n) below; and (~~iv~~iii) five (5) business days following the delivery of a written notice (any such notice, a "Default Notice") by the First Lien Agent to the Debtors, Kirkland & Ellis LLP, the United States Trustee, counsel to the Second Lien Agent, and counsel to the Committee of Default Notice (any such five-business-day period of time, the "Default Notice Period") ~~by the First Lien Agent to the Debtors, Kirkland & Ellis LLP, the United States~~

~~Trustee, counsel to the Second Lien Agent, and counsel to the Committee~~ of the occurrence of

any of the events set forth in clauses (e), (f), (g), and (h) below unless such occurrence is cured

by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or

such occurrence is waived by the First Lien Agent in its sole discretion, *provided* that, during the

Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in

accordance with the terms of this ~~Interim~~Final Order):

(a)     The dismissal of the Cases or the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code;

(b)     The entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Agents or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral without the written consent of the First Lien Agent, which consent may be withheld in its sole discretion;

(c)     The appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers relating to the operation of the businesses in the Cases;

(d)     The occurrence of the effective date of a plan of reorganization for the Debtors;

(e)     The failure by the Debtors to make any payment required pursuant to this ~~Interim~~Final Order when due;

(f)     The failure by the Debtors to deliver to the Prepetition Agents any of the documents or other information required to be delivered pursuant to this ~~Interim~~Final Order when due or any such documents or other information shall contain a material misrepresentation;

(g)     The failure by the Debtors to adhere to the Budget except, in each instance, with respect to Permitted Deviations or Non-Conforming Uses;

(h)     The failure by the Debtors to observe or perform any of the material terms or material provisions contained herein;

(i)     The Debtors shall create, incur or suffer to exist any postpetition liens or security interests other than ~~those~~liens or security interests which (x) are permitted pursuant to paragraph 6 of this

- 32 -

~~Interim~~Final Order or (y) have a value less than $1,000,000 in the aggregate at any one time;

(j)     The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims;

(k)     Except as permitted by paragraphs 11 or 23(a) of this ~~Interim~~Final Order, a filing ~~by~~ any ~~Debtor~~ ~~of~~ any ~~motion,~~ pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the First Lien Indebtedness or asserting any other cause of action against and/or with respect to the First Lien Indebtedness, the Prepetition Collateral securing the First Lien Indebtedness or any of the First Lien Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party~~);~~ (except for participation in formal or informal discovery not initiated by the Debtors));

(l)     Except as permitted by paragraphs 11 or 23(b) of this ~~Interim~~Final Order, a filing ~~by~~ any ~~Debtor~~ ~~of~~ any ~~motion,~~ pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Second Lien Indebtedness or asserting any other cause of action against and/or with respect to the Second Lien Indebtedness, the Prepetition Collateral securing the Second Lien Indebtedness or any of the Second Lien Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party~~);~~ (except for participation in formal or informal discovery not initiated by the Debtors));

~~(m)     The Debtors' failure to file an application to employ a chief restructuring officer on the Petition Date;~~

~~(n)~~(m)  The Debtors' failure to employ a chief restructuring officer that is reasonably acceptable to the First Lien Agent within twenty (20) business days of the resignation or incapacity of any chief restructuring officer retained by the Debtors on or after the Petition Date; or

~~(o)~~(n)  The entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of this ~~Interim~~Final Order.

Each of subparagraph (a) through (~~o~~n) is referred to herein as a "Termination Event." On and after the Termination Date, the Debtors shall immediately cease using Cash Collateral and the

First Lien Agent may in accordance with the terms and conditions of this ~~Interim~~Final Order, absent further order of the Court, following the applicable Termination Date, exercise the rights and remedies available under the Prepetition Loan Documents, this ~~Interim~~Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the First Lien Secured Parties and the Second Lien Secured Parties pursuant to this ~~Interim~~Final Order and apply the same to such obligations.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit such actions.  In any hearing regarding any exercise of rights or remedies, the only issues that may be raised by any of the Debtors in opposition thereto shall be (A) whether, in fact, the Termination Date shall have occurred and (y) what is the quantum of the Collateral Diminution, and each of the Debtors hereby waives any right to seek relief, including, without limitation, under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the First Lien Agent and the First Lien Secured Parties set forth in this Final Order or the First Lien Loan Documents or, subject to the Intercreditor Agreement, the rights and remedies of the Second Lien Secured Parties set forth in this ~~Interim~~Final Order, or the Second Lien Loan Documents.  Any delay or failure of a Prepetition Secured Party to exercise rights under any First Lien Loan Document or Second Lien Loan Document or this ~~Interim~~Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties (subject to the Intercreditor Agreement) under this ~~Interim~~Final Order shall survive the Termination Date.

        11.    **Usage and Reservation of Rights With Respect to Disputed Cash**.

Except as provided in (i) paragraphs 12 and 13 of this ~~Interim Order~~Final Order as to the Debtors and (ii) paragraph 22 of this Final Order as to the Committee, with respect to Segregated Cash Collateral (as defined below), the Debtors, the Committee and the Prepetition Secured Parties reserve all of their respective rights, claims, and defenses with respect to whether cash, including the proceeds of the Debtors' borrowing under the First Lien Credit Agreement on February 25, 2015, in the ~~Debtors' main operating account (the "~~Operating Account~~")~~, prior to or as of the Petition Date or thereafter (collectively, the "Disputed Cash"), constituted or constitutes Prepetition Collateral or the proceeds of Prepetition Collateral in which the Prepetition Secured Parties had or have valid and perfected security interests and/or should be subject to a constructive trust or other equitable trust in favor of the Prepetition Secured Parties; *provided, however*, that, except as provided in paragraphs 12 and 13 of this ~~Interim~~Final Order, the Debtors shall maintain the Disputed Cash in the Operating Account and use the Disputed Cash to fund all adequate protection payments required to be paid pursuant to paragraphs 3(c), 3(e) and 4(c) of this ~~Interim~~Final Order, all Restructuring Professional Fees (as designated in the Budget), all Capital Expenditures (as designated in the Budget) and Lease Operating Expenses (as designated in the Budget) in each case related to the Debtors' assets that are not Prepetition Collateral and 100% of the Debtors' other general and administrative expenses (the "Unallocated G&A"), in each case, as permitted by and in accordance with the Budget. ~~The Debtors~~ Except as provided in (i) paragraphs 12 and 13 of this Final Order as to the Debtors and (ii) paragraph 22 of this Final Order as to the Committee, the Debtors, the Committee, and the First Lien Agent (on behalf of the First Lien Secured Parties) reserve their respective rights to assert claims or seek any other relief with respect to the Disputed Cash. The Debtors and the Committee further reserve their ~~right~~respective rights to assert that a portion of the Unallocated G&A should be, or should have

been, payable from the Segregated Cash Collateral, and the First Lien Secured Parties and the Second Lien Secured Parties reserve their rights to oppose such relief.

12.    **Debtors' Obligations Under Section 363(c)(4)**.    The Debtors, after consultation with the Committee, shall establish and implement procedures reasonably acceptable to the First Lien Agent and the Debtors to segregate and account for all cash proceeds of the Prepetition Collateral (other than the Disputed Cash) (i) held in the Operating Account on the Petition Date (including the proceeds of joint interest billings arising under joint operating agreements related to the Hydrocarbon Properties) or (ii) received by the Debtors on or after the Petition Date as determined based on net lease operating statements and net accrued capital expenditures beginning with the month of June 2015 ((i) and (ii), collectively, the "Segregated Cash Collateral"), which procedures shall include, without limitation, that not later than fourteen (14) days after delivery of each set of monthly financial statements required to be delivered pursuant to paragraph 3(f)(vi) of this ~~Interim~~Final Order, the Debtors shall transfer all Segregated Cash Collateral out of the Operating Account into the Segregated Account. ~~The~~Subject to the provisions and rights set forth in Paragraph 22 of this Final Order, the Prepetition Secured ~~Parties shall at all times be deemed to have~~Parties' perfected liens and security interests in ~~all~~the Prepetition Collateral, if any, shall continue to attach to the Segregated Cash Collateral irrespective of the commingling of the Segregated Cash Collateral with other cash in the Operating Account prior to its transfer to the Segregated Account. ~~For~~ Any failure by the ~~avoidance of doubt, the Debtors' commingling of any Cash Collateral with other cash deposited in the Operating Account before~~Debtors on or after the Petition Date to comply with the Bankruptcy Code section 363(c)(4) segregation requirements in respect of any Cash Collateral (including any Disputed Cash that constitutes Cash Collateral) shall not be used as a

basis to challenge the claims, or to the extent, validity, enforceability or perfectionperfected status of the liens or security interests of the securing such claims, of any party, including without limitation, the Prepetition Secured Parties in any such cash, any mineral interest owners or joint venture partners of the Debtors.

13.    **Limited Usage of Segregated Cash Collateral**. The Debtors are authorized to use Segregated Cash Collateral solely to pay Capital Expenditures (as designated in the Budget) and Lease Operating Expenses (as designated in the Budget) related to the Prepetition Collateral, in each case, as permitted by and in accordance with the Budget, and for such other expenses as may be ordered by the Court after notice and a hearing or as may be agreed to by the First Lien Agent in its sole discretion.

14.    **Jurisdiction Over Operating Account Disputes**. The Court shall retain jurisdiction to resolve any disputes with respect to the extent to which cash deposited into the Operating Account by or for the benefit of the Debtors or any other cash or cash equivalents of the Debtors constitutes Cash Collateral (and subject to the terms of this InterimFinal Order, all rights of the Debtors, the Committee and the Prepetition Secured Parties with respect to any such dispute are expressly preserved).

15.    **Limitation on Charging Expenses Against Collateral**. Subject to entry of the Final Order, allAll rights to surcharge any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.; *provided, however,* that in the event any (a) Disputed Cash that is neither Prepetition Collateral, proceeds of Prepetition Collateral, nor subject to a constructive trust or any other equitable remedy in favor of any Prepetition Secured

Party or (b) unencumbered cash (collectively, the "Other Cash"), is used to preserve or dispose of the Prepetition Collateral, then the Debtors may apply to the Court to recover the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the Prepetition Secured Parties and the First Lien Secured Parties and the Second Lien Secured Parties reserve their rights to oppose any request for such relief; *provided further, however,* that nothing herein shall prevent the Committee from seeking standing to pursue a surcharge against the Prepetition Collateral under section 506(c) of the Bankruptcy Code, solely to the extent permitted by applicable law and solely to the extent that the Other Cash is used to preserve or dispose of the Prepetition Collateral, to recover the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the Prepetition Secured Parties.  The Debtors, the First Lien Secured Parties and the Second Lien Secured Parties reserve their rights to oppose any such request for standing and any other relief requested in connection therewith.

16.    **Reservation of Rights of the Prepetition Lenders**.  This ~~Interim~~Final Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take another action in the Cases and to appear and be heard in any matter raised in the Cases, and (ii) any and all rights, remedies, claims and causes of action which the Prepetition Agents or the Prepetition Secured Parties may have against any non-Debtor party liable for the First Lien Prepetition Indebtedness or the Second Lien Prepetition Indebtedness.

17.    **Modification of Automatic Stay**.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be

reasonably necessary to implement the terms and conditions of this ~~Interim~~Final Order and the transactions contemplated hereby.    The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this ~~Interim~~Final Order.

18.    **Survival of ~~Interim~~Final Order**.    The provisions of this ~~Interim~~Final Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to Chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization.    The terms and provisions of this ~~Interim~~Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to th~~is~~e Interim Order and this Final Order shall continue notwithstanding any conversion of the Cases to Chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization.    Subject to the reservation of rights set forth in paragraph~~s~~ 3(c), 3(g) and 4(c) of this ~~Interim~~Final Order and the reservations of rights and limitations ~~described~~set forth in paragraphs 22 and 24 of this ~~Interim~~Final Order, the adequate protection payments made pursuant to the Interim Order and this ~~Interim~~Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent Chapter 7 cases (other than a defense that the payment has actually been made).

19.    **No Liability to Third Parties**.    ~~Subject~~Nothing in this Final Order shall be construed to ~~entry of the~~impose upon the Prepetition Agents or the other Prepetition Secured Parties any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.    In addition, notwithstanding anything in the contrary in this Final Order, none of the Prepetition

Agents or the other Prepetition Secured Parties shall: (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) or be deemed to be acting as a "Responsible Personresponsible person" or "Oowner" or "Ooperator" with respect to the operation or management of the Debtors, so long as the actions of the Prepetition Agents or of the other Prepetition Secured Parties do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute)."").

20.    **Binding Effect**.    The terms of this InterimFinal Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this InterimFinal Order by this Court.    In the event the provisions of this InterimFinal Order are reversed, stayed, modified or vacated following any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this InterimFinal Order.

21.    **Reversal, Stay, Modification or Vacatur**.    Notwithstanding any such reversal, stay, modification or vacatur, any indebtedness, obligation or liability incurred by the Debtors pursuant to this InterimFinal Order arising prior to the Prepetition Agents' receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this InterimFinal Order, and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any

payments authorized herein and the security interests and liens granted herein, with respect to any such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or ~~credit extended or~~ lien or security interest granted pursuant to this ~~Interim~~Final Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

22.     **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. ~~Subject only to the Debtors' rights under paragraphs 11 and 23 of this Interim Order, the~~

(a)     The Debtors' admissions and releases contained in ~~paragraphs D, E, F, G and H of this Interim~~this Final Order: (i) shall be binding upon the Debtors, subject only to the Debtors' rights under paragraphs 11 and 23 of this Final Order, for all purposes; ~~and~~ (ii) shall be binding upon all other parties in interest, ~~including~~other than the Committee, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities right or ability to do so) has properly filed an adversary proceeding or contested matter ~~by no later than the date that is seventy five (75) days from the date of entry of this Interim Order (or, in the case of the Committee, sixty (60) days from the date of entry of the Final Order (the "Committee Challenge Deadline"), (x)~~ (x) challenging the amount, validity, enforceability, priority or extent of the First Lien Prepetition Indebtedness, the Second Lien Prepetition Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates~~, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter~~ (collectively, a "Challenge Proceeding") by no later than October 9, 2015 (the "Challenge Deadline"), and (2) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge Proceeding; *provided, however*, that the filing of an "STN Motion" by a party in interest (other than the Committee) shall toll the Challenge Deadline for such party until five (5) days after the Court, after notice and a hearing, rules on such request; and (iii) shall be binding upon the Committee for all purposes unless the Committee has properly filed a (x) Challenge Proceeding or (y)

an adversary proceeding or contested matter with respect to the prepetition termination of any Swap Agreement and the application of proceeds therefrom to the Prepetition Indebtedness (collectively, a "Committee Challenge Proceeding") by no later than November 10, 2015 (the "Committee Challenge Deadline") and the Court rules in favor of the Committee in such timely and properly filed Committee Challenge Proceeding; *provided, however*, that (i) any request by the Committee for an extension of the Committee Challenge Deadline for "cause" or (ii) the filing of an "STN Motion" by the Committee shall toll the Committee Challenge Deadline until five (5) days after the Court, after notice and a hearing, rules on such request.  If no such Challenge Proceeding or Committee Challenge Proceeding is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding, then subject only to the Debtors' rights under paragraph 11 and 23 of this ~~Interim~~Final Order: (a) the Debtors' admissions and releases contained in ~~paragraphs D, E, F, G and H of this Interim~~this Final Order shall be binding on all parties in interest, including the Committee; (b) the obligations of the Debtors under the First Lien Loan Documents and Second Lien Loan Documents shall constitute allowed claims for all purposes in the Cases, and any subsequent Chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, and perfected first and second priority security interests and liens, as applicable, not subject to recharacterization, subordination or otherwise avoidable; and (d) the First Lien Prepetition Indebtedness, the Second Lien Indebtedness and the Prepetition Secured Parties' security interests in and liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto.  If any ~~such adversary proceeding~~Challenge Proceeding or ~~contested matter~~Committee Challenge Proceeding is properly filed as of such dates, the Debtors' admissions and releases contained in ~~paragraphs D, E, F, G and H of this Interim~~this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such stipulations, agreements, admissions and releases were expressly challenged in such ~~adversary proceeding~~Challenge Proceeding or ~~contested matter.  Nothing contained in this Interim Order shall be deemed to grant standing to the~~ such Committee ~~or any other party to commence any such adversary proceeding or contested matter~~Challenge Proceeding and only to the extent such Challenge Proceeding was successful.

(b)      Nothing contained in this Final Order shall be deemed to grant standing to the Committee to commence a Committee Challenge Proceeding or any other party to commence a Challenge Proceeding.

22.23.  **Debtors' Limited Reservation of Rights and Bar of Challenge and Claims**.

(a)      **Debtors' Right to Challenge the Post Merger First Liens**. Notwithstanding anything to the contrary in this ~~Interim~~Final Order, but subject to Paragraph 22 hereof, the Debtors shall retain the right to challenge the validity, priority and/or enforceability of any liens and security interests granted to the First Lien Secured Parties on the assets of Forest Oil Corporation and its direct and indirect subsidiaries that were not subject to the First Lien Secured Parties' liens and security interest prior to the December 16, 2014 merger (the "Merger," and, such additional liens and security interests, the "Post-Merger First Liens"); *provided, however*, that if the Debtors fail to file an adversary proceeding or contested matter asserting such challenge by the ~~date that is seventy-five (75) days from the date of entry of this Interim Order~~Committee Challenge Deadline, or the Court does not rule in favor of the Debtors in any such proceeding, then the Post-Merger First Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and the Post-Merger First Liens shall not be subject to any other or further challenge by the Debtors, including, without limitation, any successor thereto~~.~~; *provided further, however*, that the foregoing shall not affect the rights of the Committee or any other party in interest to challenge any such transaction, which right is expressly preserved herein subject solely to the Challenge Deadline or the Committee Challenge Deadline (including any tolling or extensions thereof) set forth in Paragraph 22 hereof.

(b)      **Debtors' Rights Against the Second Lien Secured Parties**. Notwithstanding anything to the contrary in this ~~Interim~~Final Order, but subject to Paragraph 22 hereof, the Debtors shall retain the right to challenge the validity, priority and/or enforceability of any liens and security interests granted to the Second Lien Secured Parties on the assets of Forest Oil Corporation and its direct and indirect subsidiaries that were not subject to the Second Lien Secured Parties' liens and security interest prior to the Merger (such additional liens and security interests, the "Post-Merger Second Liens"), *provided, however*, that if the Debtors fail to file an adversary proceeding or contested matter asserting such

challenge by the ~~date that is seventy five (75) days from the date of entry of this Interim Order~~Committee Challenge Deadline, or the Court does not rule in favor of the Debtors in any such proceeding, then the Post-Merger Second Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected second priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and the Post-Merger Second Liens shall not be subject to any other or further challenge by the Debtors, including, without limitation, any successor thereto~~.~~; *provided further, however*, that the foregoing shall not affect the rights of the Committee or any other party in interest to challenge any such transaction, which right is expressly preserved herein subject solely to the Committee Challenge Deadline (including any tolling or extensions thereof) and the Challenge Deadline set forth in Paragraph 22 hereof.

~~23.~~24.  **Limitation on Use of Collateral**.  Notwithstanding the foregoing or any other provision of this ~~Interim~~Final Order, no Disputed Cash (unless and until the Court determines that such cash is Other Cash) or other Cash Collateral may be used to: (a) object to, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Prepetition Indebtedness, or the liens or claims granted under th~~is~~e Interim Order, this Final Order or the Prepetition Loan Documents and/or assert any claims, defenses or causes of action against the Prepetition Secured Parties or their respective agents, affiliates, representatives, attorneys, or advisors, except by the Debtors in accordance with the Budget and as set forth in paragraph 23 of this ~~Interim~~Final Order; (b) prevent, hinder, or otherwise delay the First Lien Agent's assertion, enforcement, or realization on the Cash Collateral or the Collateral in accordance with the First Lien Loan Documents~~or this~~, the Interim Order or this Final Order; (c) seek to modify any of the rights granted in th~~is~~e Interim Order, this Final Order or the First Lien Loan Documents without the First Lien Agent's prior written consent; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are both approved by an Order of this Court and in accordance with the Budget.  Notwithstanding the foregoing, advisors to the Committee may investigate the claims and liens of the Prepetition Secured Parties

prior to the ~~Committee~~ Challenge Deadline at an aggregate expense not to exceed $~~2~~50,000~~.~~ from the Disputed Cash (unless and until the Court determines that such cash is Other Cash, in which case such expenses may be paid from Other Cash).

~~24.~~25. **Enforceability; Waiver of Any Applicable Stay**.   This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

~~25.~~26. **No Impact on Certain Contracts or Transactions**.   No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this ~~Interim~~Final Order.

~~26.~~27. **Proofs of Claim**.   None of the Prepetition Agents nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, ~~and~~ with respect to the Debtors' stipulations ~~in~~ ~~paragraphs D, E, F and G herein~~this Final Order or the adequate protection granted in this Final Order, and such stipulations or adequate protection shall be deemed ~~to~~ constitute ~~a~~ timely ~~filed~~ proof~~s~~ of claim against the applicable Debtors.   Notwithstanding the foregoing, each of the First Lien Agent (on behalf of itself and the other First Lien Secured Parties) and the Second Lien Agent (on behalf of itself and the applicable Second Lien Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of

- 45 -

claim for any claims of the Prepetition Secured Parties arising from the applicable Prepetition Loan Documents; *provided, however,* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

       27.28. **Intercreditor Agreement**.    Nothing in this ~~Interim~~Final Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreement, and the Intercreditor Agreement shall remain in full force and effect.    The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreement.

      28.29. **Section 552(b) of the Bankruptcy Code**.  The Prepetition Agents and the Prepetition Secured ~~Lenders~~Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and~~, subject to entry of the Final Order,~~ the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agents and the Prepetition Secured ~~Lenders~~Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral. *, provided, however,* that to the extent that any Other Cash is used to benefit the Prepetition Collateral, then the Debtors reserve their right to argue, based on the equities of the case, that the Prepetition Secured Parties' liens (other than Adequate Protection Liens) do not attach to certain postpetition proceeds of the Prepetition Collateral, solely to the extent of the amount of Other Cash so used (the "552(b) Claim"); *provided further, however,* that nothing herein shall prevent the Committee from seeking standing to assert a 552(b) Claim.  The Debtors, the First Lien Secured Parties and the Second Lien Secured Parties reserve their rights to oppose any such request for standing and any 552(b) Claim by either the Debtors or the Committee.

29.30. **No Marshaling**. —Neither the Prepetition Agents nor the Prepetition Secured ~~Lenders~~Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral, as applicable.—

31.     **Miscellaneous**.

(a)     Nothing in this Final Order, or any agreements or documents referenced herein, shall limit the Debtors' obligations pursuant to 28 U.S.C. §959(b).

(b)     As to the United States and any agencies, departments, or agents thereof, nothing in this Final Order, or any agreements or documents referenced herein, shall discharge, release, or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

(c)     For the avoidance of doubt, nothing in this Final Order shall affect ownership rights or resulting rights to proceeds of holders of Non-Operating Working Interests or Royalty Interest Holders (each as defined in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing Payment of (I) Working Interest Disbursements and (II) Royalty Payments in the Ordinary Course of Business* [Docket No. 11]), in such property.

30.32. **Headings**.    The headings in this ~~Interim~~Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this ~~Interim~~Final Order.—

31.33. **Retention of Jurisdiction**.    The Court has and will retain jurisdiction to enforce this ~~Interim~~Final Order.—

~~32.     **Final Hearing**.    The Final Hearing on the Motion is scheduled for [_____], 2015, at [_____] before this Court.~~

~~33.     **Objections**.    The Debtors shall promptly mail copies of this Interim Order to the parties having been given notice of the Interim Hearing and to any other party which has~~

filed a request for notices with this Court. Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file same with the Court (with a courtesy copy to Chambers) and serve such objection on the following parties so as to be received no later than 4:00 p.m. (Eastern Time) on [_____], 2015: (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022, Attention: Jonathan Henes, P.C. and Christopher Marcus, P.C., and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attention: Ryan Blaine Bennett, Brad Weiland, and Gregory F. Pesce, Proposed Counsel to the Debtors; (ii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York, 10019, Attention: Margot B. Schonholtz, Esq., and Ana M. Alfonso, Esq., Attorneys for the First Lien Agent; (iii) Paul, Weiss, Rifkind, Wharton & Garrison LLP. Attention: Alan Kornberg, Esq., Attorneys for the Second Lien Agent; and (iv) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York, 10014, Attention: Paul Kenan Schwartzberg, Esq.

34. **Reporting to the Committee**. The Debtors shall provide the Committee with all reporting materials set forth under section 3(f) of this Final Order at the same time and in the same manner as provided to the First Lien Agent and/or the other First Lien Secured Parties.

Dated: New York, New York
            September [____], 2015

_____
THE HONORABLE [_____]SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**Budget**