Keith A. Simon
Annemarie V. Reilly
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

*Counsel to HPIP Gonzales Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | ) ) ) | Case No. 15-11835 (SCC) |
| Debtors. | ) ) ) | (Jointly Administered) |

**OBJECTION OF HPIP GONZALES HOLDINGS, LLC TO**
**DEBTORS' OMNIBUS MOTION FOR ENTRY OF AN ORDER**
**AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS**

HPIP Gonzales Holdings, LLC ("**HPIP**"), by and through its counsel, files this objection (the "**Objection**") to the *Debtors' Omnibus Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts* [Docket No. 371] (the "**Motion**").[2]  In support of the Objection, HPIP respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440). The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is: 1415 Louisiana, Suite 1600, Houston, Texas 77002.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion or the HPIP Agreements, as applicable.

NY\7345776.5

**PRELIMINARY STATEMENT**

The Debtors seek to reject the HPIP Agreements *nunc pro tunc* to September 30, 2015 on the terms set forth in the proposed order attached as Exhibit A to the Motion (the "**Proposed Order**"). HPIP does not object to the rejection of the HPIP Agreements or the retroactive application of rejection to September 30, 2015. Rather, HPIP objects to the Debtors' improper attempt to use Section 365 of the Bankruptcy Code as a means to circumvent covenants running with the land that the Debtors conveyed to HPIP in the HPIP Agreements. Section 365 simply does not give the Debtors the authority to do so. Section 365 provides that rejection constitutes a breach of the contract by the debtor, not a termination or rescission of the contract. Thus, there is nothing in Section 365 that permits a debtor to deny or revoke property interests that were properly conveyed to the non-debtor counterparty prior to the petition date. The covenants that the Debtors conveyed to HPIP prior to the Petition Date are property interests that run with the land and are unaffected by the Debtors' proposed rejection of the HPIP Agreements. The Proposed Order reaches far beyond the proper scope of Section 365 and should be modified as set forth in Exhibit 1 attached hereto (the "**Modified Order**"). The Modified Order makes clear that rejection of the HPIP Agreements does not impair, prejudice, waive, or otherwise affect HPIP's property interests. A redline showing the changes between the Modified Order and Proposed Order is set forth in Exhibit 2 attached hereto.

**THE HPIP AGREEMENTS:  COVENANTS RUNNING WITH THE LAND**

1.  Pursuant to the Motion, the Debtors seek to reject two agreements with HPIP: (i) that certain *Production Gathering, Treating and Processing Agreement*, between HPIP and Forest Oil Corporation, a copy of which is attached hereto as Exhibit 3 (the "**HPIP Gathering Agreement**") and (ii) that certain *Water and Acid Gas Handling Agreement*, between HPIP and

2

Forest Oil Corporation, a copy of which is attached hereto as Exhibit 4 (the "**HPIP Handling Agreement**" and, together with the HPIP Gathering Agreement, the "**HPIP Agreements**").

2. *The HPIP Gathering Agreement*.  Pursuant to the HPIP Gathering Agreement, HPIP agreed to construct certain Facilities (as defined in the HPIP Gathering Agreement), to Sabine's[3] specifications, and then to utilize those Facilities to perform gathering services with respect to all of the oil, gas, and water produced by Sabine from the HPIP Dedicated Area during the term of the HPIP Gathering Agreement.  The HPIP Gathering Agreement expressly provides that HPIP shall own the Facilities that it constructs.  *See* HPIP Gathering Agreement, § 3.1.

3. To incentivize HPIP to construct the Facilities and incur the substantial costs associated therewith, Sabine committed to performance of the HPIP Gathering Agreement the Leases listed in Exhibit A to the HPIP Gathering Agreement, as well as all of Sabine's production from the wells located on the Leases (collectively, the "**Gathering Dedication**").  The HPIP Gathering Agreement unequivocally provides that the Gathering Dedication is a covenant running with the land.  Section 1.2 of the HPIP Gathering Agreement expressly provides:

> [Sabine] hereby dedicates and commits to the performance of this Agreement the Leases and all of [Sabine]'s owned or controlled Production produced and saved from [Sabine]'s operated Wells located on the Leases, and to ensure the faithful performance of the provisions of this Agreement, [Sabine] covenants to deliver the same to [HPIP]….*This shall be a covenant attaching to and running with the lands and leasehold interests covered hereby and shall be binding on the successors and assigns of [Sabine]* and any interest of [Sabine] in the Leases and the Production from Wells of which [Sabine] is the operator.

Gathering Agreement, § 1.2 (emphasis added).

---

[3] Forest Oil Corporation was renamed Sabine Oil & Gas Corporation ("**Sabine**") on or about December 19, 2014.

NY\7345776.5

4. In addition, Section 9.2.1 of the HPIP Gathering Agreement expressly states that "[t]his Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs, administrators and/or executors and shall constitute a real right and covenant running with the lands and leasehold interests covered hereby." HPIP Gathering Agreement, § 9.2.1. Sabine expressly and unambiguously agreed that HPIP would have the exclusive right to perform gathering services on any hydrocarbons produced from the Wells located on Sabine's Leases and the parties made clear that such agreement is a covenant running with the land.

5. *The HPIP Handling Agreement*. Pursuant to the HPIP Handling Agreement, HPIP agreed to construct certain salt water Disposal Facilities (as defined in the HPIP Handling Agreement) and then to utilize those Disposal Facilities to perform disposal services with respect to all of the water and acid gas produced by Sabine within the HPIP Dedicated Area during the term of the HPIP Handling Agreement. The HPIP Handling Agreement expressly provides that HPIP shall own the Disposal Facilities. *See* HPIP Handling Agreement, § 3.1.

6. Sabine committed to performance of the HPIP Handling Agreement "all the Fluids produced by the actions and activities contemplated by the [HPIP Gathering Agreement]" (the "**Handling Dedication**" and, together with the Gathering Dedication, the "**Acreage Dedications**"). Like with the HPIP Gathering Agreement, the HPIP Handling Agreement unequivocally provides that the Handling Dedication is a covenant running with the land. Section 1.2 of the HPIP Handling Agreement expressly provides:

> to ensure the faithful performance of the provisions of this [HPIP Handling Agreement], [Sabine] covenants to deliver the same to [HPIP] at the Central Facility hereto without other disposition….***This shall be a covenant attaching to and running with the lands and leasehold interests covered hereby and shall be binding on the successors and assigns of [Sabine]*** and any

4

> interest of [Sabine] in the Leases and the Fluids from Wells of which [Sabine] is the operator.

HPIP Handling Agreement, § 1.2 (emphasis added). In addition, Section 8.2.1 of the HPIP Handling Agreement expressly states that "[t]his Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs, administrators and/or executors and shall constitute a real right and covenant running with the lands and leasehold interests covered hereby." HPIP Handling Agreement, § 8.2.1.

## OBJECTION

### I. The Acreage Dedications are Covenants Running With the Land That Are Not Impacted by Rejection of the HPIP Agreements

7. Although the Debtors strategically avoid any reference to the covenants running with the land expressly granted under the HPIP Agreements, they nevertheless attempt to improperly divest HPIP of such property rights through the Motion and Proposed Order. *See* Motion, ¶ 13 ("Rejection of the HPIP Agreements will allow Sabine to pursue gathering and/or disposal arrangements with third parties…."); Proposed Order, ¶¶ 5, 6. Section 365 of the Bankruptcy Code simply does not give a debtor authority to revoke property interests (including those contained in restrictive covenants) that are validly conveyed to non-debtor counterparties prior to the petition date.

#### A. Rejection of an executory contract does not affect a non-debtor counterparty's property interests.

8. Rejection of an executory contract under Section 365 of the Bankruptcy Code merely constitutes a breach of the contract immediately prior to the petition date by a debtor. 11 U.S.C. § 365(g). Rejection "does not invalidate the contract, or treat the contract as if it did not exist." *In re Cont'l Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993). A contract counterparty's rights are not impacted, limited, or otherwise waived by rejection of the contract. *See, e.g.*

5

*Sunbeam Prods. v. Chi. Am. Mfg., LLC*, 686 F.3d 372, 377 (7th Cir. 2012) ("what [Section 365(g)] does by classifying rejection as breach is establish that in bankruptcy, as outside of it, the other party's rights remain in place….nothing about this process implies that any rights of the other contracting party have been vaporized."). Rejection is not the same as rescission or termination—it does not render the contract void or require that the parties be put back in the positions they were in before the contract was formed. It merely frees the debtor from future obligations to perform under the contract and has no effect upon prior performance. *See, e.g. Cohen v. Drexel Burnham Lambert Group*, 138 B.R. 687, 701, 711 (Bankr. S.D.N.Y. 1992) (stating that rejection "merely frees the estate from the obligation to perform; it does not make the contract disappear," and finding that rejection of an employment agreement did not "vaporize or otherwise avoid" a former employee's interest in escrowed funds already conveyed to him under the agreement); *In re Metro Transp. Co.*, 87 B.R. 338, 343 (Bankr. E.D. Pa. 1988) (stating that rejection "does not undo performances by parties to the contract, either prepetition or postpetition, which have preceded assumption or rejection"); *see also Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007); *In re Old Carco LLC*, 406 B.R. 180, 212 (Bankr. S.D.N.Y. 2009); *In re Rudaw/Empirical Software Prods., Ltd.,* 83 B.R. 241, 246 (Bankr. S.D.N.Y. 1988). Thus, a debtor who has conveyed a property interest under a contract prior to the petition date cannot later undo or invalidate such conveyance through rejection of the contract. Accordingly, even if the HPIP Agreements are rejected, the covenants granted to HPIP prior to the Petition Date limit Sabine's and any successor's future freedom to perform in a manner that is prohibited by such covenants.

**B.    Covenants running with the land constitute property interests for the purposes of Section 365 of the Bankruptcy Code.**

9.    Courts have routinely held that covenants running with the land are property interests rather than executory contracts and, therefore, cannot be extinguished through rejection in bankruptcy. *See Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (holding that restrictive covenants are more in the nature of property interests than executory contracts and, therefore, are not subject to rejection under Section 365); *Water Ski Mania Estates Homeowners Ass'n v. Hayes (In re Hayes)*, 2008 Bankr. LEXIS 4668, *32 (B.A.P. 9th Cir. 2008) ("restrictive covenants on real estate are not executory contracts subject to termination under § 365."); *In re Copper Creek Estates – Grand Island, L.L.C.*, 2011 Bankr. LEXIS 2666, *7-8 (Bankr. D. Neb. 2011) (stating that even if an agreement were executory and could be rejected, such rejection would not affect the restrictive covenant contained in the agreement or the right of the non-debtor counterparty under such covenant).    Courts in this district have likewise held that covenants running with the land are property interests.  *See In re Ames Dep't Stores, Inc.*, 316 B.R. 772, 787-93 (Bankr. S.D.N.Y. 2004) (holding that restriction on use of shopping center property was a covenant running with the land under New Hampshire law that could not be invalidated under section 365(f) of the Bankruptcy Code); *In re 523 E. Fifth St. Hous. Pres. Dev. Fund Corp.*, 79 B.R. 568, 576-77 (denying sale free and clear of covenant running with the land under section 363(f) of the Bankruptcy Code).  Therefore, because a covenant running with the land is a property interest, rejection of an executory contract containing such a covenant will have no effect on its enforceability against the debtor or its successors.

NY\7345776.5

**C.    The Acreage Dedications are covenants running with the land under Texas state law.**

10.    It is well-established that bankruptcy courts look to applicable state law to determine the nature of a debtor's interest in real property. *Butner v. United States*, 440 U.S. 48 (1979); *In re Ames*, 316 B.R. at 788 ("Property interests are created and defined by state law."). The HPIP Agreements are governed by Texas state law and the HPIP Dedicated Area is located in Texas. *See* HPIP Gathering Agreement, § 9.5 ("This Agreement shall be construed in accordance with and governed by the laws of the State of Texas"), Exhibit A attached thereto (stating that the Leases are all located in Texas); HPIP Handling Agreement, § 8.5 ("This Agreement shall be construed in accordance with and governed by the laws of the State of Texas"). Accordingly, the court should apply Texas state law when analyzing the covenants running with the land.

11.    The Texas Supreme Court has held that "a covenant runs with the land when it (1) touches and concerns the land; (2) relates to a thing in existence or specifically binds the parties and their assigns; (3) is intended by the original parties to run with the land; and (4) when the successor to the burden has notice." *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W. 2d 632, 635 (Tex. 1987); *see also Newco Energy v. Energytec Inc.*, 739 F.3d 215, 221 (5th Cir. 2013). In addition to the *Inwood* factors, a minority of courts have held that there must also be horizontal privity of estate for a covenant to run with the land. *See, e.g.*, *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910-11 (Tex. 1982).

12.    As discussed below, the covenants created under the HPIP Agreements meet each of the *Inwood* factors and are, therefore, valid and enforceable covenants running with the land.

NY\7345776.5

### i. *Covenant Must Touch and Concern the Land*

13. Two tests have developed under Texas law for determining whether a covenant "touches and concerns the land." *Energytec*, 739 F.3d at 223-24; *Westland Oil*, 637 S.W.2d at 911. Under the first test, a covenant touches and concerns the land "if it affected the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it." *Westland Oil*, 637 S.W.2d at 911. Under the second test, "[i]f the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more value by the promise—the benefit of the covenant touches or concerns the land." *Id.* While traditional Texas cases may have required that the covenant result in both a benefit to one party and a burden to the other, more recent Texas cases have dispensed with the benefit requirement and enforced restrictive covenants where only a burden was shown. *El Paso Refinery, LP v. TRMI Holdings, Inc.*, 302 F.3d 343, 356 (5th Cir. 2002); *see also Montfort v. Trek Resources, Inc.*, 198 S.W.3d 344, 356 (Tex. App. 2006) (finding that there is no requirement for a covenant running with the land to confer a benefit on the grantor); *Wimberly v. Lone Star Gas Co.*, 818 S.W.2d 868, 871 (Tex. App. 1991) (same).

14. In *Energytec*, the Fifth Circuit applied these tests and held that certain covenants contained in a gathering agreement (similar to the HPIP Gathering Agreement) ran with the land under Texas law. *Energytec*, 739 F.3d at 224-25. In that case, the original owner of a pipeline system conveyed the pipeline to a predecessor of Energytec. Concurrently with the conveyance, the original owner carved out certain transportation fees for its affiliate (Newco) in a separate letter agreement. The pipeline was later conveyed to Energytec. After Energytec filed for

9

bankruptcy, it sought to convey its interest in the pipeline to a third party free and clear of the transportation fees. In considering whether the covenant to pay the fees ran with the land, the Fifth Circuit found that Newco's interest in the transportation fees touched and concerned the land. The court reasoned that the real property at issue was the gas pipeline system and the rights of way required for its placement. The court stated that "the pipeline is a subsurface road for natural gas, and a fee for the use of that road was retained by [Newco].… These rights impact the owner's interest in the pipeline. Furthermore, as burdens on the property, they also impact the pipeline's value in the eyes of prospective buyers." *Energytec*, 739 F.3d at 224. Accordingly, the court held that "Newco's right to transportation fees and its rights to consent to assignment are covenants running with the land." *Id*. at 225.

15.   The facts at issue in *Energytec* are substantially similar to the facts at issue here. Sabine's leases and wells are real property interests that are burdened by the Acreage Dedications. As explained above, the Gathering Dedication provides that Sabine dedicates and commits to the HPIP Gathering Agreement "the Leases and all of [its] owned or controlled Production produced and saved from its operated Wells located on the Leases." HPIP Gathering Agreement, § 1.2. Likewise, the Handling Dedication provides that Sabine dedicates and commits to the HPIP Handling Agreement "all the Fluids produced by the actions and activities contemplated by the [HPIP] Gathering Agreement." HPIP Handling Agreement, § 1.2. Thus, the covenants prohibit Sabine from using the Leases and Wells to produce hydrocarbons unless such hydrocarbons will be delivered to HPIP for gathering services and disposal services. Accordingly, these covenants clearly affect the nature, quality, and value of the Leases and Wells, as well as the mode of enjoying it. Moreover, Sabine's legal interests as owner are "rendered less valuable by the promise" because the burden of the covenants would impact the

value of the Leases and Well in the eyes of prospective purchasers, as noted by the Fifth Circuit in *Energytec*. Additionally, although recent cases have dispensed with the requirement that the promisee benefit from the covenant, it is worth noting that both HPIP (as promisee) and Sabine (as promisor) benefitted from the covenants granted in the HPIP Agreements. HPIP's interests were rendered more valuable because it received the exclusive right to perform gathering services and disposal services, while Sabine's interests in the Leases and Wells were rendered more valuable by HPIP's agreement to construct the Facilities and the Disposal Facilities in exchange for the Acreage Dedications. For these reasons, the covenants contained in the HPIP Agreements (including, without limitation, pricing and fees) touch and concern the land as required pursuant to Texas law.

    **ii.** *Covenant Must Relate to a Thing in Existence or Specifically Bind the Parties and Their Assigns*

16.     The second element of the *Inwood* test requires that the covenant at issue relate to a thing actually in existence *or* that the covenant specifically bind the parties and their assigns. This element is clearly satisfied here because the covenants do relate to things in existence—the Leases and Wells owned by Sabine, as well as the pipelines installed and owned by HPIP. Moreover, as noted above, the HPIP Agreements expressly provide that the covenants are binding on the parties' successors and assigns. *See* HPIP Gathering Agreement, §§ 1.2, 9.2.1 ("[t]his Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs, administrators and/or executors…"); HPIP Handling Agreement, §§ 1.2, 8.2.1 (same).

    **iii.** *Covenant Must Be Intended by the Original Parties to Run with the Land*

17.     In addressing the requirement that the parties intend the covenant to run with the land, the Texas Court of Appeals has stated that "when construing [an unambiguous] deed, the

11

intent of the parties is to be determined from the express language found within the four corners of the document. All parts of the deed are to be harmonized, construing the instrument to give effect to all of its provisions." *Montfort*, 198 S.W.3d at 355. Although not required, intent is suggested where an agreement expressly provides that it inures to the benefit of the parties' successors and assigns. *Id.* (while not required, "the use of terminology such as 'successors and assigns' is helpful in determining intent"); *see also Wimberly*, 818 S.W.2d at 871 (finding that because the contract stated that it was to be binding on the parties' heirs, successors, and assigns, it was credible that the landowner understood the covenant to run with the land for an infinite time); *In re 523 E. Fifth St. Hous.*¸ 79 B.R. at 574 ("requisite intent [for a covenant to run with the land] is usually found in language such as 'these covenants shall run with the land,' or 'the grantee promises for himself, his heirs and assigns.'").

18. There is no question that the parties intended that the Acreage Dedications run with the land. The HPIP Agreements each clearly and unambiguously state that such covenants run with the land and benefit the parties' successors and assigns. In fact, such language is repeated in more than one place. *See* HPIP Gathering Agreement, § 1.2 (the Gathering Dedication "shall be a covenant attaching to and running with the lands and leasehold interests covered hereby and shall be binding on the successors and assigns of [Sabine]"); HPIP Gathering Agreement, § 9.2.1 ("(t]his Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs, administrators and/or executors and shall constitute a real right and covenant running with the lands and leasehold interests covered hereby."); HPIP Handling Agreement, § 1.2 (the Handling Dedication "shall be a covenant attaching to and running with the lands and leasehold interests covered hereby and shall be binding on the successors and assigns of [Sabine]"); HPIP Handling Agreement, § 8.2.1 ("[t]his

12

Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, assigns, heirs, administrators and/or executors and shall constitute a real right and covenant running with the lands and leasehold interests covered hereby."). Accordingly, there can be no mistake that both Sabine and HPIP intended the Acreage Dedications to constitute covenants running with the land.

### iv. *The Successor to the Burden Has Notice*

19.     The final *Inwood* factor requires that there be notice of the covenant in order for it to run with the land. Under Texas law, a purchaser is presumed to have notice of all properly recorded instruments in the chain of title and all instruments referred to in the recorded documents, whether or not the referenced documents are recorded. *See Westland Oil*, 637 S.W.2d at 908. In other words, a purchaser is required to ascertain the strength of the grantor's title and is charged with notice of everything revealed by any document, description, recital or reference or any other matter affecting his estate that appears on the face of any deed that forms and essential link in the chain of title. *Id.*

20.     The HPIP Gathering Agreement was properly recorded in Wilson County, Texas and Gonzales County, Texas, as evidenced by the Recordings attached hereto as <u>Exhibit 5</u>. Accordingly, with respect to the HPIP Gathering Agreement, the notice requirement of the *Inwood* test is clearly met.

21.     Although Sabine agreed in the HPIP Handling Agreement to file a recording memorandum evidencing the existence of such agreement, it does not appear that such recording memorandum was filed. However, despite Sabine's failure to file a recording memorandum in breach of its contractual obligations, the notice requirement is still satisfied in this case. First, the *Inwood* test requires that the *successor to the burden* have notice of the covenant. There is

13

no successor involved in this case, and this is not a scenario in which the beneficiary of a covenant is seeking to enforce it against a third party successor who had no notice. Rather, HPIP seeks to enforce the covenant against Sabine, the original party negotiating and agreeing to such covenant and the party who failed to file the recording in breach of its contractual obligations to HPIP. Thus, Sabine had actual notice of the covenant. Second, even if such actual notice by Sabine were insufficient as to third parties, any party examining the records with respect to the HPIP Dedicated Area would have constructive notice of "everything revealed by any document, description, recital or reference." Upon discovering the recorded HPIP Gathering Agreement, a party would have constructive notice of any related agreements between Sabine and HPIP that it could have discovered through further inquiry, including the HPIP Handling Agreement. Thus, both actual and constructive notice of the HPIP Handling Agreement exists and, therefore, the notice requirement is met with respect to both HPIP Agreements.

      **v.**   *Privity*

22. In addition to the *Inwood* factors discussed above, courts have held that some form of privity is also required for a covenant to run with the land. In *Energytec*, the court found that while vertical privity[4] is undoubtedly required for a covenant to run with the land, Texas state law is unsettled on whether horizontal privity is required as well. *See Energytec*, 739 F.3d at 222. Horizontal privity, which generally requires that the parties who made the covenant must have shared some level of ownership or control of the land, has been extensively criticized. *Id.* (stating that horizontal privity "is a much-criticized doctrine."). Indeed, the Restatement of Property has explicitly rejected horizontal privity as a requirement, explaining that:

---

[4] Vertical privity (i.e. privity between the parties who made the covenant and the parties to whom they are transferring the property) is not applicable here because HPIP seeks to enforce the covenant against Sabine, both of whom are the original parties to the HPIP Agreements.

14

> the horizontal-privity requirement serves no function beyond insuring that most covenants intended to run with the land will be created in conveyances. Formal creation of covenants is desirable because it tends to assure that they will be recorded. However, the horizontal-privity requirement is no longer needed for this purpose. In modern law, the Statute of Frauds and recording acts perform that function.

RESTAT. (THIRD) OF PROP.: SERVITUDES § 2.4 (2000). Despite this criticism, some Texas courts have followed the minority approach and required horizontal privity between the covenanting parties for a covenant to run with the land. Such courts have generally found that for horizontal privity to exist, the covenant "must be contained in a grant of the land or in a grant of some property interest in the land." *Clear Lake Apartments, Inc. v. Clear Lake Util. Co.*, 537 S.W.2d 48, 51 (Tex. Civ. App. 1976) (finding that a contract to pay for electric power was not a covenant running with the land because it was not intended to bind successors and there was no horizontal privity between the utility district and the land owner who made the contract.); *see also Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. Ct. App. 1997) (finding that a development agreement giving developer right of first refusal to be a general contractor on improvements and an assignment of "net cash flow interest" from the land to landowner did not run with land because there was no conveyance of a real property interest creating the rights). As the Fifth Circuit points out in *Energytec*, none of these decisions is from the Texas Supreme Court and, therefore, those decisions are not binding. *Energytec*, 739 F.3d at 222.

23.  Even if horizontal privity is required, such requirement is satisfied here because the covenants are contained in "a grant of some property interest in the land." *Clear Lake Apartments*, 537 S.W.2d at 51. Sabine, through the Acreage Dedications, explicitly dedicates the Leases and Wells to the performance of the HPIP Agreements. *See* HPIP Gathering Agreement,

§ 1.2; HPIP Handling Agreement, § 1.2.  These Acreage Dedications are themselves property interests in the land that are conveyed to HPIP in the HPIP Agreements.  Moreover, the HPIP Agreements provide for recordation, thus satisfying the rationale underlying the horizontal privity requirement.  *See Energytec*, 739 F.3d at 223; RESTAT. (THIRD) OF PROP.: SERVITUDES § 2.4 (2000).  Accordingly, although horizontal privity is strongly disfavored and should not be required for a covenant to run with the land, in the event that horizontal privity is required, such requirement is satisfied.

## II.    Other Objections

24.    *No Breach by HPIP*.  In the Motion, the Debtors assert that HPIP breached the HPIP Agreements prior to the Petition Date by failing to complete construction of the Facilities and that such alleged prepetition breach constitutes a termination of the HPIP Agreements prior to the Petition Date.  *See* Motion, ¶ 13.  HPIP disputes such allegations in all respects.  As detailed at length in the pending arbitration proceedings,[5] HPIP asserts, among other things, that it has fully performed under the HPIP Agreements and that it is Sabine that has materially breached its obligations.  HPIP hereby reserves any and all of its rights with respect to such allegations and all related issues.

25.    *No Valid Termination by the Debtors*.  The Debtors also assert in the Motion that, to the extent the HPIP Agreements were not terminated prior to the Petition Date, the Motion constitutes the Debtors' notice of termination pursuant to Section 18 of the General Terms and Conditions of the HPIP Gathering Agreement and Section 12 of the General Terms and Conditions of the HPIP Handling Agreement.  *See* Motion, fn 5.  HPIP disputes that the Motion constitutes valid notice of termination and hereby reserves any and all of its rights with respect to

---

[5] The arbitration proceeding is currently pending before the American Arbitration Association under the caption *HPIP Gonzales Holdings, LLC v. Forest Oil Corporation*, Case # 01-14-0001-9347.  HPIP hereby reserves any and all rights relating to jurisdiction with respect to all matters related to the arbitration.

16

such assertion. As noted above in paragraph 8, rejection of an executory contract merely constitutes a breach and not termination of the contract. Moreover, the termination provisions in Section 18 and Section 12 permit a party to terminate the respective agreement only if the other party is in material default. As noted above, HPIP disputes that it was, or is, in material default of either of the HPIP Agreements. Moreover, the termination provisions in Sections 18 and 12 expressly provide that they are unavailable to a party that is, itself, in material default. *See* HPIP Gathering Agreement, § 18 ("Notwithstanding the foregoing, the aforesaid termination right shall not be available to a Party if that Party is, itself, in material Default under this Agreement."); HPIP Handling Agreement, § 12 (same). As detailed in the various arbitration documents, HPIP asserts that Sabine is in material default of the HPIP Agreements and, therefore, it cannot properly terminate the HPIP Agreements through the Motion.

26. *Improper Damage Limitation*. Paragraph 8 of the Proposed Order states that "HPIP shall not be entitled to any claim arising from the HPIP Agreements other than an unsecured claim for rejection damages arising as of the Petition Date." Even if the HPIP Agreements did not contain covenants running with the land, there is still no basis for the order to limit the types of claims that HPIP can file, whether secured, administrative or otherwise. The Debtors are, of course, free to object to any proofs of claim or administrative expense filed by HPIP, but there is no legal basis to limit the type of damage claims in advance and the Debtors have not cited any legal authority or caselaw for this requested relief.

17

NY\7345776.5

## CONCLUSION

For the reasons discussed above, the Proposed Order reaches far beyond the proper scope of Section 365 of the Bankruptcy Code and attempts to impermissibly deny HPIP its property interests conveyed in the HPIP Agreements. HPIP respectfully requests that the Court deny entry of the Proposed Order and approve the Motion, if at all, only to the extent provided in the Modified Order attached hereto as Exhibit 1.

NY\7345776.5

**WHEREFORE**, for the reasons stated herein, HPIP respectfully requests that the Court sustain this Objection, approve the Motion only to the extent modified in the Modified Order, and grant such other and further relief as the Court deems just and proper.

Dated: October 8, 2015
      New York, New York

      LATHAM & WATKINS LLP
      By: /s/ Keith A. Simon
          Keith A. Simon
          Annemarie V. Reilly

      885 Third Avenue
      New York, New York 10022
      Tel: (212) 906-1200
      Fax: (212) 751-4864
      E-mail: Keith.Simon@lw.com
             Annemarie.Reilly@lw.com

*Counsel for HPIP Gonzales Holdings, LLC*

NY\7345776.5