EXHIBIT A

## MEMORANDUM OF GAS GATHERING AGREEMENT

This MEMORANDUM OF GAS GATHERING AGREEMENT (this "Memorandum") is made and entered effective as of the 23rd day of January, 2014 (the "Effective Date"), by and among Nordheim Eagle Ford Gathering, LLC, a Delaware limited liability company, hereinafter referred to as "Gatherer", and Sabine Oil & Gas LLC, a Delaware limited liability company, hereinafter referred to as "Shipper". Gatherer and Shipper are sometimes referred to singularly as a "Party" and collectively as the "Parties".

### RECITALS:

WHEREAS, Gatherer and Shipper entered into that certain Gas Gathering Agreement dated as of the Effective Date (the "Agreement"); and

WHEREAS, capitalized terms used herein, but not defined herein shall have the meanings given such terms in the Agreement; and

WHEREAS, the Parties desire to file this Memorandum of record in the real property records of DeWitt County, Texas, to give notice of the existence of the Agreement and certain provisions contained therein;

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Notice. Notice is hereby given of the existence of the Agreement and all of its terms, covenants and conditions to the same extent as if the Agreement was fully set forth herein.

2.    Term. The term of the Agreement shall become effective on the Effective Date and shall remain in full force and effect for a period of ten (10) years following the first In-Service Date for a Receipt Point and shall automatically continue Year to Year thereafter until terminated by either Party upon written notice to the other Party at least thirty (30) Days prior to any such renewal Year (the "Term").

3.    Dedication.

(a) Subject to the terms and conditions of the Agreement, Shipper has dedicated for gathering and dehydration, and has agreed to deliver or cause to be delivered to Gatherer at the Receipt Points, the following (the "Dedication," and the Gas that is the subject of the Dedication being herein referred to as the "Dedicated Gas"): (i) all Gas produced and saved on or after the Effective Date from wells now or hereafter located within the Dedicated Area or on lands pooled or unitized therewith, to the extent such Gas is attributable to the Interests within the Dedicated Area now owned, leased or hereafter acquired by Shipper and/or its Affiliates and their respective successors and assigns; and (ii) with respect to such wells in which Shipper and/or any of its Affiliates is the operator, Gas produced from such wells which is attributable to the Interests in such wells owned by other working interest owners and royalty owners and for which Shipper and/or its Affiliates has the obligation to deliver such Gas and only for the period that

Shipper and/or its Affiliates has such obligation; *provided, however,* (y) that the Dedication shall be subject to the exclusions set forth in clause (b) of this Section 3 and (z) with respect to Dedicated Gas that is subject to a Prior Dedication, Shipper shall, subject to the Dedication, be permitted to deliver such Dedicated Gas in accordance with, and to the extent, and only to the extent of, such Prior Dedication.

(b)  Under the Agreement Shipper reserves the following rights: (i) subject to the Dedication, to operate its Interests free from any control by Gatherer and in a manner as Shipper, in its sole discretion, may deem advisable; and (ii) to withhold from delivery to Gatherer any Dedicated Gas that is reasonably required for Shipper's oil and gas producing operations with respect to wells within the Dedicated Area or lands pooled or unitized therewith or is owned by other working interest owners and royalty owners and is taken "in-kind" by such working interest owners and royalty owners pursuant to the terms of any applicable oil and gas lease or joint operating agreement.

4.    Covenants Running With the Land.  The Agreement and Dedication shall (i) be a covenant running with the Interests now owned or hereafter acquired by Shipper and/or its Affiliates within the Dedicated Area and (ii) be binding on Shipper and enforceable by Gatherer and its successors and assigns against Shipper, its Affiliates and their respective successors and assigns. As such, as to any transfer thereof (which shall be subject to the provisions set forth in Article 13 of Exhibit "A" to the Agreement), the Agreement shall remain binding on the applicable transferee(s) and enforceable by the non-transferring Party or its permitted successors and assigns.

5.    Additional Definitions.  For purposes of this Memorandum, the definitions of the following terms are incorporated from the Agreement:

"Affiliate" means any Person that directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with another Person. The term "control" (including its derivatives and similar terms) means possessing the power to direct or cause the direction of the management and policies of a Person, whether through ownership, by contract, or otherwise. Any Person shall be deemed to be an Affiliate of any specified Person if such Person owns fifty percent (50%) or more of the voting securities of the specified Person, if the specified Person owns fifty percent (50%) or more of the voting securities of such Person, or if fifty percent (50%) or more of the voting securities of the specified Person and such Person are under common control.

"Day" means the twenty-four (24) hour period commencing at 9:00 AM, Central Clock Time on a calendar Day and ending at 9:00 AM, Central Clock Time on the following calendar Day.

"Dedicated Area" means that certain area of land more particularly described on Exhibit A attached hereto.

"Delivery Point" means the point described in Exhibit B attached hereto.

2

"Gas" means natural Gas produced from Gas wells, and natural Gas produced in association with oil or any mixture of hydrocarbons or of hydrocarbons and noncombustible Gases, in a gaseous state, consisting predominately of methane.

"In-Service Date" means the date upon which Gatherer delivers written notice to Shipper that the Gathering System (as defined in the Agreement) is ready to receive Dedicated Gas from a Planned Well at the applicable Receipt Point.

"Interests" means any right, title, or interest in lands and the right to produce oil and/or Gas therefrom, whether arising from fee ownership, working interest ownership, mineral ownership, leasehold ownership, or arising from any pooling, unitization or communitization of any of the foregoing rights.

"Planned Well" means each well that Shipper expects will be drilled in the Dedicated Area.

"Prior Dedication" means (i) as to the Interests owned by Shipper and/or its Affiliates within the Dedicated Area as of the Effective Date, all dedications or commitments for gathering or dehydration services upstream of the Delivery Point, burdening such Interests as of the Effective Date and (ii) as to any Interests acquired by Shipper and/or its Affiliates, or their respective successors and assigns, within the Dedicated Area after the date of the Agreement, all dedications or commitments for gathering or dehydration services upstream of the Delivery Point, burdening such Interests which are existing as of the time of any such acquisition.

"Receipt Points" means the points described in Exhibit C attached hereto.

"Year" means a period of 365 consecutive Days as defined above; provided however, that any such year which contains a date of February 29 shall consist of 366 consecutive Days.

6.    Incorporation of Terms.    The terms and conditions of the Agreement are incorporated herein and made a part hereof for all purposes by this reference. In the event of a conflict between the terms of the Agreement and the terms of this Memorandum, the terms of the Agreement shall govern and control.

7.    Counterparts of Agreement.    Executed counterparts of the Agreement are in the possession of the Parties and are available for review at the offices of each Party at the address set forth on the signature page of each Party.

8.    Exhibits.    All references in this Memorandum to exhibits and schedules are to the exhibits and schedules to this Memorandum unless otherwise specified. All exhibits attached hereto are hereby made a part hereof and incorporated herein by reference. References in such exhibits to instruments on file in the public records are notice of such instruments for all purposes. Unless provided otherwise, all recording references in such exhibits are to the appropriate records of the counties in which the Dedicated Area is located.

9.    Counterparts.    This Memorandum may be executed in one or more originals, but all of which together shall constitute one and the same instrument.

Executed and effective as of the Effective Date.

**GATHERER:**

Address:

NORDHEIM EAGLE FORD
GATHERING, LLC

700 Milam Street
Suite 800
Houston, TX 77002

By: _____
Name: _Michael Wortley_
Title: _Senior Vice President, CFO_

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

This instrument was acknowledged before me on the 24ᵗʰ day of January, 2014, by
_Michael Wortley_, as _Sr. V.P. + CFO_ of Nordheim Eagle Ford Gathering, LLC, a Delaware
limited liability company, on behalf of such limited liability company.



STELLA L MONREAL
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 21, 2017

_____
Notary Public – State of _Texas_

My Commission Expires:
_July 21, 2017_

Memorandum of Gas Gathering Agreement

Executed and effective as of the Effective Date.

**SHIPPER:**

Address:                                    SABINE OIL & GAS LLC
1415 Louisiana St., Suite 1600
Houston, Texas 77002                        By: _____ cmc
                                            Name: Shane M. Bayless
                                            Title: EVP & Chief Financial Officer


THE STATE OF TEXAS               §
                                 §
COUNTY OF HARRIS                 §

        This instrument was acknowledged before me on the 23 day of January, 2014, by
Shane Bayless, as EVP & CFO of Sabine Oil & Gas LLC, a Delaware limited liability
company, on behalf of such limited liability company.

                                    _____
                                    Notary Public – State of Texas

My Commission Expires:

_____

        LEAH RA'CHEL CLAY
    Notary Public, State of Texas
       My Commission Expires
          August 01, 2017


Memorandum of Gas Gathering Agreement

<u>**EXHIBIT A**</u>

**TO**

**MEMORANDUM OF GAS GATHERING AGREEMENT**

<u>**DEDICATED AREA**</u>

See Attached

Legend
- Sabine Units
- Survey/Abstract Lines
- County Lines

**TxMajorRoads**
— IH
— US
— SH
— FM
— RR

Exhibit "A" Dedicated Area
De Witt County, TX

sabine oil & gas

N

3,000  1,500  0  3,000
Feet

| Scale: 1:36,000 | Projection: NAD 1927 StatePlane\Texas South |
| Date: 1/17/2014 | Author: DHL |

## EXHIBIT B

### TO

## MEMORANDUM OF GAS GATHERING AGREEMENT

### DELIVERY POINT

The Delivery Point shall be located at or near Latitude 28/56/8.92 N, Longitude 97/37/18.85W, DeWitt County, Texas, or such other mutually agreed location.

B-1

# EXHIBIT C

## TO

## MEMORANDUM OF GAS GATHERING AGREEMENT

### RECEIPT POINTS

### DEWITT COUNTY, TEXAS

| No. | WELL/LEASE NAME | LOCATION |
|-----|-----------------|----------|
|  |  |  |
| 1. | Buchhorn 1H | R. Galetty Survey, A-195 |
| 2. | Buchhorn 2H | R. Galetty Survey, A-195 |
| 3. | Buchhorn 3H | R. Galetty Survey, A-195 |
| 4. | Buchhorn 4H | R. Galetty Survey, A-195 |
| 5. | Buchhorn 5H | R. Galetty Survey, A-195 |
| 6. | Buchhorn 6H | R. Galetty Survey, A-195 |
| 7. | Buchhorn 7H | R. Galetty Survey, A-195 |
| 8. | Buchhorn 8H | R. Galetty Survey, A-195 |
| 9. | Buchhorn 9H | R. Galetty Survey, A-195 |
| 10. | McClanahan 1H | R. Galetty Survey, A-195 |
| 11. | McClanahan 2H | R. Galetty Survey, A-195 |
| 12. | McClanahan 3H | R. Galetty Survey, A-195 |
| 13. | McClanahan 4H | R. Galetty Survey, A-195 |
| 14. | McClanahan 5H | R. Galetty Survey, A-195 |
| 15. | McClanahan 6H | R. Galetty Survey, A-195 |
| 16. | McClanahan 7H | R. Galetty Survey, A-195 |
| 17. | McClanahan 8H | R. Galetty Survey, A-195 |
| 18. | T-Bird 1H | I RR CO Survey, A-252 |
| 19. | T-Bird 2H | I RR CO Survey, A-252 |
| 20. | T-Bird 3H | I RR CO Survey, A-252 |
| 21. | T-Bird 4H | I RR CO Survey, A-252 |
| 22. | T-Bird 5H | I RR CO Survey, A-252 |
| 23. | T-Bird 6H | I RR CO Survey, A-616 |
| 24. | T-Bird 7H | I RR CO Survey, A-616 |
| 25. | T-Bird 8H | I RR CO Survey, A-616 |
| 26. | Kozielski 1H | A Burrow Survey, A-608 |
| 27. | Kozielski 2H | A Burrow Survey, A-608 |
| 28. | Kozielski 3H | A Burrow Survey, A-608 |
| 29. | Kozielski 4H | A Burrow Survey, A-608 |
| 30. | T-Bird Kozielski 1H | I RR CO Survey, A-597 |
| 31. | T-Bird Kozielski 2H | I RR CO Survey, A-597 |

| 32. | T-Bird Kozielski 3H | I RR CO Survey, A-597 |
| 33. | T-Bird Kozielski 4H | I RR CO Survey, A-251 |
| 34. | T-Bird Kozielski 5H | I RR CO Survey, A-251 |
| 35. | T-Bird Kozielski 6H | I RR CO Survey, A-251 |
| 36. | T-Bird Kozielski 7H | I RR CO Survey, A-251 |
| 37. | T-Bird Kozielski 8H | I RR CO Survey, A-251 |
| 38. | T-Bird Kozielski 9H | I RR CO Survey, A-251 |
| 39. | T-Bird Kozielski 10H | I RR CO Survey, A-251 |

101513

Filed for Record
This, the 30 day of Jan 20 14
at 1:15 o'clock P M

NATALIE CARSON, COUNTY CLERK OF
DeWitt County, Texas

Kaula Sievers
DEPUTY

Gray muzzy
Bracewell + Giuliani LLP
711 Louisiana St. Ste. 2300
Houston, Tx 77002

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the
date & time stamped hereon by me & was duly recorded
in the Volume & Page of the Official Public Records of
DeWitt Co. Texas.
Date    JAN 3 0 2014
NATALIE CARSON, COUNTY CLERK
BY
Vol. 497    Page 887-896

C-2

## MEMORANDUM OF CONDENSATE GATHERING AGREEMENT

This MEMORANDUM OF CONDENSATE GATHERING AGREEMENT (this "Memorandum") is made and entered effective as of the 23rd day of January, 2014 (the "Effective Date"), by and among Nordheim Eagle Ford Gathering, LLC, a Delaware limited liability company, hereinafter referred to as "Gatherer", and Sabine Oil & Gas LLC, a Delaware limited liability company, hereinafter referred to as "Shipper".    Gatherer and Shipper are sometimes referred to singularly as a "Party" and collectively as the "Parties".

### RECITALS:

WHEREAS, Gatherer and Shipper entered into that certain Condensate Gathering Agreement dated as of the Effective Date (the "Agreement"); and

WHEREAS, capitalized terms used herein, but not defined herein shall have the meanings given such terms in the Agreement; and

WHEREAS, the Parties desire to file this Memorandum of record in the real property records of DeWitt County, Texas, to give notice of the existence of the Agreement and certain provisions contained therein;

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Notice.  Notice is hereby given of the existence of the Agreement and all of its terms, covenants and conditions to the same extent as if the Agreement was fully set forth herein.

2.    Term.  The term of the Agreement shall become effective on the Effective Date and shall remain in full force and effect for a period of ten (10) years following the first In-Service Date for a Receipt Point and shall automatically continue Year to Year thereafter until terminated by either Party upon written notice to the other Party at least thirty (30) Days prior to any such renewal Year (the "Term").

3.    Dedication.

(a)  Subject to the terms and conditions of the Agreement, Shipper has dedicated for gathering, and has agreed to deliver or cause to be delivered to Gatherer at the Receipt Points, the following (the "Dedication," and the Condensate that is the subject of the Dedication being herein referred to as the "Dedicated Condensate"): (i) all Condensate produced and saved on or after the Effective Date from wells now or hereafter located within the Dedicated Area or on lands pooled or unitized therewith, to the extent such Condensate is attributable to the Interests within the Dedicated Area now owned, leased or hereafter acquired by Shipper and/or its Affiliates and their respective successors and assigns; and (ii) with respect to such wells in which Shipper and/or any of its Affiliates is the operator, Condensate produced from such wells which is attributable to the Interests in such wells owned by other working interest owners and royalty owners and for which Shipper and/or its Affiliates has the obligation to deliver such Condensate and only for

the period that Shipper and/or its Affiliates has such obligation; *provided, however*, (y) that the Dedication shall be subject to the exclusions set forth in clause (b) of this Section 3 and (z) with respect to Dedicated Condensate that is subject to a Prior Dedication, Shipper shall, subject to the Dedication, be permitted to deliver such Dedicated Condensate in accordance with, and to the extent, and only to the extent of, such Prior Dedication.

(b)  Under the Agreement Shipper reserves the following rights: (i) subject to the Dedication, to operate its Interests free from any control by Gatherer and in a manner as Shipper, in its sole discretion, may deem advisable; and (ii) to withhold from delivery to Gatherer any Dedicated Condensate that is reasonably required for Shipper's oil and gas producing operations with respect to wells within the Dedicated Area or lands pooled or unitized therewith or is owned by other working interest owners and royalty owners and is taken "in-kind" by such working interest owners and royalty owners pursuant to the terms of any applicable oil and gas lease or joint operating agreement.

4.     Covenants Running With the Land.  The Agreement and Dedication shall (i) be a covenant running with the Interests now owned or hereafter acquired by Shipper and/or its Affiliates within the Dedicated Area and (ii) be binding on Shipper and enforceable by Gatherer and its successors and assigns against Shipper, its Affiliates and their respective successors and assigns.  As such, as to any transfer thereof (which shall be subject to the provisions set forth in Article 13 of Exhibit "A" to the Agreement), the Agreement shall remain binding on the applicable transferee(s) and enforceable by the non-transferring Party or its permitted successors and assigns.

5.     Additional Definitions.  For purposes of this Memorandum, the definitions of the following terms are incorporated from the Agreement:

"Affiliate" means any Person that directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with another Person.  The term "control" (including its derivatives and similar terms) means possessing the power to direct or cause the direction of the management and policies of a Person, whether through ownership, by contract, or otherwise.  Any Person shall be deemed to be an Affiliate of any specified Person if such Person owns fifty percent (50%) or more of the voting securities of the specified Person, if the specified Person owns fifty percent (50%) or more of the voting securities of such Person, or if fifty percent (50%) or more of the voting securities of the specified Person and such Person are under common control.

"Condensate" means liquid hydrocarbons and other liquid hydrocarbon products produced at the well, separated from other fluids within the well stream by mechanical means that are contained within the well operator's equipment upstream of Gatherer's Receipt Point.

"Day" means the twenty-four (24) hour period commencing at 9:00 AM, Central Clock Time on a calendar Day and ending at 9:00 AM, Central Clock Time on the following calendar Day.

"Dedicated Area" means that certain area of land more particularly described on Exhibit A attached hereto.

"Delivery Point" means the point described in Exhibit B attached hereto.

"In-Service Date" means the date upon which Gatherer delivers written notice to Shipper that the Gathering System (as defined in the Agreement) is ready to receive Dedicated Condensate from a Planned Well at the applicable Receipt Point.

"Interests" means any right, title, or interest in lands and the right to produce oil and/or gas therefrom, whether arising from fee ownership, working interest ownership, mineral ownership, leasehold ownership, or arising from any pooling, unitization or communitization of any of the foregoing rights.

"Planned Well" means each well that Shipper expects will be drilled in the Dedicated Area.

"Prior Dedication" means (i) as to the Interests owned by Shipper and/or its Affiliates within the Dedicated Area as of the Effective Date, all dedications or commitments for gathering services upstream of the Delivery Point, burdening such Interests as of the Effective Date and (ii) as to any Interests acquired by Shipper and/or its Affiliates, or their respective successors and assigns, within the Dedicated Area after the date of the Agreement, all dedications or commitments for gathering services upstream of the Delivery Point, burdening such Interests which are existing as of the time of any such acquisition.

"Receipt Points" means the points described in Exhibit C attached hereto.

"Year" means a period of 365 consecutive Days as defined above; provided however, that any such year which contains a date of February 29 shall consist of 366 consecutive Days.

6.    Incorporation of Terms.    The terms and conditions of the Agreement are incorporated herein and made a part hereof for all purposes by this reference. In the event of a conflict between the terms of the Agreement and the terms of this Memorandum, the terms of the Agreement shall govern and control.

7.    Counterparts of Agreement.    Executed counterparts of the Agreement are in the possession of the Parties and are available for review at the offices of each Party at the address set forth on the signature page of each Party.

8.    Exhibits.    All references in this Memorandum to exhibits and schedules are to the exhibits and schedules to this Memorandum unless otherwise specified. All exhibits attached hereto are hereby made a part hereof and incorporated herein by reference. References in such exhibits to instruments on file in the public records are notice of such instruments for all purposes. Unless provided otherwise, all recording references in such exhibits are to the appropriate records of the counties in which the Dedicated Area is located.

9.    Counterparts.    This Memorandum may be executed in one or more originals, but all of which together shall constitute one and the same instrument.

3

Executed and effective as of the Effective Date.

**GATHERER:**

Address:                                          NORDHEIM EAGLE FORD
                                                  GATHERING, LLC
700 Milam Street
Suite 800                                         By: _____
Houston, TX 77002                  ﬡ             Name: _Michael Worthey_____
                                                  Title: _Senior Vice President, CFO_

THE STATE OF TEXAS                    §
                                      §
COUNTY OF HARRIS                      §

    This instrument was acknowledged before me on the 24ᵗʰ day of January, 2014, by
Michael Worthey, Senior Vice President, CFO of Nordheim Eagle Ford Gathering, LLC, a Delaware
limited liability company, on behalf of such limited liability company.

_____
Notary Public – State of _Texas_____

My Commission Expires:
_July 21, 2017___

STELLA L MONREAL
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JULY 21, 2017

Executed and effective as of the Effective Date.

**SHIPPER:**

Address:                                SABINE OIL & GAS LLC
1415 Louisiana St., Suite 1600
Houston, Texas 77002                    By: _____ cw
                                        Name: Shane M. Bayles
                                        Title: EVP & Chief Financial Officer


THE STATE OF TEXAS              §
                                §
                                §
COUNTY OF HARRIS                §

    This instrument was acknowledged before me on the 23 day of January, 2014, by
Shane Bayless , as EVP & CFO  of Sabine Oil & Gas LLC, a Delaware limited liability
company, on behalf of such limited liability company.



                        Notary Public — State of Texas

My Commission Expires:

_____

LEAH RA'CHEL CLAY
Notary Public, State of Texas
My Commission Expires
August 01, 2017


Memorandum of Condensate Gathering Agreement

<u>**EXHIBIT A**</u>

**TO**

**MEMORANDUM OF CONDENSATE GATHERING AGREEMENT**

<u>**DEDICATED AREA**</u>

See Attached

## EXHIBIT B

## TO

## MEMORANDUM OF CONDENSATE GATHERING AGREEMENT

## DELIVERY POINT

The Delivery Point shall be located at or near Latitude 28/56/8.92 N, Longitude 97/37/18.85W, DeWitt County, Texas, or such other mutually agreed location.

# EXHIBIT C

## TO

## MEMORANDUM OF CONDENSATE GATHERING AGREEMENT

### RECEIPT POINTS

### DEWITT COUNTY, TEXAS

| No. | WELL/LEASE NAME | LOCATION |
|---|---|---|
| | | |
| 1. | Buchhorn 1H | R. Galetty Survey, A-195 |
| 2. | Buchhorn 2H | R. Galetty Survey, A-195 |
| 3. | Buchhorn 3H | R. Galetty Survey, A-195 |
| 4. | Buchhorn 4H | R. Galetty Survey, A-195 |
| 5. | Buchhorn 5H | R. Galetty Survey, A-195 |
| 6. | Buchhorn 6H | R. Galetty Survey, A-195 |
| 7. | Buchhorn 7H | R. Galetty Survey, A-195 |
| 8. | Buchhorn 8H | R. Galetty Survey, A-195 |
| 9. | Buchhorn 9H | R. Galetty Survey, A-195 |
| 10. | McClanahan 1H | R. Galetty Survey, A-195 |
| 11. | McClanahan 2H | R. Galetty Survey, A-195 |
| 12. | McClanahan 3H | R. Galetty Survey, A-195 |
| 13. | McClanahan 4H | R. Galetty Survey, A-195 |
| 14. | McClanahan 5H | R. Galetty Survey, A-195 |
| 15. | McClanahan 6H | R. Galetty Survey, A-195 |
| 16. | McClanahan 7H | R. Galetty Survey, A-195 |
| 17. | McClanahan 8H | R. Galetty Survey, A-195 |
| 18. | T-Bird 1H | I RR CO Survey, A-252 |
| 19. | T-Bird 2H | I RR CO Survey, A-252 |
| 20. | T-Bird 3H | I RR CO Survey, A-252 |
| 21. | T-Bird 4H | I RR CO Survey, A-252 |
| 22. | T-Bird 5H | I RR CO Survey, A-252 |
| 23. | T-Bird 6H | I RR CO Survey, A-616 |
| 24. | T-Bird 7H | I RR CO Survey, A-616 |
| 25. | T-Bird 8H | I RR CO Survey, A-616 |
| 26. | Kozielski 1H | A Burrow Survey, A-608 |
| 27. | Kozielski 2H | A Burrow Survey, A-608 |
| 28. | Kozielski 3H | A Burrow Survey, A-608 |
| 29. | Kozielski 4H | A Burrow Survey, A-608 |
| 30. | T-Bird Kozielski 1H | I RR CO Survey, A-597 |
| 31. | T-Bird Kozielski 2H | I RR CO Survey, A-597 |

| 32. | T-Bird Kozielski 3H | I RR CO Survey, A-597 |
|-----|---------------------|-----------------------|
| 33. | T-Bird Kozielski 4H | I RR CO Survey, A-251 |
| 34. | T-Bird Kozielski 5H | I RR CO Survey, A-251 |
| 35. | T-Bird Kozielski 6H | I RR CO Survey, A-251 |
| 36. | T-Bird Kozielski 7H | I RR CO Survey, A-251 |
| 37. | T-Bird Kozielski 8H | I RR CO Survey, A-251 |
| 38. | T-Bird Kozielski 9H | I RR CO Survey, A-251 |
| 39. | T-Bird Kozielski 10H | I RR CO Survey, A-251 |

101514

Filed for Record
This, the _29_ day of _Jan_ 20_14_
at _1:15_ o'clock _p_ M

NATALIE CARSON, COUNTY CLERK OF
DeWitt County, Texas
_Kayle Sievers_
DEPUTY
Gray Muzzy
Bracewell & Giuliani Lp
711 Louisiana St. Ste. 2300
Houston, TX 77002

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the
date & time stamped hereon by me & was duly recorded
in the Volume & Page of the Official Public Records of
DeWitt Co. Texas.    JAN 3 0 2014
Date_____
NATALIE CARSON, COUNTY CLERK
BY_____
Vol. _422_ Page _897-906_

C-2