**BROWN RUDNICK LLP**
Robert J. Stark
Daniel J. Saval
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

Jeffrey L. Jonas
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel for the Ad Hoc Committee of Forest
Noteholders and Forest Notes Indenture Trustees*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SABINE OIL & GAS CORPORATION, *et al.*, | Case No. 15-11835 (SCC) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE AD HOC CONSORTIUM
OF FOREST NOTEHOLDERS AND FOREST NOTES INDENTURE
TRUSTEES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO ADVANCE POSTPETITION DEFENSE
COSTS OF CERTAIN CURRENT AND FORMER DIRECTORS AND OFFICERS**

The Ad Hoc Committee of Forest Noteholders,[1] Wilmington Savings Fund Society, FSB, as indenture trustee of the Forest Oil 7.25% Unsecured Notes due 2019, and Delaware Trust Company, as indenture trustee for the Forest Oil 7.5% Unsecured Notes due 2020 (collectively,

---

[1] As set forth in the *Third Verified Statement of Brown Rudnick LLP Pursuant to Bankruptcy Rule 2019(b)* [Docket No. 432], the Ad Hoc Committee of Forest Noteholders comprises holders of $192,062,000 (or 33%) of the Forest Oil 7.25% Unsecured Notes due 2019, and $39,874,000 (or 18%) of the Forest Oil 7.5% Unsecured Notes due 2020.

the "Forest Noteholder Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Advance Postpetition Defense Costs of Certain Current and Former Directors and Officers* [Docket No. 437] (the "Motion").[2] In support of this Objection, the Forest Noteholder Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.  By the Motion, the Debtors seek this Court's approval to write current and former directors and officers ("Directors and Officers") a blank check for attorneys' fees and costs ("Legal Fees"), incurred both in connection with the present Rule 2004 investigation (the "Investigation") *and* any claims brought following the Investigation. While the Forest Noteholder Parties acknowledge the importance of moving the Investigation forward in an efficient and expeditious manner, the Forest Noteholder Parties submit that the relief sought by the Motion is neither necessary nor appropriately tailored to accomplish that objective.

2.  First, the Directors and Officers' claims for indemnification and advancement of Legal Fees are prepetition unsecured claims, and not postpetition claims as suggested by the Debtors. The advancement of Legal Fees would thus provide for the full payment of unliquidated and disputed unsecured claims of the Directors and Officers, who approved and orchestrated the value-destructive merger of Forest Oil and Old Sabine (the "Combination") and may bear substantial liability for their roles in that regard, ahead of the claims of the Forest Oil Noteholders and other unsecured creditors harmed by the Combination. The Debtors have failed to establish that the payment of those unsecured claims -- in an unknown amount -- is permissible or appropriate under the "doctrine of necessity", which would be the only legal basis

---

[2] Any capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

2

for doing so. Raising the theoretical specter that the Directors and Officers may refuse to cooperate in the Investigation without advancement of Legal Fees -- in contravention of their legal obligations and fiduciary duties -- is simply no basis to deviate from the absolute priority rule.

3. *Second*, the advancement of Legal Fees prior to securing insurance coverage may very well prejudice the estates, even if the Insurance Carriers subsequently agree to provide coverage. As explained herein, if the applicable Director and Officer insurance policies ("D&O Policies") include customary deductible provisions for so-called "B Side" coverage, then the Debtors may be unable to obtain reimbursement of the Legal Fees advanced up to the deductible amount, which amount may be substantial.

4. *Third*, the Debtors propose no limitation on either the amount of or time period for advancement of Legal Fees. What's more, the proposed order attached to the Motion (the "Proposed Order") would authorize the Debtors to advance Legal Fees to cover not only the Investigation, but also "*any action(s) that may arise from, or that are related to, the . . . Investigation*." Proposed Order at ¶ 3. Even if this Court determines to allow the advancement of Legal Fees, the Court should limit the advancement in time and amount to prevent the estates from being saddled with an unchecked and enormous legal bill to the detriment of unsecured creditors.

5. For the foregoing reasons, as more fully set forth herein, the Motion should be denied.

# ARGUMENT

### A. The Debtors Have Not Shown That Payment Of The Legal Fees Falls Within the Doctrine of Necessity.

6. The Directors and Officers' claims for advancement and indemnification under the applicable corporate governance documents are prepetition unsecured claims, rather than postpetition claims as suggested by the Debtors. See, e.g., Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 129 (2d Cir. 2000) (holding that a claim will be deemed a prepetition claim if the right to payment arose prepetition, and noting that "[u]nder contract law, a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed."); MetCo Mining and Minerals, Inc. v. PBS Coals, Inc., 171 B.R. 210, 217 (Bankr. W.D. Pa. 1994) ("When parties agree in advance that one party will indemnify the other in the event of a certain occurrence, there exists a right to payment, albeit contingent, *upon the signing of the agreement*." (quoting Avellino & Bienes v. M. Frenville Co., Inc., 744 F.2d 332, 336 (3d Cir. 1984)). As the Debtors acknowledge that their obligation to advance Legal Fees to the Directors and Officers arises under the Bylaws and the Legacy Sabine Operating Agreement (Motion at ¶ 27), any claim by a Director or Officer for advancement and indemnification is a prepetition unsecured claim.[3] Granting the Motion would therefore allow payment in full of one type of prepetition unsecured claim prior to the payment of other unsecured creditors.

7. As such, the only basis on which the Debtors could make the advancement is the "doctrine of necessity", which recognizes that paying certain prepetition claims may be necessary to realize a successful reorganization. See, e.g., In re Ionosphere Clubs, Inc., 98 B.R.

---

[3] For the avoidance of doubt, the Forest Noteholder Parties reserve the right to argue that any claims by the Directors and Officers for advancement or indemnification are subject to disallowance and/or subordination on any applicable basis.

4

174, 176 (Bankr. S.D.N.Y. 1989) (bankruptcy courts may authorize immediate payment of prepetition claims when "essential to the continued operation of the debtor"); In re Just For Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (courts may grant a motion to pay prepetition claims where payment of such claims "is essential to the survival of the debtor during the chapter 11 reorganization").

8.  Here, while the Debtors appropriately emphasize the importance of the Investigation to the reorganization, they have failed to demonstrate that advancement of Legal Fees falls within the doctrine of necessity.[4]  The Debtors say that failure to pay the Legal Fees "could impair the Independent Directors' Committee's investigation and the Debtors' reorganization efforts," because the Directors and Officers may be required to defend themselves with their own resources, and because the ongoing Investigation amounts to a "distraction" to the Directors and Officers.  Motion at ¶ 25.  Those reasons are plainly insufficient to justify the payment of these prepetition unsecured claims.

9.  First, the Debtors have not explained the nature of the Legal Fees that are actually being incurred by the Directors and Officers at this stage of the Investigation.  At the present time, the Investigation is focused on collecting and analyzing relevant documents. But, responsive documents of the Directors and Officers are presumably, at least to a significant extent, stored on the Debtors' servers or otherwise within their possession, custody or control.  In that regard, the Debtors have retained counsel -- Kirkland & Ellis LLP ("Kirkland") -- whose fees are paid from the estate.  As such, Kirkland is the appropriate counsel to search for relevant

---

[4] Nor can the Debtors rely on In re RNI Wind Down Corp., 369 B.R. 174 (Bankr. D. Del. 2007) to argue that advancement and indemnification claims should be paid in full ahead of other unsecured claims.  In that case, the Debtors' estates were solvent, and the request for advancement was made following the confirmation of a plan.  Id. at 181.  Here, the Legal Fees would come out of, and deplete, the pool of assets available to unsecured creditors.

5

documents of the Directors and Officers on the Debtors' servers and computer systems and make any privilege determination. Thus, it is not clear at all what Legal Fees are necessary at this juncture in order to move the Investigation forward vis-à-vis the Directors and Officers.

10. Second, the current Directors and Officers have fiduciary duties to assist with the reorganization and other aspects of the Chapter 11 cases, including the Investigation, and cannot abandon those duties merely because their individual Legal Fees are not being advanced or because of any purported "distraction" in having to pay for those costs prior to insurance coverage being obtained. See Pepper v. Litton, 308 U.S. 311, 311 (1930) ("He who is in such a fiduciary position cannot serve himself first and his cestuis second."). To the extent that Legal Fees are not ultimately reimbursed by the Insurance Carriers, the Directors and Officers can file proofs of claim against the estates for reimbursement and indemnification, just as any other unsecured creditor must do to pursue a recovery on its claim. And, in all events, the Debtors' desire to prevent "distractions to the Debtors' most critical decision makers" by advancing Legal Fees (Motion at ¶ 25) does not even apply to the former Directors and Officers, nor the current Directors that are not involved in day-to-day operations and restructuring activities.

**B.    The Estates May Be Substantially Prejudiced By Advancing Legal Fees, Even If Coverage Is Subsequently Obtained.**

11. It is customary for D&O policies to provide for so-called "A Side" and "B Side" coverage. A Side coverage extends coverage to corporate directors and officers when the company does not or cannot indemnify its directors and officers for their losses, including the cost of defense. B Side coverage typically allows the company to seek reimbursement from the insurance carrier after the company has first advanced defense costs to the directors and officers. Critically, while there is typically no deductible for A Side coverage, deductibles for B Side coverage can be substantial. Counsel for the Forest Noteholder Parties has requested the D&O

6

Policies from Debtors' counsel in order to examine this issue. As of the time of filing of this Objection, the D&O Policies have not been provided.

12. If, as we expect is the case, the D&O Policies contain the customary B Side coverage provisions, any claim against the D&O Policies for such B Side coverage for reimbursement for defense costs advanced by the Debtors would be limited by the deductible, with the deductible amount having to be covered by the estates. Thus, if the Debtors advance Legal Fees, they will likely be unable to obtain reimbursement of the deductible amount -- which could be substantial. On the other hand, if the Directors and Officers obtain A Side coverage with no deductible, that would allow the estates to avoid paying those fees. As such, the estates should not be required to shoulder this expense where the Directors and Officers have not yet exhausted efforts to obtain insurance coverage.

### C. At A Minimum, The Court Should Limit The Advancement Of Legal Fees.

13. Alternatively, in the event that the Court authorizes the Debtors to advance Legal Fees to the Directors and Officers, the Court should place limitations on the amount and time period for the advancement of those costs. The Motion does not request any such limitation, let alone any process for reporting and review of the Legal Fees advanced.[5]

14. Moreover, the Debtors have been less than candid as to the particular Legal Fees they are seeking approval to advance. While the Debtors represent in the Motion that the requested relief is narrowly tailored to "the advancement of reasonable legal fees related solely to the postpetition obligations arising as a result of the Stipulated Discovery Protocol and discovery related to the Rule 2004 Motion" (Motion at ¶ 22), the Proposed Order goes well

---

[5] The only limitations the Debtors have put in place is that the Forest Oil directors and the Old Sabine directors must use common counsel, and that the Directors and Officers must agree to repay the Legal Fees in the event they are determined to have engaged in wrongdoing. Motion at ¶ 16. As acknowledged by the Debtors, those limitations are already provided for in the Bylaws.

7

beyond that. The Proposed Order authorizes the advancement of Legal Fees not only for the Investigation, but also for "*any action(s) that may arise from, or that are related to, the . . . Investigation.*" Proposed Order at ¶ 3. As the Debtors are aware, such actions may include lawsuits for breach of fiduciary duty relating to the Combination or other related claims, including direct claims held by the Forest Oil Noteholders. Under the Proposed Order, the entire cost of defending those lawsuits will be borne by the estate.

15. This Court should not permit the Debtors to write a blank check to the Directors and Officers to cover virtually any and all of their legal expenses in connection with potential estate claims and causes of action against them. Further, since the Proposed Order does not require the Debtors to give notice of the advancements, parties in interest will remain in the dark as to the actual amounts being advanced. Imposing a limit or cap on the advancement of fees would prevent the estate from being saddled by an enormous legal bill (not subject to review by the Court and parties in interest) for the benefit of the Directors and Officers (as well as equity sponsor First Reserve, which has appointed a majority of the Board) that would be paid ahead of other unsecured claims.

16. Therefore, in the event the Court authorizes the advancement of Legal Fees, it should impose a limit on the amount of Legal Fees that can be advanced, and the time period for such advancement. In that case, the Debtors should also be required to provide notice of the amounts they are advancing to the Directors and Officers, and should not be permitted to advance amounts beyond the limit without the consent of the principal parties in interest, including the Forest Noteholder Parties.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Forest Noteholder Parties respectfully request that the Court sustain this Objection, deny the Motion, and grant such other and further relief that the Court deems appropriate.

Dated:   October 26, 2015　　　　　　　　　　Respectfully submitted,
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　**BROWN RUDNICK LLP**


　　　　　　　　　　　　　　　　　　　　　　*/s/ Robert J. Stark*
　　　　　　　　　　　　　　　　　　　　　　Robert J. Stark
　　　　　　　　　　　　　　　　　　　　　　Daniel J. Saval
　　　　　　　　　　　　　　　　　　　　　　Seven Times Square
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　　　　　Telephone:  (212) 209-4800
　　　　　　　　　　　　　　　　　　　　　　Facsimile:  (212) 209-4801

　　　　　　　　　　　　　　　　　　　　　　Jeffrey L. Jonas
　　　　　　　　　　　　　　　　　　　　　　One Financial Center
　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02111
　　　　　　　　　　　　　　　　　　　　　　Telephone: (617) 856-8200
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (617) 856-8201

　　　　　　　　　　　　　　　　　　　　　　*Counsel to the Ad Hoc Committee*
　　　　　　　　　　　　　　　　　　　　　　*of Forest Noteholders and Forest Notes*
　　　　　　　　　　　　　　　　　　　　　　*Indenture Trustees*