| | |
|---|---|
| James H.M. Sprayregen, P.C. | Gabor Balassa, P.C. (admitted *pro hac vice*) |
| Paul M. Basta, P.C. | Ryan Blaine Bennett (admitted *pro hac vice*) |
| Jonathan S. Henes, P.C. | A. Katrine Jakola (admitted *pro hac vice*) |
| Christopher J. Marcus, P.C. | Britt Cramer (admitted *pro hac vice*) |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:       (212) 446-4900

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:       (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | ) | Case No. 15-11835 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' RESPONSE IN OPPOSITION TO MOTION OF OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR A STAY PENDING APPEAL**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully submit this response in opposition to the *Motion of Official Committee of Unsecured Creditors for a Stay Pending Appeal of (A) Any Action to Release Denied* STN *Claims and (B) Expiration of the Challenge Deadline to Pursue the Denied* STN *Claims* (the "Motion"). [Docket No. 939]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440). The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is: 1415 Louisiana, Suite 1600, Houston, Texas 77002.

**PRELIMINARY STATEMENT**

1.      Although the Official Committee of Unsecured Creditors (the "Committee") fashions its Motion as a request for a "stay pending appeal," that is misleading. Nowhere in its Motion does the Committee seek a stay of the underlying *STN* judgment itself. Nor does the Committee even cite in its Motion to Bankruptcy Rule 8007(a)(1)(A), which governs motions for "a stay of judgment, order, or decree of the bankruptcy court pending appeal." In reality, the Committee requests a different remedy entirely—namely that, pending resolution of the *STN* appeal, this Court ***suspend separate proceedings*** relating to the Debtors' proposed plan of reorganization pursuant to Bankruptcy Rule 8007(a)(1)(D). (*See* Mot. ¶ 16 (citing Rule 8007(a)(1)(D)) The Committee's Motion thus seeks relief different than and far beyond the mere preservation of the status quo ordinarily implicated in a stay pending appeal motion.

2.      While the Committee insists at the outset of its Motion that it "does not at this time seek to stay the entire confirmation proceeding or the effectiveness of any confirmation order," (Mot. ¶ 4), it goes on to argue at length that this Court has been divested of jurisdiction to enter any order approving a plan that proposes either a release or settlement of the estate claims for which derivative standing has been denied, (*id.* ¶¶ 10-14, n.7). The Committee's attempt to manufacture a jurisdictional issue to divest this Court of authority to proceed to confirmation is telling; properly understood, the Committee seeks to halt the parties from making progress in resolving these Chapter 11 cases while it renews its arguments for derivative standing before the district court and, potentially, the Second Circuit Court of Appeals.

3.      In other words, the Committee seeks not to ***stay*** enforcement of the Court's *STN* Order (which does not once mention the word "releases" over the course of its 108 pages) but instead to ***enjoin*** the Debtors from proceeding with their proposed plan and to ***preclude*** the

2

Court from considering that plan. Simply put, the Committee's game is to hold confirmation hostage in the interim in order to secure outsized leverage in plan negotiations. That is an inappropriate use of the *STN* process and of the Committee's appeal from the Court's ruling.

4.  Significantly, the Committee fails to satisfy **any** of the factors required to secure Rule 8007 relief. *See Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993). **First**, the Committee does not establish that it would suffer any irreparable harm unless the confirmation hearing is promptly suspended. The **only** harm that the Committee identifies in its Motion is the prospect that its *STN* appeal might be rendered equitably moot if a plan of reorganization containing releases is confirmed and becomes effective down the road. (Mot. ¶ 17) As the plan confirmation hearing does not begin for at least two months, this purported harm is neither actual nor imminent. If, in the future, this Court confirms a plan with releases over the Committee's objection, the Committee may then move for a stay of that confirmation order while seeking to appeal it. But there is no basis for the Committee to preclude this Court from moving forward with the confirmation process based on a harm the Committee asserts it might incur multiple steps down the road as the result of a hypothetical future order confirming a plan of reorganization.

5.  **Second**, suspending proceedings pending resolution of the *STN* appeal would inflict immediate and significant harm on the Debtors, their employees, and their other stakeholders. The Debtors seek to move forward with a plan expeditiously to emerge from Chapter 11 as a reorganized, operating business. Suspending the plan confirmation process not only would prolong the period in which the Debtors must incur the expenses associated with the administration of these bankruptcy proceedings, but also doing so would put at risk the proposed plan of reorganization.

6. ***Third***, the Committee has failed to show that it is likely to succeed on the merits of its *STN* appeal. The Committee has failed to meet its burden, which cannot be satisfied by baldly stating that "substantial cases and statutes … provide support for the Committee's positions," as the Committee does here. (Mot. ¶ 21) This authority has already been rejected by the Court, and the Committee has not cited anything new or different.

7. ***Finally***, a stay would be contrary to the public interest, which "favors the expedient administration of the bankruptcy proceedings." *ABB Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 349 (S.D.N.Y. 2007). Where, as here, the "high standards" of Rule 8007 relief have not been demonstrated, "a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014) (quoting *In re Taub,* 2010 WL 3911360, at *6 (Bankr. E.D.N.Y. Oct. 1, 2010)).[2]

8. In sum, the four considerations relevant to evaluating requests for relief under Rule 8007 uniformly militate against a stay pending appeal. Thus, the Committee's Motion should be denied. If, however, the Court were inclined to grant the Committee's Motion, the Committee should be required to post a sizable supersedeas bond to fully protect the non-moving parties from the substantial harms they would result if the confirmation process were suspended or delayed.

---

[2] The Committee also requests a stay of the "expiration of the Challenge Period Deadline as contemplated by the Cash Collateral Order." (Mot. at 2) But the Committee makes no effort in its briefing to establish the need for a ruling at this time or any of the other requirements for a stay. Thus this request, too, should be rejected.

**ARGUMENT**

**I.   THE COMMITTEE'S "JURISDICTIONAL" ARGUMENT IS UNFOUNDED.**

9.      The Committee repeatedly insists that "the jurisdictional issue that this reorganization plan provision raises is not ripe for decision at this time," (*id.* ¶ 4), characterizing the question of whether the Court has the power to enter an order permitting the releases contained in the draft plan of reorganization "a confirmation issue," (4/7/16 Tr. at 90:17-24). Nevertheless, the Committee devotes nearly half of its Motion to arguing that this Court should grant its request for a stay pending appeal because doing so would "avoid a jurisdictional conflict" that purportedly "arises from the manner in which the Debtors asked this Court to dispose of the *STN* Motions." (Mot. ¶¶ 3-6, 10-15; *cf.* Mot. ¶¶ 18-19)  Contrary to the Committee's assertions, the Court's *STN* Order did not somehow strip this Court of jurisdiction over a separate core proceeding relating to confirmation of the Debtor's proposed plan.  For numerous reasons, the Committee's divestiture argument is unfounded and should be rejected.

10.     As an initial matter, the Committee premises its arguments on a mischaracterization of the Court's *STN* Order, implying that the ruling decided whether releases are appropriate under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Specifically, the Committee contends that the Court's *STN* Order held that "the Denied Claims had zero merit and zero value," (*id.* ¶ 3), and insists that "ruling on a proposed release will require this Court to decide an identical issue as the district court will during its appellate review" of the *STN* Order, (*id.* ¶ 14).  But this Court did not rule on the propriety of any releases.  To the contrary, throughout the *STN* trial, the Court expressly stated that the issue of plan releases was not before it and declined to hear evidence on that issue. (*See, e.g.*, 3/3/16 Tr. at 108)  Thus, the *STN* Order contains no mention, much less analysis or discussion, of releases.  Nor does it mention at all

Rule 9019 or the distinct legal standard applicable to that Rule.[3] The Committee's attempt to mischaracterize the Court's holding specific to *STN* standing issues is a transparent effort to create a jurisdictional conflict where none exists.

11. Further, even if the Court's findings on the *STN* ruling had some bearing on the Court's evaluation of releases under Rule 9019, the Committee's divestiture argument would still fail. The Committee misstates the divestiture rule, and the case law does not support—but undermines—the Committee's argument.

12. As underscored by the very cases cited in the Committee's Motion, it is "well established that 'while an appeal of an order is pending, the [bankruptcy] court retains jurisdiction to implement or enforce the order.'" *See, e.g.*, *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 105 (S.D.N.Y. 2001) (citations omitted) (cited in Mot. ¶¶ 4, 11, 13); *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (Bankr. S.D.N.Y. 1986) (cited in Mot. ¶ 10). And, "notwithstanding the pendency of an appeal, bankruptcy courts are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal." *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001).

13. As such, the divestiture rule is ***only*** implicated where "the bankruptcy court either tampered in some manner with the appealed order or sought to make a decision on a contested

---

[3] In the Second Circuit, courts balance seven interrelated factors in determining whether a settlement is fair and equitable under Rule 9019, including: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do 'not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." *E.g., In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012).

6

issue identical to one on appeal." *In re Prudential Lines, Inc.*, 170 B.R. at 244. Stated differently, courts consistently recognize "a distinction between actions that 'enforce' or 'implement' an order, which are permissible, and acts that 'expand' or 'alter' that order, which are prohibited." *In re Winimo Realty Corp.*, 270 B.R. at 105-06; *In re Prudential Lines, Inc.*, 170 B.R. at 243; *accord In re Wash. Mut., Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011), *vacated in unrelated part*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).

14. "The application of this distinction is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." *In re Prudential Lines, Inc.*, 170 B.R. at 244. As numerous courts have emphasized, tailoring the divestiture rule in the bankruptcy context is essential because "[p]ermitting a court to enforce its orders, while prohibiting it from expanding upon them, allows the least disruption of the court's administration of a bankruptcy plan." *Id.*

15. *In re Washington Mutual* illustrates the point. 461 B.R. at 200. There, the bankruptcy court had issued an order determining that the debtors owned certain Trust Preferred Securities ("TPS"), and holding that certain other purported holders of the TPS no longer had any interest in the securities. *Id.* at 212-13. The putative TPS holders appealed that order. While the appeal was pending, the debtors filed in the bankruptcy court a proposed reorganization plan that contemplated that the debtors would transfer and sell the TPS. Because the plan treated the debtors as owning the TPS, the putative TPS holders asserted that the bankruptcy court lacked jurisdiction to proceed with plan confirmation while their appeal of the TPS ownership issue was pending. *Id.* at 220. In rejecting this argument, the bankruptcy court

7

distinguished between modifying the order that was on appeal, and enforcing its order as part of the reorganization plan:

> [I]n considering confirmation of the Modified Plan, the Court is not being asked to modify the order that is on appeal (which held that the Debtors own the TPS). Rather, the Court is being asked to enforce its order by approving the Modified Plan that provides for the transfer or sale of the TPS by the Debtors to JPMC as part of the GSA. Therefore, the Court concludes that it has jurisdiction to consider confirmation of the Modified Plan, including the transfer of the TPS, notwithstanding the pendency of an appeal from its prior order determining that the Debtors own them.

461 B.R. at 220 (internal citations omitted). The court explained that the appellants' interpretation of the divestiture rule as precluding the court from proceeding to plan confirmation while a related issue was on appeal was "too broad" and would have "the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner." *Id.* (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 758 (B.A.P. 1st Cir. 2007)).

16.     Similarly here, if the Court were to apply the *STN* Order to resolve disputes over the propriety of releases under Rule 9019, doing so would, at most, constitute an "enforcement" or "implementation" of the Court's *STN* Order as part of the confirmation process and would not implicate the divestiture rule, as the Court would be doing nothing to modify its *STN* ruling. *See In re Winimo Realty Corp.*, 270 B.R. at 105-06; *In re Prudential Lines, Inc.*, 170 B.R. at 244. Tellingly, the Committee does not identify a single case holding that a bankruptcy court is divested of jurisdiction over the confirmation process if the bankruptcy court has issued a ruling, appealed to the district court, that is relevant to some aspect of confirmation.[4] Were that the rule, bankruptcy courts would decline, before the completion of the confirmation process, to rule on

---

[4] Of the bankruptcy cases that the Committee cites, two ruled that divestiture of the bankruptcy court's jurisdiction was ***not*** warranted. *See In re Prudential Lines, Inc.*, 170 B.R. at 243; *In re Emergency Beacon Corp.*, 58 B.R. 399, 402 (Bankr. S.D.N.Y. 1986). The other cited cases are all distinguishable, as they involved circumstances in which bankruptcy courts sought to amend or modify (rather than implement) a prior ruling that was on appeal.

8

issues with any potential implication for confirmation. The Committee's argument that this Court is divested of jurisdiction over confirmation of a plan containing releases must be rejected.

## II. THE COMMITTEE HAS FAILED TO DEMONSTRATE IT IS ENTITLED TO RULE 8007 RELIEF PENDING APPEAL OF THE *STN* ORDER.

17. Courts consider four factors when evaluating whether to stay or suspend proceedings pursuant to Bankruptcy Rule 8007: (1) whether the movant will suffer irreparable injury absent the relief; (2) the degree of prejudice to the party to be enjoined; (3) the movant's likelihood of success on appeal; and (4) the public interest. *E.g.*, *In re Motors Liquidation Co.*, 539 B.R. 676, 683 (Bankr. S.D.N.Y. 2015).

18. The burden is on the moving party to establish that these elements are satisfied. *N.Y. Skyline, Inc. v. Empire State Bldg. Co. (In re N. Y. Skyline, Inc.)*, 520 B.R. 1, 5 (S.D.N.Y. 2014). Moreover, the "decision to grant or deny a stay pending appeal is committed to the discretion of the bankruptcy court." *In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2 (Bankr. S.D.N.Y. Mar. 4, 2016). Thus, "[a] stay of a judgment pending an appeal is an exercise of judicial discretion and is not a matter of right, even if irreparable injury might otherwise result." *In re N. Y. Skyline, Inc.*, 520 B.R. at 5.

19. Here, the Committee has failed to satisfy any of the four factors that courts consider in evaluating claims for Rule 8007 relief. Significantly, ***none*** of the cases cited by the Committee in its Motion requested a stay pending appeal of an *STN* ruling. Consequently, its Motion must be denied.

### A. The Committee Faces No "Actual and Imminent" Irreparable Harm.

20. "'A showing of probable irreparable harm is the principal prerequisite for the issuance of a [Rule 8007] stay.'" *In re Adelphia Commc'ns Corp.*, 361 B.R. at 347 (citations omitted). "[S]imply showing some 'possibility of irreparable injury' fails to satisfy" this factor.

9

*In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2 (quoting *Nken v. Holder*, 556 U.S. 418, 434-35 (2009)). Instead, the movant bears the burden of demonstrating it will suffer irreparable harm that is "neither remote nor speculative, but actual and imminent." *In re Adelphia Commc'ns Corp.*, 361 B.R. at 347.

21. The Committee insists that it would suffer irreparable harm here because its appeal of the *STN* Order may be rendered equitably moot if a plan of reorganization that includes releases of certain estate claims is confirmed. (Mot. ¶ 17) Specifically, the Committee states that it "anticipates that the Debtor and others would seek to dismiss the appeal post-confirmation," which—it contends—would result in a "quintessential form of prejudice" due to its loss of appellate rights on *STN* issues. (*Id.*)

22. Simply put, the Committee's claimed irreparable harm would potentially arise from a hypothetical order confirming the Debtors' proposed plan of reorganization, not from this Court's *STN* Order. That purported harm is not "actual and imminent." The hearing that the Committee is concerned might conclude with an order confirming the proposed plan of reorganization is not scheduled to begin for at least two months. At that hearing, the Committee will have an opportunity to litigate its objections to the proposed plan, including arguments under Rule 9019 and Section 1129. If, after the confirmation hearing, the Court confirms a plan that threatens to moot the Committee's appeal of this Court's *STN* Order (provided the appeal has not already been decided at that time), the Committee could argue for a stay of the effective date of that confirmation order. But there is no basis under Rule 8007 to preclude this Court from moving forward with the confirmation process based on a hypothetical concern that the

proceedings *might* conclude months from now with an order that *could* potentially harm the Committee's interests.[5]

23.    Not surprisingly, numerous courts have rejected arguments that the irreparable harm requirement is satisfied in the circumstances presented here—*i.e.*, where the harm complained of is contingent on the outcome of motion in a future proceeding that the movants would have an opportunity to contest. *See, e.g.*, *Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*, 2008 WL 650389, at *4 (S.D.N.Y. Mar. 7, 2008) (no irreparable harm demonstrated by risk that appeal will become equitably moot upon plan confirmation where "Bankruptcy Court has not yet approved the Plan, and will not do so until after a hearing at which all objections will be heard and considered"); *In re Mich. Produce Haulers, Inc.*, 2015 WL 1275387, at *1-*4 (Bankr. W.D. Mich. Mar. 19, 2015) (refusing to "suspend proceedings in the case relating to the Debtor's request to confirm a plan of reorganization" due to risk that appeal would become equitably moot upon confirmation where court had not yet "proceeded to confirmation on the Debtor's Plan," movants had made it "abundantly clear" that they would contest confirmation, and the Court had not yet confirmed that the proposed Plan satisfied Section 1129). The same result should follow here: If this Court enters a plan confirmation order that, the Committee contends, threatens to irreparably and imminently harm the Committee's interests, the Committee's recourse would be to appeal and seek a stay of *that order*, not of the Court's March 24, 2016 ruling denying the Committee's *STN* motion.

---

[5]    As this Court noted in an exchange with Committee counsel, the Committee's argument regarding the risk of equitable mootness "assumes a huge number of things," including that the Court is "going to confirm the plan, [and] that the plan's going to be the plan that's filed." (4/7/16 Tr. at 94)

**B.    The Non-Moving Parties Will Be Significantly Harmed If A Stay Is Granted.**

24.   Remarkably, the Committee asserts that the non-moving parties will incur ***no harm*** if remaining core Chapter 11 proceedings are suspended pending appeal of the *STN* Order, contending that the "Debtors and objectors have no need for an additional piece of paper (the plan) or order (a confirmation order) 'releasing' the claims" of the estate because they have the "protection of the *STN* Order itself." (Mot. ¶ 18)  The Committee even contends that the "*sole* purpose of any such release would be to interfere with the Committee's appellate rights vis-à-vis the Order." (*Id.* (emphasis in original))

25.   This position ignores reality.  The Debtors and objectors are motivated to pursue a plan of reorganization and a confirmation order in order to ***allow Sabine to restructure and emerge from bankruptcy***—which, after all, is the "primary goal" of Chapter 11.  *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014).  The Debtors do not seek releases "as a means to try to shut down appellate review" of the *STN* ruling, but because the Debtors have always regarded releases as an integral part to a successful reorganization.

26.   Moreover, the Committee's assertion that the suspension of confirmation proceedings would not injure the Debtors, (Motion ¶ 18), is baseless.  Courts have recognized that the harms from postponing reorganization include, among other things: (1) lost strategic opportunities; (2) difficulty in recruiting and retaining talent for the Debtor company; (3) incurrence of administrative and professional expenses; (4) placing plan settlements in jeopardy; and (5) exposing the equity to be granted to non-moving creditors to market volatility and other risks.  *See, e.g.*, *In re Tribune Co.*, 477 B.R. 465, 478-80 (Bankr. D. Del. 2012) (discussing risks of staying confirmed plan); *In re Adelphia Comm'ns Corp.*, 361 B.R. at 354 (noting "additional harms that are substantial but not easily quantifiable, such as the risk that the Plan will fall apart and that the parties will fail to reach a new agreement given the uncertainty

12

associated with what could be a seven-month stay"). The Debtors would face each of these harms if the Court were to grant the Committee's Motion.

27. In short, the harms that the Debtors would incur if the Committee's stay request were granted are substantial. For this reason too, this Court should deny the Motion.

### C. The Committee Is Not Likely To Succeed On The Merits Of Its Appeal.

28. The Committee has also failed to demonstrate likelihood of success on the merits of its *STN* appeal, which further counsels against granting its Motion. Courts applying the Rule 8007 factors have stated "'showing of substantial possibility of success is inversely proportional to the amount of irreparable injury,' meaning that a movant who has failed to demonstrate irreparable injury, as is the case here, 'must clearly establish a substantial possibility of success on appeal' to prevail." *29 Brooklyn, LLC v. Chesley*, 2015 WL 9255549, at *3 (Bankr. E.D.N.Y. Dec. 16, 2015) (citations omitted). The Committee's vague reference to arguments it may make on its appeal of the *STN* Order does not begin to show that the Committee has a "substantial possibility" of success on appeal, let alone "clearly establish" that this standard has been satisfied. (*See* Mot. ¶ 21)

29. After about 800 pages of pre-trial briefing, 15 days of witness testimony and lawyer argument, and deposition testimony from a dozen other witnesses, the Court issued an exhaustive 108-page decision setting forth the rational and legal support for its denial of the Committee's *STN* motion. The Court's opinion concluded, among other things, that the Committee's theory regarding proposed "bad acts" claims was "implausible and the claims premised upon it are not colorable," (*STN* Order at 61), and that the Debtors had demonstrated that bringing certain constructive fraudulent transfer claims would "not be in the best interests of the estates," (*id.* at 101).

13

30. Although the Committee urges that it has a "strong possibility of success on appeal," its Motion does not respond to *any* of the Court's findings or analyses. (*See* Mot. ¶¶ 20-21) Instead, the Committee asserts that "substantial cases and statutes . . . provide support for the Committee's positions," and contends that the Committee believes it "substantially possible" that these authorities support its bid for derivative standing. (*Id.* ¶ 21) The Committee makes no attempt to explain why the cases referenced in its Motion would lead to a different result than the case law it cited in its voluminous pre-trial briefing and in days of oral argument at the *STN* hearing. The Committee relied on the same cases in its Motion that it did at the *STN* trial, which have already been rejected. Simply put, the Committee has failed to carry its burden here.

### D. Public Policy Considerations Militate Against Granting A Stay Here.

31. The public interest factors implicated by the Committee's Motion overwhelmingly support a denial of its request for a stay pending appeal.

32. The Committee offers three arguments for why the public interest purportedly "weighs heavily in favor of staying the bankruptcy proceedings pending the Committee's appeal." (Mot. ¶¶ 22-24) None advances its position:

33. *First,* the Committee asserts, without citation to authority, that "[w]here the Committee is seeking appellate determination of rights of the estate, not rights of particular creditors, there is public interest at stake." (*Id.* ¶ 22) This makes no sense. The Committee here seeks to advance the interests of certain unsecured creditors, not the interests of the public generally. Indeed, most of the claims that the Committee attempts to assert simply seek to reallocate value from secured lenders and one partially unsecured creditor group (*i.e.*, the second lien lenders) to a group of unsecured creditors consisting largely of hedge funds and other institutional investors. The balance of the Committee's claims seek to achieve for the latter group litigation recoveries from board members and equity investors. These putative claims

14

would implicate private, not public, interests. Tellingly, the Committee has identified *no* case law stating the mere fact that the claims an appellant seeks to pursue on behalf of unsecured creditors are derivative in nature somehow converts the resolution of those claims into a matter of "public interest."

34. ***Second***, the Committee contends that "there is a public interest in having appeals decided on the merits and not rendered moot." (*Id.* ¶ 23) The Committee, however, has failed to identify any substantive question on appeal that is one of general public interest. Further, the Committee's sole citation for the proposition that the threat of equitable mootness presents a matter of public interest is an unpublished, out-of-circuit authority that ***rejected*** the movant's request for a stay pending appeal. (*See id.* (citing *In re Butan Valley, N.V.*, 2009 WL 941508 at *2 (S.D. Tex. Apr. 6, 2009) ("Appellant has also failed to show that the requested stay would serve the public interest.")).

35. Moreover, as discussed above, the Committee faces no present threat of equitable mootness. *See supra* Part II.A. At this stage, the Debtors have not sought to dismiss the appeal of the *STN* ruling on equitable mootness grounds. If this Court eventually approved a plan of reorganization, if the appeal of the *STN* ruling were then still pending, and if the Debtors sought to dismiss that appeal and the appeal of the confirmation order as equitably moot, only then would the Committee's (albeit misguided) public interest argument even potentially apply. In short, the asserted public interest in deciding appeals on the merits does not, at this time, justify a stay pending appeal of this Court's *STN* Order.

36. ***Third***, for the same reasons outlined above, the Committee's attempt to invoke a purported "jurisdictional dispute" as presenting a matter of public interest, (*see id.* ¶ 24), is groundless. *See* Part I, *supra*.

15

37. The public interest factor, in fact, weighs strongly against granting the stay requested here. "The primary goal of chapter 11 is to promote the restructuring of the debtor's obligations so as to preserve the business and avoid liquidation." *In re Genco Shipping & Trading Ltd.*, 513 B.R. at 261. Thus, the "public interest favors the expedient administration of the bankruptcy proceedings." *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 361 B.R. at 349 ("[C]ompromises are favored in bankruptcy precisely for the reason that they minimize litigation and expedite the administration of a bankruptcy estate."). The Committee's request to preemptively suspend core Chapter 11 proceedings—here, confirmation of the Debtors' proposed plan of reorganization—runs directly counter to this significant public interest. Additionally, while the "law permits the stay pending appeal of an order where the high standards for a stay are met," "where, as here, those standards are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014) (referencing *In re Taub,* 2010 WL 3911360, at *6 (Bankr. E.D.N.Y. Oct. 1, 2010)). The public interest factor therefore further militates in favor of denying the Committee's Motion.

### III.    IF THE COURT GRANTS A STAY, THAT RELIEF MUST BE CONDITIONED ON A SIZABLE SUPERSEDEAS BOND.

38. As discussed above, the Committee has failed to show that its request for Rule 8007 relief is warranted. But, if this Court were to entertain the Committee's Motion, it should do so only on the condition that the Committee posts a sizable supersedeas bond to protect the non-moving parties from the harm associated with suspending confirmation proceedings. The Committee has failed to address the bond issue in any way.

16

39. Rule 8007(e) affords the bankruptcy court discretion to "issue any . . . appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e). This includes, among other things, the authority to condition Rule 8007 relief on the posting of security adequate "to protect against diminution in the value of property pending appeal, and to secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Adelphia Commc'ns Corp.*, 361 B.R. at 350 (citations omitted); *accord In re Tribune Co.*, 477 B.R. at 478. "The purpose of requiring a bond in this context is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse the holding of the bankruptcy court." *In re Motors Liquidation Co.*, 539 B.R. at 686.

40. Although courts may waive the supersedeas bond requirement in "exceptional circumstances," *In re Adelphia Commc'ns Corp.*, 361 B.R. at 351, "the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement" if it "seeks the imposition of a stay without a bond," *see In re 473 W. End Realty Corp.*, 507 B.R. at 501-02; *In re Chemtura Corp.*, 2010 WL 4638898, at *5 (Bankr. S.D.N.Y. Nov. 8, 2010); *In re Gen. Motors Corp.,* 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009); *In re Calpine Corp.*, 2008 WL 207841, at *7 (Bankr. S.D.N.Y. Jan. 24, 2008). To do so, the movant must "provid[e] specific reasons why the court should depart from the standard requirement of granting a stay only after posting of supersedeas bond in the full amount of the judgment." *In re Calpine Corp.*, 2008 WL 207841, at *7 (citation omitted). Even then, the bond requirement "should not be eliminated or reduced unless doing so does not unduly endanger" the interests of non-movants. *In re Adelphia Commc'ns Corp.*, 361 B.R. at 350 (quoting *De La Fuente v. DCI Telecomms. Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003)).

41. Here, as addressed in Part II.B, *supra*, a stay that prevents the Debtors from moving forward with their proposed plan of reorganization would inflict significant harm on the estates and their stakeholders. Recognizing the magnitude of the potential loss to debtors from staying the completion of a plan confirmation process, courts have generally held that, to obtain such a stay, movants must post bonds for many hundreds of millions or even billions of dollars. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 361 B.R. at 368 (imposing bond of $1.3 billion on basis that this security was "near the full amount of the potential harm to the non-moving parties"); *cf. In re Gen. Motors Corp.*, 409 B.R. at 34 (denying stay but noting in dicta that "a bond would have to be posted in an amount no less than $7.4 billion" given the magnitude of harms faced by non-movants); *In re Calpine Corp.*, 2008 WL 207841, at *7 (denying stay but noting that "no stay would be issued without the posting of a bond to cover the enormous risk of loss to the Debtors, their estates, creditors and interest holders in the range of $900 million to $1 billion"); *In re DJK Residential, LLC*, 2008 WL 650389, at *5 (rejecting movants' argument that bond should not be required where "the cost of a bond would be prohibitive in light of the magnitude of the potential loss to Debtors").

42. Given the risks here associated with derailing the Debtors' reorganization efforts, this Court should condition any grant of Rule 8007 relief to the Committee on posting a bond not less than the Debtors' estimated distributable value upon emergence, plus the costs and expenses of continuing to administer these cases. The proposed disclosure statement for the Debtors' current proposed plan estimates the distributable value of reorganized Sabine to be "approximately $450 million to $650 million (with the midpoint of such range being approximately $550 million)," plus cash on hand. (*See* Docket No. 927, exhibit D) As the Committee has provided no alternative computation, if the Court were to entertain the

18

Committee's stay motion, the Committee should be required to post a bond of at least $550 million plus cash on hand.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the Committee's Motion requesting Rule 8007 relief.

Dated:  April 15, 2016          */s/ Gabor Balassa*
                                James H.M. Sprayregen, P.C.
                                Paul M. Basta, P.C.
                                Jonathan S. Henes, P.C.
                                Christopher Marcus, P.C.
                                KIRKLAND & ELLIS LLP
                                KIRKLAND & ELLIS INTERNATIONAL LLP
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:   (212) 446-4800
                                Facsimile:   (212) 446-4900

                                - and -

                                Gabor Balassa, P.C. (admitted *pro hac vice*)
                                Ryan Blaine Bennett (admitted *pro hac vice*)
                                A. Katrine (Katie) Jakola (admitted *pro hac vice*)
                                Britt Cramer (admitted *pro hac vice*)
                                KIRKLAND & ELLIS LLP
                                KIRKLAND & ELLIS INTERNATIONAL LLP
                                300 North LaSalle Street
                                Chicago, Illinois 60654
                                Telephone:   (312) 862-2000
                                Facsimile:   (312) 862-2200

                                *Counsel to the Debtors and Debtors in Possession*