**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| SABINE OIL & GAS CORPORATION, *et al.*, | Case No. 15-11835 |
| Debtors. | Jointly Administered |

-------------------------------------------------------------x

## BENCH DECISION ON MOTION FOR STAY PENDING APPEAL

A P P E A R A N C E S:

ROPES & GRAY LLP
*Counsel to the Official Committee of Unsecured Creditors*
1211 Avenue of the Americas
New York, New York 10036
By:   Mark R. Somerstein, Esq.
      Keith H. Wofford, Esq.
      D. Ross Martin, Esq.
      Douglas Hallward-Driemeier, Esq.

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
*Counsel to the Debtors*
601 Lexington Avenue
New York, New York 10022
By:   Jonathan S. Henes, P.C.
      Christopher J. Marcus, P.C.

300 North LaSalle
Chicago, Illinois 60654
By:   Gabor Balassa, P.C.
      A. Katrine Jakola, Esq.

LINKLATERS LLP
*Counsel to Wells Fargo, National Association, as First Lien Agent*
1345 Avenue of the Americas
New York, New York 10105
By:   Margot B. Schonholtz, Esq.
      Robert H. Trust, Esq.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Counsel to Wilmington Trust N.A. as Second Lien Agent*
1285 Avenue of the Americas
New York, New York 10019
By:   Brian S. Hermann, Esq.
      Moses Silverman, Esq.
      Kyle J. Kimpler, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Counsel to FRC Founders Corporation, Sabine Investor Holdings LLC, First Reserve Fund XI, L.P., First Reserve GP XI, L.P., First Reserve GP XI, Inc., Alex Krueger, Brooks Shughart, Michael France, and Joshua Weiner*
51 Madison Avenue, 22nd Floor
New York, New York 10010
By:   Andrew J. Rossman, Esq.
      Susheel Kirpalani, Esq.
      Julia M. Beskin, Esq.

SHEARMAN & STERLING LLP
*Counsel to Barclays Bank PLC and Barclays Capital Inc.*
599 Lexington Avenue
New York, New York 10022
By:   Joseph J. Frank, Esq.
      Fredric Sosnick, Esq.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Counsel to Richard J. Carty, Loren Carroll, Dod Fraser, James Lee, James Lightner, Patrick R. McDonald, Raymond Wilcox, and Victor Wind*
1633 Broadway
New York, NY 10019
By:   Kenneth R. David, Esq.
      Daniel A. Fliman, Esq.

CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP
*Counsel to Sabine Directors Duane Radtke, David Sambrooks, and John Yearwood*
101 Park Avenue
New York, New York 10178
By:   Steven J. Reisman, Esq.
      Theresa A. Foudy, Esq.

BROWN RUDNICK LLP
*Counsel to the Forest Notes Indenture Trustees*
Seven Times Square
New York, New York 10036
By:   Robert J. Stark, Esq.
      Daniel J. Saval, Esq.

AKIN, GUMP, STRAUSS, HAUER & FELD LLP
*Co-counsel to The Bank of New York Mellon Trust Company, N.A. as Trustee under the 2017 Notes Indenture*
One Bryant Park
New York, New York 10036
By: Daniel H. Golden, Esq.
     Philip C. Dublin, Esq.
     Abid Qureshi, Esq.

    -and-

EMMET, MARVIN & MARTIN, LLP
120 Broadway, 32nd Floor
New York, New York 10271
By: Edward P. Zujkowski, Esq.
     Thomas A. Pitta, Esq.

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion (the "Motion") of the Official Committee of Unsecured Creditors (the "Committee") pursuant to Rules 8007 and 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for a stay pending appeal of this Court's order denying the STN Motions[1] [Docket No. 924] (the "STN Order"), which order followed entry of this Court's bench decision of March 31, 2016[2] [Docket No. 923] denying the STN Motions (the "Bench Decision"). By the Motion, the Committee seeks entry of an order to stay, pending the Committee's appeal of the STN Order,[3] "(A) any action to cause the release of the estate causes of action in so-called 'Bucket I' and 'Bucket III' for which the Court has denied the Committee *STN* standing (the 'Denied Claims') and (B) expiration of the Challenge Period Deadline as contemplated by the Cash Collateral Order."[4]

Objections to the Motion were filed by the above-captioned debtors and debtors in possession (the "Debtors")[5] and Sabine Directors Duane Radtke, David Sambrooks, and John Yearwood (collectively, the "Sabine Directors").[6] Joinders to the Debtors' objection were filed

---

[1] The defined term "STN Motions" shall refer to (i) the Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority, dated November 17, 2015 [ECF No. 518]; (ii) the Motion of the Forest Notes Indenture Trustees for Entry of an Order Pursuant to § 1109(b) Granting Leave, Standing and Authority to Prosecute and, if Appropriate, Settle Certain Claims on Behalf of the Estate of Sabine Oil & Gas Corporation, dated November 17, 2015 [ECF No. 521]; and (iii) the Second Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority, dated December 15, 2015 [ECF No. 609].
[2] The Bench Decision was read into the record on March 24, 2016 and filed on the docket of these cases on March 31, 2016.
[3] On April 5, 2016, the Committee filed a notice of appeal of the STN Order [Docket No. 936]; and, on April 14, 2016, notices of appeal of the STN Order were filed by The Bank of New York Mellon Trust Company [Docket No. 981] and by the Forest Notes Indenture Trustees [Docket No. 983].
[4] Motion p. 2.
[5] Docket No. 988 (the "Debtors' Objection").
[6] Docket No. 991.

by (i) Wells Fargo, N.A., as First Lien Agent ("Wells Fargo");[7] (ii) Wilmington Trust N.A., as Second Lien Agent;[8] (iii) Barclays Bank PLC and Barclays Capital Inc.;[9] (iv) FRC Founders Corporation, Sabine Investor Holdings LLC, First Reserve Fund XI, L.P., First Reserve GP XI, L.P., First Reserve GP XI, Inc., Michael France, Alex Krueger, Brooks Shughart, and Joshua Weiner (collectively, the "First Reserve Parties");[10] and (v) former Forest Oil Corporation directors and officers Richard J. Carty, Loren Carroll, Dod Fraser, James Lee, James Lightner, Patrick R. McDonald, Raymond Wilcox, and Victor Wind.[11]  On April 18, 2016, the Committee filed its Reply Memorandum in Further Support of the Motion (the "Reply").[12]  Joinders to the Motion were filed by The Bank of New York Mellon Trust Company and by the Forest Notes Indenture Trustees.[13]  A hearing on the Motion was held on April 21, 2016.

By the Motion, the Committee argues that granting certain "protections" to the Committee pending appeal of the STN Order – more specifically, a stay of "any action to dispose of the Denied Claims" and a stay of the effectiveness of the STN Order to the extent it would cause the expiration of the Challenge Period Deadline – will enable the Court to avoid (i) any possible argument concerning foreclosure of the Committee's appellate rights and (ii) a jurisdictional conflict with Article III appellate courts.[14]  According to the Committee, the purported jurisdictional conflict would occur if (i) the Debtors proceed to confirmation on their proposed Amended Joint Chapter 11 Plan, dated March 31, 2016 [Docket No. 927] (the "Amended Plan"), which plan proposes releases of the Denied Claims, and (ii) the Court confirms the Amended Plan.  Despite conceding that the alleged jurisdictional issue "is not ripe

---

[7] Docket No. 989.
[8] Docket No. 990.
[9] Docket No. 992.
[10] Docket No. 994.
[11] Docket No. 993.
[12] Docket No. 999.
[13] Docket Nos. 1000 and 1002.
[14] Motion ¶¶ 1-2.

for decision at this time,"[15] the Committee nevertheless argues that there is a considerable risk of harm to the Committee if a stay is denied, and it submits that it has satisfied the test for a stay pending appeal.

The Debtors argue that the Motion seeks relief different from and far beyond the request for the preservation of the status quo ordinarily implicated in a motion for a stay pending appeal; instead of asking for a narrowly tailored stay of the underlying *STN* judgment, the Motion astonishingly requests that the Court enjoin **separate** proceedings relating to the Debtors' proposed plan of reorganization until the STN appeal is adjudicated. Describing the Motion as an "attempt to manufacture a jurisdictional issue to divest this Court of authority to proceed to confirmation,"[16] the Debtors assert that (i) the Committee's purported jurisdictional argument has no merit and (ii) the Committee fails to satisfy any of the four factors that comprise the test for a stay pending appeal. Joined by numerous other stakeholders in these cases, the Debtors submit that the Motion should be denied.

## Discussion of "Divestiture of Jurisdiction" Argument

The Committee devotes a substantial portion of its motion papers to the argument that the "divestiture doctrine" divests this Court of jurisdiction to enter a confirmation order that would approve a release of the Denied Claims and, thus, this Court should grant the requested stay in order to avoid a "jurisdictional conflict" with an Article III court that may arise at confirmation.[17] The Debtors argue in response that the Committee misstates the divestiture doctrine and that the case law undermines rather than supports the Committee's argument.[18] The Court agrees.

---

[15] Motion ¶ 4.
[16] Debtors' Objection ¶¶ 3-4.
[17] Motion ¶¶ 10-15.
[18] Debtors' Objection ¶ 11.

3

The divestiture doctrine, in its simplest terms, provides that the filing of an appeal divests the lower court of its control over the issue or matter that is on appeal. Courts have held that the same legal principle applies to appeals of bankruptcy court orders. *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994) ("*Prudential Lines*"). During the pendency of an appeal of a bankruptcy court order, however, the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction "to decide issues and proceedings different from and collateral to those involved in the appeal." *In re Bd. Of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001); *Prudential Lines*, 170 B.R. at 243 ("while an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment . . . . This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review."); *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 105 (S.D.N.Y. 2001) (same). "Courts have accordingly recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter prohibited." *Prudential Lines*, 170 B.R. at 243 (citing *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). The application of the distinction in the case law between acts of enforcement and acts of alteration "is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." *Prudential Lines*, 170 B.R. at 244.

Here, as the Sabine Directors point out, confirmation of a plan of reorganization containing releases of the Denied Claims would in no way alter the STN Order.[19] Moreover, the issue of whether the Court should confirm a plan containing releases of certain claims is entirely distinct from the issue of whether the Court should grant the Committee standing to pursue such claims. The Committee's assertion that "ruling on a proposed release [at confirmation] will require this Court to decide an identical issue as the district court will during its appellate review"[20] is flatly incorrect. The Motion mischaracterizes the Bench Decision and the standard on which the Court relied in its ruling, implying that the Court's decision constituted a determination as to whether releases were appropriate given the fact that the Court ruled that "all but one of the Denied Claims fails [sic] as a matter of law."[21] In fact, the Bench Decision contains no ruling with respect to releases; and the Court explicitly declined to hear any evidence or argument with respect to releases during the trial on the STN Motions.[22]

Moreover, as the Debtors assert, even if the Court were to in effect "enforce" aspects of the Bench Decision in a subsequent adjudication of disputes with respect to the propriety of releases at confirmation, doing so would, at most, constitute "implementation" rather than alteration of the Bench Decision and STN Order, and the divestiture doctrine still would not be implicated.[23] Far from constituting a "second order" on *STN* standing that the Debtors seek in

---

[19] Objection of Sabine Directors ¶ 3.
[20] Motion ¶ 8.
[21] Motion ¶ 7; *see also* Motion ¶ 3 (characterizing the Bench Decision as holding that "the Denied Claims had zero merit and zero value"); Motion ¶ 12 (arguing that "[a]pproval of that release will require a determination that the Denied Claims have no value . . . . That of course is exactly the same ruling this Court has already made in the STN Order"); Reply ¶ 8 (asserting that the Bench Decision made a determination on "standing" but "the reason for the decision – now the subject of the appeal, was the merits and probabilities of success of the claims. That will be the same issue in any release of the claims.").
[22] *See* March 3, 2016 Hr'g Tr. at 108; March 11, 2016 Hr'g Tr. 21:22-25 (the Court) ("But as I've also said before, there's going to be no determination of the appropriateness, legality, or anything with respect to those [re]leases. That's just your view of coming attractions.").
[23] Debtors' Objection ¶ 16.

5

order to "cement" the effect of the STN Order,[24] as the Committee alleges, a confirmation order does not "tamper" with prior rulings in the case; rather, to state the obvious, it confirms a plan of reorganization. *See Prudential Lines*, 170 B.R. at 244 (stating that the divestiture rule is implicated only where "the bankruptcy court either tampered in some manner with the appealed order or sought to make a decision on a contested issue identical to one on appeal"). If the divestiture doctrine were to be applied in a way that divests bankruptcy courts of jurisdiction over all issues relevant to confirmation on which the court has previously ruled and are the subject of a pending appeal, this would lead to an absurd result – courts would likely decline to rule on any issues that could be implicated at confirmation for fear of interfering with a debtor's ability to emerge from chapter 11.[25] Moreover, it would effectively cede control of the conduct of a chapter 11 case to disappointed litigants. This cannot be, and is not, the law.

**Applicable Law – Stay Pending Appeal**

Federal Rule of Bankruptcy Procedure 8007(a)(1) provides that

In General. Ordinarily, a party must move first in the bankruptcy court for the following relief:
(A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
(B) the approval of a supersedeas bond;
(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
(D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).[26]

Fed. R. Bankr. P. 8007(a)(1). Bankruptcy Rule 8007(e) provides that "[d]espite Rule 7062 and subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case; or (2) issue any other

---

[24] Motion ¶ 7.
[25] *See, e.g., In re Wash. Mut., Inc.*, 461 B.R. 200, 220 (Bankr. D. Del. 2011), *vacated in unrelated part*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012) (stating the appellants' interpretation of the divestiture doctrine as precluding the court from proceeding to confirmation while a related issue was on appeal was "too broad" and would have "the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner") (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 758 (B.A.P. 1st Cir. 2007)).
[26] Fed. R. Bankr. P. 8007(a)(1)(D).

6

appropriate orders during the pendency of an appeal to protect the rights of all parties in interest."[27]

The decision as to whether or not to grant a stay of an order pending appeal lies within the sound discretion of the court. *See*, *e.g.*, *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) ("*General Motors*"); *In re Overmyer,* 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985). As the District Court held in *ACC Bondholder Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia*"), the court must consider four factors in exercising this discretion: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected."

Certain courts in this Circuit have held that the inquiry involves a balancing of the four factors and "[t]he lack of any one factor is not dispositive to the success of the motion,"[28] while others have held that, to be successful, the party must show "satisfactory evidence on all four criteria."[29] Moreover, where the movant seeks imposition of a stay without a bond, "the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *Triple Net Invs. IX, LP v. DJK Residential (In re DJK Residential, LLC)*, No. 08-10375, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008); *see also General Motors*, 409 B.R. at 30 (noting that the burden on the movant seeking the extraordinary relief of a stay is a "heavy" one).

---

[27] Fed. R. Bankr. P. 8007(e)(1).
[28] *See, e.g., Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002); *Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 504 B.R. 754, 762 (S.D.N.Y. 2014); *Adelphia*, 361 B.R. at 346-47 (articulating the disagreement as to the standard, stating that "the Second Circuit has never articulated such a rigid rule of law," and determining to follow the practice of weighing the factors).
[29] *See General Motors*, 409 B.R. at 30 (citing *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997)).

7

**Discussion of Four Factor Test for Stay Pending Appeal**

In *General Motors*, Judge Gerber commented that, "[w]hile, as Judge Lynch noted in *DJK*, the 2d Circuit BAP has held that failure to satisfy any prong of the 4-part test 'will doom the motion,' . . . the Circuit and more recent cases have engaged in a balancing process with respect to the four factors, as opposed to adopting a rigid rule." *General Motors*, 409 B.R. at 30. After stating that, for purposes of his decision, he would assume the balancing approach was more appropriate, Judge Gerber declined to make a definitive determination with respect to the correct application of the four-factor test, given that the last three factors overwhelmingly compelled denial of the stay in that case. *Id.*

So too here. The Court finds that it would reach the same conclusion – that the request for a stay must be denied – regardless of whether it applies the rigid test (requiring compliance with all four factors) or the more generous balancing approach to the instant case. The Court will discuss each of the factors in turn.

1. **Irreparable Injury**

A showing of probable irreparable harm is the "principal prerequisite" for the issuance of a stay pursuant to Rule 8007, and such harm "must be 'neither remote nor speculative, but actual and imminent.'" *Adelphia*, 361 B.R. at 347 (citations omitted). The Committee argues that, absent a stay, irreparable harm "is more than probable, it is almost certain."[30] Although the Committee strenuously maintains that its appeal of the STN Order would **not** be equitably mooted by entry of an order confirming a plan containing releases of the Denied Claims, it anticipates that the Debtors and others would argue equitable mootness upon confirmation. The Committee thus asserts that it would suffer irreparable harm were the Court to find, upon confirmation, that the appeal of the STN Order is equitably moot. Such a hypothetical loss of its

---

[30] Motion ¶ 17.

8

appellate rights, the Committee contends, constitutes sufficient harm to weigh heavily in favor of a stay.

The Debtors, conversely, argue that the Committee's claimed irreparable harm would potentially arise not from the STN Order but instead solely from a hypothetical order confirming the Debtors' proposed plan of reorganization.[31] Far from being harm that is "actual and imminent," the harm posited by the Committee here is hypothetical and remote – it assumes that the Debtors would proceed to confirmation on a plan containing releases of the Denied Claims and that the Court would confirm such plan. In fact, the Debtors have yet to receive approval of a disclosure statement and authorization to solicit such a plan, and any confirmation hearing is at least two months away. At a confirmation hearing, the Committee will have a full and fair opportunity to litigate all of its objections to the proposed plan; if a plan containing releases of the Denied Claims is confirmed, the Committee can move for a stay of the confirmation order if it believes that the occurrence of the effective date contained in such order may moot its appeal of the STN Order. These hypothetical filings and rulings, however, are wholly insufficient to constitute irreparable harm that is actual and imminent at this time.

A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm. *General Motors*, 409 B.R. at 31 (citing *Adelphia*, 361 B.R. at 347 n.39); *see also In re DJK Residential, LLC*, 2008 WL 650389, at *4 (finding that no irreparable harm demonstrated by risk that appeal will become equitably moot upon confirmation where "Bankruptcy Court has not yet approved the Plan and will not do so until after a hearing at which all objections will be heard and considered"). Even if the risk of mootness were sufficient to satisfy the requirement of some showing of irreparable injury, however, the Court finds that any

---

[31] Debtors' Objection ¶ 22.

9

threat of harm here is insignificant when weighed against the injury that the Debtors would suffer if the stay sought by the Committee were granted.

### 2. Potential Harm to Other Parties

With respect to the second prong of the test, the party seeking a stay must establish that the non-moving party or other parties will not suffer substantial harm if the stay is granted. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *Adelphia*, 361 B.R. at 349 (citations omitted).

While the Committee argues that "[h]ere, no appellee will experience an injury from a stay,"[32] the Court finds that there would be substantial harm to the Debtors and their estates if a stay were granted. Were the stay sought by the Committee to be imposed, the Debtors would effectively be barred from pursuing confirmation of any plan that contains provisions implicating the Denied Claims until the disposition of the Committee's appeal of the STN Order, which could take many months. During such time, the Debtors' ability to prosecute a plan and emerge from bankruptcy would be completely constrained and the Debtors would be forced to incur the expense and bear the uncertainty of maintaining their chapter 11 cases while waiting in appellate limbo. The Committee neglects to address this reality, instead simply arguing that the only conceivable harm to the Debtors from a stay is the prospect that an appellate court will reverse this Court's determination on the Denied Claims. Attempting to turn the tables and fault the Debtors for proposing a plan with release provisions, the Committee argues that the Debtors should simply propose a different plan that does not include releases of the Denied Claims (confirmation of which would not be affected by the requested stay), stating that "[a] plan with a

---

[32] Motion ¶ 18.

10

release of the Denied Claims is not necessary in light of the Court's ruling denying the claims, and so there is no irreparable harm."[33] This argument misses the mark entirely.

A chapter 11 debtor has an unfettered right to propose, in good faith, any plan of reorganization which the debtor believes will enable it to reorganize successfully. As the Debtors point out, they "are motivated to pursue a plan of reorganization and a confirmation order in order to ***allow Sabine to restructure and emerge from*** bankruptcy—which, after all, is the 'primary goal' of chapter 11."[34] The Committee's continued assertion that the Debtors "can propose and solicit votes for any plan they choose, provided that such plan does not contemplate release of the Denied Claims"[35] clearly reveals the Committee's intention to use the Motion to impose the Committee's preferred plan terms on the Debtors and to enjoin the Debtors' pursuit of their plan. The Committee does not have the right to dictate the terms of the Debtors' plan any more than it has the right to enjoin the confirmation process though a misguided request for a stay pending appeal. The stay sought by the Motion in fact is more akin to an injunction pursuant to Bankruptcy Rule 8007(a)(1)(C), which provides that an appellant may seek "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending," than it is to a request for a stay pending appeal pursuant to Bankruptcy Rule 8007(a)(1)(A). The Committee has not moved for injunctive relief.

Courts have recognized numerous harms resulting from the postponement of reorganization proceedings, including (i) lost strategic opportunities; (ii) difficulty in recruiting and retaining talent for the Debtor; (iii) incurrence of administrative and professional expenses; (iv) placing plan settlements in jeopardy; and (v) exposing the equity to be granted to non-

---

[33] Reply ¶ 19.
[34] Debtors' Objection ¶ 25 (citing *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014)) (emphasis in original).
[35] Reply ¶ 25.

11

moving creditors to market volatility and other risks. *See, e.g.*, *In re Tribune Co.*, 477 B.R. 465, 478-80 (Bankr. D. Del. 2012); *Adelphia*, 361 B.R. at 354. The Debtors submit, and the Court agrees, that each of these potential harms may indeed befall them if the confirmation process is suspended.

### 3. Substantial Possibility of Success on Appeal

"The 'substantial possibility of success' test is considered an intermediate level between 'possible" and 'probable' and is 'intended to eliminate frivolous appeals.'" *In re 473 West End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (citing to *Country Squire*, 203 B.R. 182, 104 (B.A.P. 2d Cir. 1996)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, "more of one excuses less of the other." *473 West End Realty Corp.*, 507 B.R. at 502 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quotation omitted)).

By the Motion, the Committee sets forth a pared-down reargument of certain of its *STN* claims in order to support its assertion that it has a substantial possibility of succeeding on appeal with its argument that certain of the Denied Claims are colorable. It cites no new cases in support of the arguments that it previously presented to the Court at the trial on the STN Motions and which were rejected in the Bench Decision. The Court declines to restate here the conclusions contained in its Bench Decision, certain of which, as noted *supra*, were mischaracterized by the Committee in the Motion. Even after considering that the Committee is only required to establish a "substantial possibility" rather than a "likelihood" of success on the merits of its appeal, however, the Court concludes that the Committee has failed to demonstrate a substantial possibility of success on appeal; thus, this factor weighs against granting a stay.

## 4. Public Interests That May Be Affected

By the Motion, the Committee argues that the public interest "weighs heavily" in favor of a stay for three reasons, none of which is persuasive. First, the Committee submits that because it seeks to prosecute "rights of the bankruptcy estate" (in contrast to rights of particular creditors), there are public interests at stake.[36] This argument is somewhat nonsensical, given that the Committee seeks to obtain recoveries for a group of unsecured creditors – in other words, for a group of private interests – not the interests of the public generally. Second, the Committee asserts that "there is a public interest in having appeals decided on the merits and not being rendered moot;"[37] yet, as the Debtors correctly point out, the Committee fails to identify any substantive question on appeal that is a question of general public interest, and it has not established the existence of any current threat of equitable mootness.[38] Third, the Committee argues that avoiding a "jurisdictional dispute" is very much in the public interest. This argument fails for the reasons already set forth above.

The Committee further states that the public interest favors "the correct application of the law and the ability to redress harm through appellate review" above the need for expedient administration of the bankruptcy proceedings.[39] This assertion continues to hold true here, as none of the Committee's rights to argue for the correct application of the law is being sacrificed at the expense of swift resolution of these cases, and the Committee will have a full and fair opportunity to litigate its objections. Upon denial of the Motion, the Committee will maintain its rights (i) to prosecute its appeal of the STN Order; (ii) to argue to the District Court that this Court incorrectly applied the law in the Bench Decision; (iii) to object to the Debtors' proposed

---

[36] Motion ¶ 22.
[37] Motion ¶ 23.
[38] Debtors' Objection ¶ 34.
[39] Reply ¶ 21 (citing *ACR Energy Partners, LLC v. Revel AC, Inc. (In re Revel AC)*, 2015 WL 567015, at *5 (D.N.J. Feb. 10, 2015)).

13

plan of reorganization at the appropriate time; and (iv) to appeal and to seek a stay pending appeal of any confirmation order entered in these cases.

The Supreme Court has held that "bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Country Squire Assocs., L.P. v. Rochester Community Sav. Bank (In re Country Squire Assocs., L.P.)*, 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996) (citing *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 389, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). After balancing the parties' interests here and after considering each of the factors in the test for granting a stay pending appeal, the Court finds that the goals of promoting the restructuring of the Debtors' obligations, the preservation of the Debtors' business, and the Debtors' emergence from chapter 11 are issues of significant public interest that are best met by denying the stay requested here. *See In re 473 West End Realty Corp.*, 507 B.R. at 508 (citing *In re Taub*, 2010 WL 3911360, at *6 (Bankr. E.D.N.Y. Oct. 1, 2010)) ("where, as here, those standards [for a stay] are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest.").

Accordingly, for all of the foregoing reasons and in the exercise of its discretion pursuant to Bankruptcy Rule 8007, the Court hereby denies the request for a stay. Because the Court denies the Motion, it declines to address the issue of whether the Committee should be required to post a bond at this stage of the proceedings and also declines to rule on the Committee's request for a stay of the effectiveness of the STN Order to the extent it would cause the expiration of the Challenge Deadline set forth in the Cash Collateral Order. The Court will

address these issues in future proceedings should the need arise subsequent to the disposition of the pending appeals.  The parties are directed to submit an order consistent with this decision.

Dated: April 21, 2016
New York, New York

            /s/ Shelley C. Chapman
            UNITED STATES BANKRUPTCY JUDGE